# DEFENDANTS' ATTACHMENT 10

Defendants' Attachment 10



THOMAS L. MEROS, Plaintiff-Appellant, - vs - FRANK G. MAZGAJ, et al., Defendants-Appellees.

CASE NO. 2001-T-0100

COURT OF APPEALS OF OHIO, ELEVENTH APPELLATE DISTRICT, TRUMBULL COUNTY

2002 Ohio App. LEXIS 2052

April 30, 2002, Decided

**PRIOR HISTORY:** [*1] CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas. Case No. 00 CV 1019.

**DISPOSITION:** Affirmed.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellant former attorney sought review of a final judgment of the Trumbull County Court of Common Pleas (Ohio) which granted appellees, former clients, defendants, defendants' attorneys and the clients' replacement attorney, summary judgment. The former attorney had asserted various claims arising out of a fee dispute on case during which he was suspended and subsequently disbarred.

**OVERVIEW:** The clients had retained the former attorney to represent them in a lawsuit against a former employer. Eventually, they received a jury verdict in their favor for $ 125,000, which was appealed by both parties. After the briefs were filed, but before the appeal could be decided, the former attorney was suspended. As a result, the clients subsequently retained another attorney. After all appeals were exhausted, the employer issued a check in the amount of $ 155,787 to satisfy the judgment and accrued interest. The new attorney received the check and, pursuant to the prior agreement, retained 40 percent of the judgment as attorney fees. Of the 40 percent, the new attorney gave the former attorney $ 41,543 as payment for his services, and kept the remainder for himself. The appellate court held that to satisfy his equitable interest, the former attorney should have brought an action for quantum meruit, which he failed to do. Once discharged, the attorney had to withdraw from the case, and could no longer recover on the contingent-fee-representation agreement. Thus, there could be no conversion, interference with contract, or racketeering.

**OUTCOME:** The judgment of the trial court was affirmed.

**CORE TERMS:** summary judgment, conversion, practice of law, suspended, assignment of error, discharged, tortious interference, contingency-fee, amend, right to possession, ownership interest, nonmoving party, cause of action, quantum meruit, contingent-fee, lawsuit, motion to amend, matter of law, initial burden, genuine issue, moving party, prima facie, spoliation of evidence, law firm, corrupt, terminated, abused, couple, designed to disrupt, permanently

**LexisNexis(TM) HEADNOTES - Core Concepts**

***Civil Procedure > Summary Judgment > Summary Judgment Standard***

[HN1]Summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Ohio R. Civ. P. 56(C).

***Civil Procedure > Summary Judgment > Summary Judgment Standard***

[HN2]Material facts are those facts that might affect the outcome of the suit under the governing law of the case. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law.

***Civil Procedure > Summary Judgment > Burdens of Production & Proof***

[HN3]The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. The moving party must be able to point specifically to some evidence of the type listed in Ohio R. Civ. P. 56(C) which affirmatively demonstrates that the nonmoving party

has no evidence to support the nonmoving party's claim.

***Civil Procedure > Summary Judgment > Burdens of Production & Proof***

[HN4]If the moving party fails to satisfy its initial burden, summary judgment should be denied. However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. If the nonmoving party fails to do so, the trial court may enter summary judgment against that party if appropriate.

***Torts > Intentional Torts > Conversion***

[HN5]Generally speaking, conversion is any exercise of dominion or control wrongfully exerted over personal property of another in denial of or under a claim inconsistent with his rights. A person seeking damages for conversion must be able to show that he had an ownership interest in or a right to possession of the property at the time of the conversion.

***Legal Ethics > Client Relations > Attorney Fees***

[HN6]When an attorney representing a client pursuant to a contingent-fee agreement is discharged, the attorney's cause of action for a fee recovery on the basis of quantum meruit arises upon the successful occurrence of the contingency.

***Legal Ethics > Client Relations > Attorney Fees***

[HN7] Ohio Rev. Code Ann. § 4705.15(B) requires every contingency-fee agreement entered into in connections with a claim that is or may become the basis of a tort action shall be reduced to writing and signed by the attorney and the client.

***Torts > Business & Employment Torts > Interference With a Contract***

[HN8]To recover under the theory that a party tortuously interfered with a contract, evidence of the following must be provided: (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages.

***Torts > Business & Employment Torts > Interference With a Contract***

[HN9]Once the attorney/client relationship is terminated, a third party cannot be guilty of interfering with contractual relations, although the former clients may be liable to their former attorney for payment for services rendered to that point.

***Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings***

[HN10]Ohio R. Civ. P. 15(A) states that parties may amend their complaint after a responsive pleading has been served only by leave of court or written consent of the other party. Where a plaintiff fails to make a prima facie showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading.

***Torts > Business & Employment Torts > Concealment***

[HN11]To establish a claim for spoliation of evidence, plaintiff would have to prove the following: (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts.

**COUNSEL:** THOMAS L. MEROS, Pro se, Cleveland, OH (Plaintiff-Appellant).

ATTY. CLIFFORD C. MASCH, ATTY. D. CHERYL ATWELL, ATTY. STACIE LINDLEY BAKER, REMINGER & REMINGER CO., L.P.A., Cleveland, OH (For Defendants-Appellees, Frank G. Mazgaj, Timothy C. Campbell, David J. Hanna, Donald A. Powell, Hanna, Campbell, & Powell, and Denman Tire Corp.).

ATTY. ALAN M. PETROV, ATTY. KRISTIN L. WEDELL, Cleveland, OH (For Defendants-Appellees, Raymond Tisone, David Sinea and Susan Sinea).

**JUDGES:** HON. JUDITH A. CHRISTLEY, P.J., HON. ROBERT A. NADER, J., HON. DIANE V. GRENDELL, J. NADER, J., GRENDELL, J., concur.

**OPINIONBY:** JUDITH A. CHRISTLEY

**OPINION:** CHRISTLEY, P.J.

Appellant, Thomas L. Meros, appeals from a final judgment of the Trumbull County Court of Common Pleas granting appellees, Frank G. Mazgaj ("Mazgaj"), Timothy C. Campbell ("Campbell"), David J. Hanna ("Hanna"), Donald A. Powell ("Powell"), Hanna, Campbell, & Powell, L.L.P. ("Hanna, Campbell, & Powell"), Denman Tire Corporation ("Denman Tire"), Raymond Tisone ("Tisone"), and David and Susan Sinea ("the Sineas"), summary judgment. **[*2]** For the following reasons, we affirm the judgment of the trial court.

The record shows that in 1995, the Sineas retained appellant to represent them in a lawsuit against Mr.

Sinea's former employer, Denman Tire. Eventually, the Sineas received a jury verdict in their favor for $ 125,000 that was appealed by both parties. After the briefs were filed, but before the appeal could be decided, appellant was suspended from the practice of law for eighteen months. *Disciplinary Counsel v. Meros* (1998), 83 Ohio St.3d 222, 699 N.E.2d 458. As a result, the Sineas subsequently retained Tisone to replace appellant as counsel of record.

On appeal, this court not only affirmed the $ 125,000 judgment for compensatory damages, but we also remanded the case back to the trial court, concluding that the jury should have been instructed on punitive damages. *Sinea v. Denman Tire Corp.* (1999), 135 Ohio App.3d 44, 732 N.E.2d 1033. Denman Tire appealed our decision to the Supreme Court of Ohio, who declined to exercise jurisdiction over the case. *Sinea v. Denman Tire Corp.* (2000), 88 Ohio St.3d 1415, 723 N.E.2d 120.

After **[*3]** all appeals were exhausted, Denman Tire issued a check made payable to "David Sinea, Susan Sinea and Ray Tisone, Attorney" in the amount of $ 155,787.68 to satisfy the judgment and accrued interest. Tisone received the check and, pursuant to the Sinea's prior agreement with appellant, retained 40 percent of the judgment as attorney fees. Of this 40 percent, Tisone gave appellant $ 41,543.38 as payment for his services, and kept the remainder for himself. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 On December 22, 1999, the Board of Commissioners on Grievances and Discipline filed a report in which it recommended that appellant be permanently disbarred. Accordingly, when appellant filed his application for reinstatement following the completion of his eighteen-month suspension, the Supreme Court denied his request. Ultimately, the Supreme Court issued a decision on July 12, 2000, adopting the findings of the board and permanently disbarring appellant from the practice of law in Ohio. *Cuyahoga Cty. Bar Assn. v. Meros* (2000), 89 Ohio St.3d 304.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*4]**

Unsatisfied with this arrangement, appellant filed a complaint in the Trumbull County Court of Common Pleas naming Mazgaj, Campbell, Hanna, Powell, Hanna, Campbell, & Powell, Denman Tire, Tisone, and the Sineas as defendants. n2 According to the complaint, appellees had conspired to deprive appellant of fees earned in both the Sinea lawsuit and an unrelated case. Based on these allegations, appellant submitted the following nine claims for relief: (1) conversion; (2) loss of profits and business; (3) fraud; (4) intentional interference with a contractual relationship; (5) intentional interference with a business relationship; (6) tortious interference with contract; (7) intentional infliction of emotional distress; (8) retaliation; and (9) violations of both the federal and state Racketeer Influenced and Corrupt Organizations acts ("RICO").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Mazgaj, Campbell, Hanna, and Powell were partners with the law firm of Buckingham, Doolittle & Burroughs, L.L.P., and represented Denman Tire in the Sinea lawsuit. During the litigation, the four attorneys left their former law firm and became partners with Hanna, Campbell, & Powell.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*5]**

Appellant subsequently filed two motions for summary judgment with the trial court. Appellees responded by filing briefs in opposition and their own motions for summary judgment. The trial court considered the parties' arguments, and in a judgment entry dated August 29, 2001, denied appellant's motions for summary judgment on his conversion and tortious interference with contract claims, while at the same time granting appellees' motions for summary judgment on those same issues. With respect to appellant's remaining claims, the trial court concluded that because they were based on a common predicate, conversion and/or tortious interference with contract, appellees were entitled to summary judgment as a matter of law on those as well.

From this judgment, appellant filed a timely notice of appeal with this court. He now asserts the following assignments of error for our consideration:

"[1.] The trial court erred in denying appellant's motion for summary judgment and granting summary judgment to appellees on the issue of liability relating to conversion and interference with contract.

"[2.] The trial court erred inn granting summary judgment in favor **[*6]** of appellees on appellant's Ohio civil RICO claim and erred in not permitting

appellant to amend the complaint to include the Federal RICO claim and to add new-party defendants as co-conspirators[.]

"[3.] The trial court erred in not granting appellant's motion to amend the complaint to state a claim against Tisone for intentional spoliation of evidence, i.e. the original and a copy of the subject contract."

Under his first assignment of error, appellant essentially argues that the trial court erred in granting appellees' motions for summary judgment on his conversion and tortious interference with contract claims. In doing so, he maintains that there were genuine issues of material fact that precluded summary judgment on those issues.

At the outset, we note that [HN1]summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); **[*7]** *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 268, 617 N.E.2d 1068.

[HN2]Material facts are those facts that might affect the outcome of the suit under the governing law of the case. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Turner*, 67 Ohio St.3d at 340.

[HN3]The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party must be able to point specifically to some evidence **[*8]** of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. *Dresher*, 75 Ohio St.3d at 293.

[HN4]If the moving party fails to satisfy this initial burden, summary judgment should be denied. *Id.* However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. *Id.* If the nonmoving party fails to do so, the trial court may enter summary judgment against that party if appropriate. *Id.*

[HN5]Generally speaking, conversion is "any exercise of dominion or control wrongfully exerted over personal property of another in denial of or under a claim inconsistent with his rights." *Okocha v. Fehrenbacher* (1995), 101 Ohio App.3d 309, 318, 655 N.E.2d 744. A person seeking damages for conversion must be able to show that he had an ownership interest in or a right to possession of the property at the time of the conversion. *Minix v. Collier* (Aug. 4, 2000), 2000 Ohio App. LEXIS 3662 at *9, Scioto App. No. 99CA2690, unreported. **[*9]**

Accordingly, to be successful on his conversion claim, appellant had to show he had an ownership interest in or a right to possession of the specific check issued by Denman Tire, and that appellees wrongfully interfered with that interest or right. After looking at the undisputed evidence, we conclude that appellant, as a matter of law, had no ownership interest in or right to possession of the check in question. Instead, once the Supreme Court of Ohio suspended appellant from the practice of law and he was no longer able to represent the Sineas in their lawsuit, appellant was only entitled to an equitable interest in the final judgment to compensate him for the work previously completed on the case.

To satisfy his equitable interest, appellant should have brought an action for quantum meruit, which appellant failed to do. In *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry* (1994), 68 Ohio St.3d 570, 629 N.E.2d 431, paragraph two of the syllabus, the Supreme Court held that [HN6]"when an attorney representing a client pursuant to a contingent-fee agreement is discharged, the attorney's cause of action for a fee recovery on the basis of **[*10]** *quantum meruit* arises upon the successful occurrence of the contingency." (Emphasis *sic*.) See, also, *Fox & Assoc. Co. L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69, 541 N.E.2d 448, syllabus. n3 Underlying this decision was the reasoning that "once discharged, the attorney must withdraw from the case, and can no longer recover on the contingent-fee-representation agreement." *Lansberry*, 68 Ohio St.3d at 574.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 In *Lansberry*, the law firm seeking to recover fees was discharged before filing a complaint, while in *Fox*, the law firm was discharged after a complaint was filed but before the case was settled.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Although appellant was suspended from the practice of law rather than discharged by his client, the same logic is applicable. That is, once the attorney/client relationship dissolved, the parties' contingent-fee agreement was terminated by operation of law and quantum meruit was the only way appellant could receive payment for his work.

Appellant, however, argues that because **[*11]** he successfully obtained a verdict for the Sineas in the trial court, he is entitled to 40 percent of the judgment in accordance with their contingency-fee agreement. We disagree. The fact that a jury had already awarded the Sineas damages is immaterial because all parties concede that appellant agreed to represent the couple until the case was resolved, including any subsequent appeals. n4 The appeal could have concluded in a complete reversal, resulting in appellant being entitled to nothing, even if he had been able to continue representing the Sineas. Moreover, by engaging in conduct that resulted in his disbarment, appellant effectively forced the Sineas to retain a new attorney to represent them on appeal. As a result, the trial court properly granted appellees summary judgment on appellant's conversion claim.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 We note that R.C. 4705.15(B) [HN7]requires every contingency-fee agreement entered into "in connections with a claim that is or may become the basis of a tort action *** shall be reduced to writing and signed by the attorney and the client." Appellant, however, never produced a written contingency-fee agreement in this case; rather, he claimed that he sent the only copy to Tisone.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*12]**

Next appellant argues that the trial court erred when it granted Tisone, Mazgaj, Campbell, Hanna, Powell, and Hanna, Campbell, & Powell summary judgment on his cause of action for tortious interference with contract.

[HN8]To recover under the theory that a party tortuously interfered with a contract, evidence of the following must be provided: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 707 N.E.2d 853, paragraph one of syllabus. See, also, *Andrews v. Carmody* (2001), 145 Ohio App.3d 27, 32, 761 N.E.2d 1076.

Here, although appellant and the Sineas entered into some form of a contingent-fee agreement, that agreement was terminated when appellant was suspended from the practice of law and could not continue representing the couple. Accordingly, because the contract had already concluded when Denman Tire paid the judgment, summary judgment was proper, as there was no contract to interfere with. **[*13]** *Ross v. Wovan* (1980), 1 Ohio App.3d 39, 41, 439 N.E.2d 428 (holding that [HN9]"once that [attorney/client] relationship is terminated, a third party cannot be guilty of interfering with contractual relations, although the former clients may be liable to their former attorney *** for payment for services rendered to that point.").

Again, if appellant believed that the money he received did not adequately compensate him for his work, he had to file an action in quantum meruit. Having failed to do this, appellant cannot now recover the disputed fees from the Sineas, or any one of the other appellees for that matter.

Also, although not clear from the briefing, it appears that appellant claims he and Tisone entered into some sort of agreement whereby appellant, despite being suspended from the practice of law, would continue to work on the case. After looking at the record, this court can find no evidence of any such agreement. Appellant's first assignment of error is not well-taken.

In assignment of error two, appellant argues that the trial court erred in granting appellees summary judgment on his RICO claims. Specifically, appellant **[*14]** maintains that appellees knowingly engaged in a conspiracy to defraud him of money by mailing the check without including his name on it, and that this violated Ohio's RICO statute. Appellant also submits that the trial court abused its discretion when it prevented him from amending his complaint to include additional federal RICO claims and to add new defendants as co-conspirators. We disagree.

As we noted earlier, appellant had no ownership interest in or a right to possession of the check Denman Tire issued. Moreover, Tisone, Mazgaj, Campbell, Hanna, Powell, and Hanna, Campbell, & Powell were not required to protect appellant's fee. *Ross*, *supra*. Instead, if appellant disagreed with the amount he received for his work, the proper course of

action would be to seek redress against the Sineas, his former clients.

A similar argument was rejected by the Eighth Appellate District in the second case that appellant relies upon to establish a pattern of corrupt activity. In *Meros v. Rorapaugh* (Nov. 22, 2000), 2000 Ohio App. LEXIS 5477, Cuyahoga App. No. 77611, unreported, 2000 WL 1739297, appellant sued several individuals to collect a contested contingency fee. The **[*15]** defendants filed a motion to dismiss the case which the trial court granted. Appellant did not appeal this decision; rather, he filed a motion for relief from judgment pursuant to Civ.R. 60(B). The trial court denied this motion, and appellant appealed.

On appeal, the Eighth Appellate District determined that appellant was essentially claiming that because he was owed legal fees the defendants had a duty to include him on the check satisfying the judgment and should not have released the judgment proceeds directly to his former clients. The court concluded that even though appellant had an equitable lien on the proceeds and could file an action to enforce the lien, his cause of action was against his former clients, not against the parties releasing the funds. *Meros*, 2000 Ohio App. LEXIS at 17.

Turning back to the case at bar, appellant did not have any interest in or right to the check issued to the Sineas and Tisone. Accordingly, appellees were not required to include his name on the check. In other words, there is absolutely no evidence that appellees were involved in a pattern of corrupt activity that would establish a RICO violation.

We reach a similar result **[*16]** with respect to appellant's argument that the trial court abused its discretion in preventing him from amending his complaint. [HN10]Civ.R. 15(A) states that parties may amend their complaint after a responsive pleading has been served only by leave of court or written consent of the other party. "Where a plaintiff fails to make a prima facie showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading." (Emphasis *sic.*) *Wilmington Steel Products, Inc. v. Cleveland Elec. Illuminating Co.* (1991), 60 Ohio St.3d 120, syllabus.

Based on the undisputed facts, this court concludes that appellant failed to make the required prima facie showing that would allow him to amend his complaint. Simply stated, appellant provided nothing in his motion to amend that indicated anyone was somehow involved in a pattern of corrupt activity. As we have noted on numerous times throughout this opinion, this case is essentially a fee dispute between appellant and the Sineas. Thus, the trial court did not abuse its discretion in denying appellant's motion to amend. Appellant's second assignment of error has no merit. **[*17]**

In his third and final assignment of error, appellant maintains that the trial court also abused its discretion when it would not allow him to amend his complaint to include a cause of action against Tisone for intentional spoliation of evidence. To support his position, appellant claims that after he gave Tisone the Sineas' case file, Tisone destroyed the original contingent-fee agreement between him and the Sineas, and that the agreement's destruction somehow disrupted his case.

[HN11]To establish a claim for spoliation of evidence, appellant would have been required to prove the following:

"(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co., Inc.* (1993), 67 Ohio St.3d 28, 29, 615 N.E.2d 1037. See, also, *Drawl v. Cornicelli* (1997), 124 Ohio App.3d 562, 566, 706 N.E.2d 849.

Not only has appellant failed to **[*18]** provide evidence that Tisone had the contingency-fee agreement in his possession at some point in time, but he also failed to provide evidence that any alleged destruction was designed to disrupt his case. In fact, by the time Tisone began representing the Sineas, the contingency-fee agreement between the couple and appellant was no longer enforceable. Put another way, appellant could not sue anyone under the agreement because his only recourse was an action for quantum meruit that would be based on the reasonable value of his services up to the time he was suspended from the practice of law. *Lansberry*, *supra*. As a result, appellant failed to make the required prima facie showing that would allow him to amend his complaint. Appellant's third assignment of error is meritless.

Based on the foregoing analysis, appellant's three assignments of error are not well-taken. The judgment of the trial court, therefore, is affirmed.PRESIDING JUDGE JUDITH A. CHRISTLEYNADER, J.,

GRENDELL, J.,

concur.

Carrington Farms Development Company, Appellant v. Pulte Home Corporation, et al., Appellees

Court of Appeals No. L-97-1300

COURT OF APPEALS OF OHIO, SIXTH APPELLATE DISTRICT, LUCAS COUNTY

1998 Ohio App. LEXIS 2228

May 22, 1998, Decided

**PRIOR HISTORY:** [*1] Trial Court No. CI94-1807.

**DISPOSITION:** JUDGMENT AFFIRMED.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellant, subdivision development company, sought review of a decision of the Lucas County Court of Common Pleas (Ohio), which granted appellee, home builder, summary judgment in an action alleging breach of an oral contract for the purchase of real property.

**OVERVIEW:** Appellant, subdivision development company, and appellee, home builder, entered into a written contract where appellee would purchase lots from appellant's subdivision in the state of Michigan. The agreement lapsed. Later, the parties entered into an oral agreement for appellee to purchase the remaining lots in the Michigan subdivision for a price concession. Appellee purchased some, but not all of the lots. Appellant then filed a breach of an oral contract for the purchase of real property in Ohio. The trial court granted appellee summary judgment based on the statute of frauds. The court affirmed, holding that in both Ohio and Michigan, the doctrine of partial performance was unavailable to avoid the statute of frauds in a strict action at law for money damages only. Appellant failed to unequivocally show that its purported part performance resulted from the alleged oral agreement.

**OUTCOME:** The court affirmed the summary judgment grant to appellee, home builder, holding that appellant, development company, failed to show that its purported part performance resulted from the oral agreement. Partial performance was unavailable to avoid the statute of frauds in a strict action at law.

**CORE TERMS:** part performance, summary judgment, oral contract, substantive law, money damages, partial performance, assignment of error, matter of law, purported, unambiguously, unavailable, invoke, void, written agreement, equitable remedy, oral agreement, real property, remedial laws, twenty-five, Conflict of Laws, genuine issue of material fact, entitled to judgment, unequivocally, assignments of error, monetary damages, telephone call, sale of land, undisputed, thirty-two, remedial

**LexisNexis(TM) HEADNOTES - Core Concepts**

***Civil Procedure > Summary Judgment > Summary Judgment Standard***

***Civil Procedure > Appeals > Standards of Review > Standards Generally***

[HN1]On review, appellate courts employ the same standard for summary judgment as trial courts. The motion may be granted only when it is demonstrated: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

***Civil Procedure > Summary Judgment > Burdens of Production & Proof***

***Civil Procedure > Summary Judgment > Summary Judgment Standard***

[HN2]When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Ohio R. Civ. P. 56(E).

***Civil Procedure > State & Federal Interrelationships > Choice of Law***

[HN3]The rights and duties of the parties to a contract are determined by the local law of the state which has the most significant relationship to the transaction and the parties. Absent an effective choice of law by the parties, determination of the law applicable to an issue may be had by taking into account the place of contracting, negotiating the contract, performance,

location of the subject matter of the contract and the incorporation or business situs of the parties.

***Civil Procedure > State & Federal Interrelationships > Application of State Law***

***Civil Procedure > State & Federal Interrelationships > Choice of Law***

[HN4]Ohio courts must be cautious in interpreting the laws of another state when the courts of that state have not clearly and unambiguously determined the rule of law at issue.

***Contracts Law > Statutes of Frauds***

[HN5]Mich. Comp. Laws § 566.110 specifically states that "nothing in this chapter shall be construed to abridge the powers of a court of chancery to compel the specific performance of agreements, in cases of part performance of such agreements." There is in both Ohio and Michigan authority that as an equitable remedy, partial performance is unavailable in a strict action at law for money damages only.

***Contracts Law > Statutes of Frauds***

[HN6]The doctrine of part performance in both Michigan and Ohio is applicable only on the unequivocal demonstration by the one who seeks to invoke the doctrine that his or her acts of partial performance would not have been performed except for the contract. Michigan courts have long held that one relying on the doctrine of part performance to take an oral agreement for real property out of the statute of frauds, must show acts unequivocally referring to and resulting from that agreement; such as the party would not have done, unless on account of that very agreement, and with a direct view to its performance. The same rule holds true in Ohio.

***Civil Procedure > Summary Judgment > Summary Judgment Standard***

***Contracts Law > Statutes of Frauds***

[HN7]The burden of proof on the issue of whether part performance is available to take an oral contract out of the statute of frauds is with the party asserting the doctrine. Accordingly, when faced with a motion for summary judgment, Ohio R. Civ. P. 56(E) requires that a party raising part performance must come forward with evidence which, if believed, would establish the elements necessary to invoke the doctrine.

**COUNSEL:** John J. McHugh, III, and Graham A. Bluhm, for appellant.

Stephen Wasinger and John K. Nelson, for appellees.

**JUDGES:** Peter M. Handwork, P.J., George M. Glasser, J., James R. Sherck, J., CONCUR.

**OPINIONBY:** JAMES R. SHERCK

**OPINION: OPINION AND JUDGMENT ENTRY**

SHERCK, J. This is an appeal from a summary judgment issued by the Lucas County Court of Common Pleas. The case concerns a dispute over an alleged oral contract for the purchase of real property. Because we conclude that the doctrine of part performance does not rescue this agreement from the statute of frauds, we affirm.

Appellant, Carrington Farm Development Company, is an Ohio general partnership engaged in the business of subdivision development. Appellees Pulte Home Corporation and Pulte Homes of Michigan Corporation are Michigan companies engaged in the construction and sale of single family residences.

In 1991, appellant and appellee Pulte Michigan n1 entered into a written agreement wherein appellee would purchase lots from appellant's Monroe, Michigan subdivision, Carrington Farms Plat One. The agreement provided that appellee would have the exclusive right to buy **[*2]** and build on these lots; a purchase price of $ 35,000 per lot was established. The agreement was to remain in effect so long as appellee purchased a sufficient number of lots over a set period of time. It is undisputed that appellee failed to make sufficient lot purchases in the time set and the parties allowed the agreement to lapse.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Appellees Pulte Home Corporation and Pulte Homes of Michigan are separate entities. The trial court granted summary judgment to Pulte Home Corporation on the ground that appellant failed to come forth with any evidence that it was a party to the "contract." On appeal, appellee does not contest this ruling. Therefore, future references to a single appellee will be to Pulte Homes of Michigan.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

In 1993, appellee and appellant met in a Monroe, Michigan hotel to discuss whether their relationship should continue. At this meeting appellee sought a price concession on the lots. The parties came to an accommodation, the terms of which are at issue in this lawsuit.

Appellee insists its [*3] representative offered to purchase ten of the thirty-two remaining lots in Plat One and additional lots as required on condition that appellant would continue to allow appellee to be the exclusive builder in the subdivision and would reduce the per lot price to $ 30,000. Appellant countered that it would be willing to accede to appellee's offer if, and only if, appellee agreed to purchase all of the remaining lots in Plat One. At the conclusion of this meeting, the issue was unresolved. However, appellant contends appellee accepted its counteroffer during a later telephone call between the parties' representatives. Appellee agrees that the telephone call resulted in an agreement, but that it was more in conformity with the prior written agreement in that it was not contingent on the purchase of a specific number of lots. Regardless of its terms, this contract was never reduced to writing.

It is undisputed that appellee subsequently purchased twenty-five lots from appellant at $ 30,000 each, before notifying appellant of its intent to forgo further purchases. After appellee terminated the purchase, appellant instituted this Ohio lawsuit alleging that appellee breached the oral agreement. [*4] Appellant sought to recover the $ 5,000 price differential between the original asking price and the purported oral contract price on each of the twenty-five lots appellee purchased.

In the trial court, appellee moved for summary judgment asserting that the underlying agreement, if any, was a parol contract for the purchase of land and void as violative of the Michigan statute of frauds. Appellant opposed the motion, arguing that the contract was taken out of the statute of frauds by the doctrine of part performance.

The trial court applied Michigan law to the transaction and concluded that part performance negates the statute of frauds only when the remedy sought is equitable relief. Since appellant's prayer was for money damages only rather than an equitable remedy, the court determined that the doctrine was unavailable. On this conclusion, the trial court granted appellee's summary judgment motion.

Appellant now brings this appeal, setting forth the following three assignments of error:

"Assignment of Error No. 1: The trial court erred as a matter of law in determining that Michigan law does not permit a seller of real property who seeks monetary damages for breach of an [*5] oral agreement to invoke the part performance exception to the statute of frauds.

"Assignment of Error No. 2: The trial court erred as a matter of law in determining that an Ohio forum court is required by Ohio's conflicts of law rules to apply a foreign state's statute of frauds and remedial laws, in lieu of the procedural and remedial laws of Ohio.

"Assignment of Error No. 3: The trial court erred as a matter of law in holding that an Ohio court cannot enforce an oral contract for the sale of land under the doctrine of part performance since Michigan's remedial laws do not permit monetary damages."

[HN1]On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App. 3d 127, 129, 572 N.E.2d 198. The motion may be granted only when it is demonstrated:

" *** (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most [*6] strongly in his favor." Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St. 2d 64, 67, 375 N.E.2d 46, Civ.R. 56(E).

[HN2]When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v. Wheeler (1988), 38 Ohio St. 3d 112, 526 N.E.2d 798, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St. 3d 280, 293, 662 N.E.2d 264. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v. Montgomery (1984), 11 Ohio St. 3d 75, 79, 463 N.E.2d 1246.

I.

We will consider appellant's second assignment of error first.

Antecedent to making its decision in this matter, the trial court conducted a conflict of laws analysis of the transaction to determine whether it should apply Michigan or Ohio law. The court noted that both states have adopted the principles set out in 1 Restatement of Law 2d, Conflict of Laws (1971), Section 188. See Gries Sports Ent. [*7] v. Modell (1984), 15 Ohio St. 3d 284, 473 N.E.2d 807, syllabus; Chrysler Corp. v. Skyline Ind. Serv. (1995), 448 Mich. 113, 120-121, 528 N.W.2d 698.

Section 188 of the Restatement provides that [HN3]the rights and duties of the parties to a contract are determined by the local law of the state which has the most significant relationship to the transaction and the parties. Absent an effective choice of law by the parties, determination of the law applicable to an issue may be had by taking into account the place of contracting, negotiating the contract, performance, location of the subject matter of the contract and the incorporation or business situs of the parties.

The trial court noted that the land at issue is in Michigan, the negotiations relating to the purported contract occurred in Michigan, the location of performance was to be Michigan and the two defendants were Michigan corporations. The court also noted that there was nothing in the contract at issue which would invoke fundamental Ohio policies, see Schulke v. Midwestern Broadcasting Co. (1983), 6 Ohio St. 3d 436, 438, 453 N.E.2d 683, and that it appeared Michigan possessed a greater material interest in the transaction [*8] and the parties than Ohio. Consequently, the court concluded that the Michigan law was the appropriate law to apply.

The trial court's analysis is well founded both in fact and in law. Therefore, the trial court's decision to apply Michigan substantive law is appropriate. Accordingly, appellant's second assignment of error is not well-taken.

II.

However, it is not the application of Michigan's substantive law of which appellant principally complains. Appellant argues that the court's application of the fraud's statute to the oral contract is remedial in nature, and Ohio law requires that while the substantive law of a foreign state may be applied to substantive matters, remedial and procedural questions should be settled by Ohio law.

The substantive/procedural dichotomy as it relates to the statute of frauds in a conflict of laws setting has been the focus of legal scholars for more than one hundred fifty years. See Annotation, Statute of Frauds and Conflict of Laws (1973), 47 A.L.R.3d 137, et seq. The root of the controversy is an English case, Leroux v. Brown (1852), 12 CB 801; 138 Eng. Reprint 1119, which classified statutes of frauds according to whether the law was [*9] derived from the language of subsection four of the English statute of frauds ("no action shall be brought" on a contract for the sale of land without a writing) or subsection seventeen ("no action shall be allowed to be good"). The former, according to Leroux, was held procedural because it presupposes the existence of a contract and makes the statute of frauds only an evidentiary rule by which the contract is proved or disproved. The latter, however, goes to the rights and obligations of the parties and, according to the English case, is substantive law and is to be applied whenever the substantive law of a state is applied.

Legal scholars have criticized the procedural-substantive classification of statutes of frauds as undermining the basic principles of conflict of laws and being an open invitation for courts to reach a result-oriented conclusion by employing or ignoring the rule. 47 A.L.R.3d at 142.

Nevertheless, the Supreme Courts of both Ohio and Michigan have applied the Leroux rationale to their states' respective statutes of frauds, concluding that the statutes are procedural in nature. Heaton v. Eldridge (1874), 56 Ohio St. 87, 46 N.E. 638, paragraph one of [*10] the syllabus n2; Third National Bank v. Steel (1902), 129 Mich. 434, 438, n3, 88 N.W. 1050

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 But, see Debaggis v. Notre Dame, 1983 Ohio App. LEXIS 14739 (Aug. 4, 1983), Cuyahoga App. No. 45594, unreported.

n3 Although it should be noted that the statute at issue in Steel read that "no action shall be brought [on a contract] unless *** made in writing *** ." 3 Comp. Laws § 9518. While the statute at issue here provides that a contract not in writing, " *** shall be void *** ." MCLA § 566.108.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The issue presented here is not totally academic. Applying the Leroux standards, we could conceivably conclude that Michigan's statute of frauds, as amended by their legislature (see footnote 3) is now substantive law. If we made that conclusion then the effect of the statutory pronouncement that "every contract *** for the sale of lands shall be void unless *** in writing ***," MCLA § 566.108, would be to totally nullify the agreement, and appellant's purported oral contract would fail. Appellant would then be without recourse [*11] to revive it. It is certainly arguable that these are the conclusions which a Michigan court might reach given the opportunity to do so.

However, [HN4]Ohio courts must be cautious in interpreting the laws of another state when the courts of that state have not clearly and unambiguously determined the rule of law at issue. In this case, appellees have referred us to a number of Michigan cases which it advances to support these conclusions,

but none clearly and unambiguously finds the Michigan statute of frauds to be substantive law. In fact, quite the opposite is true as it concerns the issue of whether an oral contract "void" under the statute may be revived in any way. [HN5]MCLA § 566.110 specifically states that, "nothing in this chapter shall be construed to abridge the powers of a court of chancery to compel the specific performance of agreements, in cases of part performance of such agreements." It would appear then that, whatever the status of Michigan's statute of frauds, partial performance (the doctrine upon which appellant rests its case) is available to take a case out of the statute of frauds. Miller Glass Co. v. Kushmaul (1968), 13 Mich. App. 346, 349, 164 N.W.2d 390; Zaborski **[*12]** v. Kutyla (1971), 29 Mich. App. 604, 606, 185 N.W.2d 586.

This is true in either Ohio or Michigan. See, generally, 51 Ohio Jurisprudence 3d (1984) 311, Statute of Frauds, Section 164; Cameron, Michigan Real Property 2d (1993), 527-529. However, there is also in both Ohio and Michigan authority that as an equitable remedy, partial performance is unavailable in a strict action at law for money damages only. Tier v. Singrey (1951), 154 Ohio St. 521, 526, 97 N.E.2d 20; Gardner v. Gardner (1945), 311 Mich. 615, 618, 19 N.W.2d 118.

In this matter, the trial court, citing White v. Walper [a/k/a White v. Lenawee Co. Sav. Bank] (1941), 299 Mich. 109, 299 N.W. 827, concluded that part performance was unavailable to bar the application of the statute of frauds because appellant sought no equitable remedy, only money damages. While White and the other cited Michigan part performance cases clearly state that Michigan still considers part performance a device of equity, these cases do not clearly and unambiguously deny any remedy where money damages were the only relief sought. Many Michigan cases permit money damages in cases where both equitable and legal remedies are sought. See Cameron, **[*13]** Michigan Real Property Law, supra, at 527, Section F. The parties have directed our attention to no current case where partial performance was or was not permitted in a case where money damages only were sought. Again, we choose to exercise caution in premising our decision on the law of a sister state which has not clearly and unambiguously been stated. For this reason, we are hesitant to rely on the same grounds upon which the trial court premised its decision.

Instead, we choose to focus upon an argument which was raised in the trial court but which that court failed to address. [HN6]The doctrine of part performance in both Michigan and Ohio is applicable only on the unequivocal demonstration by the one who seeks to invoke the doctrine that his or her acts of partial performance would not have been performed except for the contract. Michigan courts have long held that one relying on the doctrine of part performance to take an oral agreement for real property out of the statute of frauds, *** must show acts unequivocally referring to and resulting from that agreement; such as the party would not have done, unless on account of that very agreement, and with a direct view to its **[*14]** performance *** ." McMurtrie v. Bennette (1842), Harrington's Chancery Rpt. 124, 125-126 (emphasis in original); see, also, Hazime v. Martin Oil of Ind., Inc. (E.D.Mich.1992), 792 F. Supp. 1067, 1070. The same rule holds true in Ohio. Hughes v. Oberholtzer (1954), 162 Ohio St. 330, 123 N.E.2d 393, paragraph three of the syllabus.

At trial, [HN7]the burden of proof on the issue of whether part performance is available to take an oral contract out of the statute of frauds is with the party asserting the doctrine. McMurtrie, supra. Accordingly, when faced with a motion for summary judgment, Civ.R. 56(E) requires that a party raising part performance must come forward with evidence which, if believed, would establish the elements necessary to invoke the doctrine. We have carefully examined the transaction in this matter and must conclude that the partial performance asserted by appellant (the sale of twenty-five of the remaining thirty-two lots for $ 30,000 per lot) is equally as consistent with appellee's version of the agreement (verbally extend the prior written agreement, but reduce the price) as it is with appellant's. Consequently, appellant failed to come forth with evidence **[*15]** to unequivocally show that its purported part performance resulted from the agreement it proposes was entered into. Failing to demonstrate such a connection, the doctrine of part performance is unavailable to take this oral contract out of the statute of frauds irrespective of whether Ohio or Michigan law is applied. Since there is no dispute that one of these state's statute of frauds applies to this purported contract and both states bar recovery on a contract which is within the statute unless the doctrine of part performance applies, appellee is entitled to judgment as a matter of law.

Accordingly, we need not reach appellant's first and third assignments of error, since even to rule for appellant on these issues would not alter the outcome of the case.

The judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.

JUDGMENT AFFIRMED.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.

Peter M. Handwork, P.J.

George M. Glasser, J.

James R. Sherck, J.

CONCUR.

JOHN DOE, Appellant v. LODI COMMUNITY HOSPITAL, et al., Appellees

C.A. NO. 2955-M

COURT OF APPEALS OF OHIO, NINTH APPELLATE DISTRICT, MEDINA COUNTY

2000 Ohio App. LEXIS 5802

December 13, 2000, Decided

**PRIOR HISTORY:** [*1] APPEAL FROM JUDGMENT ENTERED IN THE COURT OF COMMON PLEAS. COUNTY OF MEDINA, OHIO. CASE NO. 97 CIV 0953.

**DISPOSITION:** Affirmed.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff physician appealed from summary judgment entered by the Court of Common Pleas of Medina County, Ohio, in favor of defendants on his claims that he was defamed in connection with the theft of a credit card and wrongfully discharged, that his employment as a part-time independent emergency room physician by a contract agency was tortiously interfered with, and that he suffered emotional distress intentionally inflicted by defendants.

**OVERVIEW:** Plaintiff physician contracted to work with defendant hospital and with a contract agency as an independent emergency room physician. Plaintiff was terminated by defendant hospital. Shortly thereafter, defendant hospital asked the agency not to assign plaintiff to their emergency room. At about the same time, while plaintiff was still working for the agency, a credit card theft occurred at defendant hospital. Defendant hospital employee identified plaintiff as the person videotaped using the stolen credit card, and arranged to have an agency employee also identify plaintiff on the video tape. Plaintiff was thereafter terminated by the agency. Plaintiff sued and then appealed when summary judgment was granted to defendants. The appellate court found that defendant employee's identification of plaintiff on the videotape was privileged and not defamatory. Plaintiff was not wrongfully discharged, because his employment was terminable at will. The contract agency gave notice as required, so defendants did not tortiously interfere with that contract. And there was not evidence of outrageous conduct worthy of causing legal infliction of emotional distress.

**OUTCOME:** The court affirmed the summary judgment of the trial court in favor of defendant hospital and defendant hospital employee.

**CORE TERMS:** summary judgment, videotape, assignment of error, promissory estoppel, pictured, employment-at-will, intentional infliction of emotional distress, termination, terminate, contacted, reckless disregard, matter of law, actual malice, entertained, outrageous, genuine, altered, issues of material fact, infliction of emotional distress, intentional interference, employment contract, failed to present, emergency room, terminated, decrease, at-will, nurse, malice, qualified privilege, granting summary judgment

**LexisNexis(TM) HEADNOTES - Core Concepts**

***Civil Procedure > Summary Judgment > Summary Judgment Standard***

[HN1]Pursuant to Ohio R. Civ. P. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

***Civil Procedure > Pleading & Practice > Pleadings > Interpretation***

[HN2]It is the duty of the appellant, not the court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record. Ohio R. App. P. 16(A)(7).

***Torts > Defamation & Invasion of Privacy > Defamation Actions***

[HN3]In order to prevail in a defamation case, a plaintiff who is a private person must prove five elements: (1) a false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) that was either defamatory per se or caused special harm to the plaintiff.

***Torts > Defamation & Invasion of Privacy > Common Law Privileges***

[HN4]When an act of alleged defamation has occurred in a business or professional context by someone whose job gives to them a legitimate interest in the matter, it is subject to a qualified privilege. The result is that the plaintiff must prove not only that the representations were untrue, but that they were made with actual malice. A showing of actual malice requires evidence that the alleged perpetrator, acting out of spite or ill will, made the representations either with knowledge that they were false, or with reckless disregard for the truth.

***Torts > Defamation & Invasion of Privacy > Common Law Privileges***

***Torts > Defamation & Invasion of Privacy > Defamation Actions***

[HN5]To demonstrate a reckless disregard for the truth by a party who has a qualified privilege the plaintiff must present clear and convincing evidence that the false statements were made as a result of the defendant's failure to act reasonably to discover the truth. However, in order for the defendant to fail to act reasonably in such a situation, he or she must first possess some degree of subjective doubt concerning the statements. A person speaking with moral certainty about a subject with which he or she has a qualified privilege, no matter how misguided, cannot be said to be acting with actual malice. In order to establish reckless disregard, the plaintiff must present sufficient evidence to permit a finding that the defendant had serious doubts as to the truth of his publication. Thus, the failure to investigate before publishing will not defeat a qualified privilege, unless the defendant entertained serious doubts as to the truth of his publication.

***Torts > Defamation & Invasion of Privacy > Defamation Actions***

***Torts > Defamation & Invasion of Privacy > Qualified Privileges***

[HN6]Because mere negligence is not enough to establish actual malice in a defamation case where a party claims a qualified privilege, the test for determining whether the defendant entertained serious doubt is not an objective one--i.e., whether a reasonable person should have questioned the truth of his or her statements. Rather, the test is a subjective one, requiring the plaintiff to produce clear and convincing evidence that the defendant in fact entertained serious doubts about the truth of his statements or the sincerity or accuracy of his sources.

***Labor & Employment Law > Employment Relationships > At-Will Employment***

[HN7]Employment which is at-will is terminable at any time for any reason by either party. However, under certain conditions, an employment-at-will relationship may be considered to be modified or altered such that the employer's right to peremptorily discharge an employee is limited. These limitations are exceptions to the employment-at-will doctrine. Under the first exception, employee handbooks, company policy, and oral representations may be sufficient to create implied or express contractual provisions that alter the terms for discharge. Under the second exception, an employer's right to discharge may be limited by representations or promises made to the employee, which fall within the doctrine of promissory estoppel.

***Torts > Intentional Torts > Intentional Infliction of Emotional Distress***

[HN8]In employment-related situations, the establishment of infliction of emotional distress requires more than just verbal abuse. It is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

***Torts > Business & Employment Torts > Interference With a Contract***

[HN9]In order to establish a claim for tortious interference with contract plaintiff must prove: (1) the existence of his contract with defendant, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of the contract's breach, (4) lack of justification for the intentional procurement of the breach, and (5) resulting damages. Furthermore, a causal connection must be established between the breach of contract and the actions of the defendant.

**JUDGES:** DONNA J. CARR, BATCHELDER, P.J., SLABY, J., CONCUR.

**OPINIONBY:** DONNA J. CARR

**OPINION:** DECISION AND JOURNAL ENTRY

Dated: December 13, 2000

This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:

CARR, Judge.

Plaintiff-appellant John Doe n1 appeals from the judgment of the Medina County Court of Common Pleas that granted summary judgment to defendants-appellees Thomas Lockard ("Lockard") and Lodi Community Hospital ("LCH") n2 . This Court affirms.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 In order to protect his privacy, the trial court granted appellant-plaintiff permission to maintain his cause of action under the pseudonym "John Doe."

n2 The trial court also granted summary judgment in favor of Southern Ohio Emergency Physicians and Emergency Consultants, both of which Doe had named as defendants. Although Doe named both companies as appellees in his notice of appeal, he has not raised an issue on appeal relating to the grant of summary judgment in favor of either company.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*2]

I. Facts

Doe entered into an employment contract with LCH to work as a physician specializing in general medicine. Pursuant to the agreement, Doe opened his office and began working at LCH on April 1, 1996. In May 1996, Doe entered into an agreement with Southern Ohio Emergency Physicians, P.C. ("SOE") n3 to work as a part-time independent contracting physician. SOE staffs certain emergency rooms in Ohio, including LCH, with professional medical personnel. Thus, Doe began working in LCH's emergency room, as well as other local emergency rooms, under his contract with SOE.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Doe alleged that Emergency Consultants, Inc. ("ECI") was also a party to this contract. The trial court granted summary judgment in favor of ECI who disputed this fact. As previously noted, whether the trial court properly granted ECI summary judgment is not an issue before this Court. Therefore, we omit ECI in the facts of this opinion.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In September of 1996, Doe's patient load began to decline. By a letter dated January 23, 1997, Lockard, [*3] LCH's President and Chief Financial Officer, contacted Doe concerning the continued decrease in Doe's patients. Lockard proposed reducing Doe's hours until Doe could increase the number of his patients. Doe agreed to decrease his hours, but refused to take a decrease in pay. Doe contacted an attorney who, in turn, contacted LCH and informed LCH that Doe would not accept a decrease in pay.

On February 3, 1997, Lockard sent Doe a 90-day notice of termination of the contract between Doe and LCH, making Doe's employment with LCH effective until the end of the day on May 3, 1997. On April 28, 1997, Lockard sent a letter to Dr. Scott Polsky, Regional Director of SOE and director of LCH's emergency room, requesting that Doe not be assigned to work in LCH's emergency room. SOE completely terminated their agreement with Doe. Thus, Doe was no longer contracted through SOE to work in any of the local emergency rooms.

Doe filed a complaint against LCH, Lockard, and SOE asserting six claims: (1) defamation against Lockard as an individual; (2) intentional infliction of emotional distress against Lockard and LCH; (3) negligent infliction of emotional distress against LCH; (4) wrongful discharge [*4] against LCH, SOE, and ECI; (5) intentional interference with contract against Lockard and LCH; and (6) punitive damages against Lockard and LCH. Doe's complaint was based on another controversy surrounding his employment that had taken place during the same time as the foregoing events.

In early January of 1997, a credit card was stolen from a nurse's purse that had been placed in the nurses' lounge at LCH. The day following the incident, the theft was reported to Lockard. The nurse whose credit card had been stolen told Lockard that she believed a certain female LCH employee was to blame. Lockard advised the nurse to contact the Lodi police and Jim Markely, LCH's security director. A few days later

Lockard personally contacted Lodi Chief of Police, Steve Sivard, concerning the incident.

On January 30, 1997, Chief Sivard contacted Lockard and asked him to come to the police station regarding the theft. At the station Lockard was shown a photograph, but could not identify the person pictured. Chief Sivard then had Lockard view a videotape of a person allegedly using the stolen credit card. Lockard told Sivard that he believed that Doe was the person pictured in the video, but that **[*5]** the video "was not that clear." As a result, Chief Sivard asked Lockard to arrange a meeting of other hospital employees who were familiar with Doe so that they could also view the videotape. One of the individuals that Lockard chose for the viewing was Dr. Polsky, SOE's director. Upon viewing the tape, the other employees individually expressed their opinion that the person pictured in the video resembled Doe.

Doe timely appeals, asserting six assignments of error which have been rearranged for ease of discussion.

II. Standard of Review

Each of Doe's six assignments of error concerns the trial court's grant of summary judgment. Accordingly, our standard of review for each assignment is the same standard used by the trial court. *Perkins v. Lavin* (1994), 98 Ohio App. 3d 378, 381, 648 N.E.2d 839. [HN1]Pursuant to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion **[*6]** for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 364 N.E.2d 267.

III. Assigned Errors

**FIRST ASSIGNMENT OF ERROR**

**SUMMARY JUDGMENT SHOULD BE REVERSED BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT AND THE DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

Doe's entire argument in his first assignment of error is contained in the last paragraph, which reads: "Based upon the genuine issues of material fact yet to be resolved, the Trial Court's grant of summary judgment in favor of the Defendants should be reversed."

[HN2]"It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record. See App.R. 16(A)(7)." *State v. Taylor*, 1999 Ohio App. LEXIS 397 (Feb. 9, 1999), Medina App. No. 2783-M, unreported. Doe has not even attempted to indicate what issue of material fact remains to be litigated. Because Doe has failed to demonstrate any error by the trial court in his first assignment of error, it is hereby overruled.

**SECOND ASSIGNMENT OF ERROR**

**SUMMARY [*7] JUDGMENT SHOULD NOT HAVE BEEN GRANTED IN FAVOR OF LODI AND LOCKARD BECAUSE THE STATEMENTS CONSTITUTED DEFAMATION AND ARE NOT PROTECTED BY A QUALIFIED PRIVILEGE.**

In his second assignment of error, Doe argues that the trial court erred by granting Lockard's motion for summary judgment on his defamation claim. He contends that there were genuine issues of material fact as to whether Lockard defamed him by (1) telling the police that Doe was the person pictured in the videotape, (2) showing Dr. Polsky the videotape, and by (3) telling Dr. Polsky that Doe was a thief. This Court disagrees.

[HN3]
In order to prevail in a defamation case, a plaintiff who is a private person must prove five elements: "(1) a false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) that was either defamatory *per se* or caused special harm to the plaintiff." *Gosden v. Louis* (1996), 116 Ohio App. 3d 195, 206, 687 N.E.2d 481, citing *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.* (1992), 81 Ohio App. 3d 591, 601, 611 N.E.2d 955.

[HN4]
When an **[*8]** act of alleged defamation has occurred in a business or professional context by someone whose job gives to them a legitimate interest in the matter, it is subject to a qualified privilege. The result is that the plaintiff must prove not only that the representations were untrue, but that they were made with actual malice. See *Contadino v. Tilow* (1990), 68 Ohio App. 3d 463, 469-470, 589 N.E.2d 48, citing *Evely v. Carlon* (1983), 4 Ohio St. 3d 163, 447 N.E.2d 1290 and *Hahn v. Kotten* (1975), 43 Ohio St. 2d 237, 331 N.E.2d 713. A showing of actual malice requires evidence that the alleged perpetrator, acting out of spite or ill will, made the representations either with knowledge that they were false, or with reckless

disregard for the truth. See Hahn v. Kotten (1975), 43 Ohio St. 2d 237, 331 N.E.2d 713; New York Times Co. v. Sullivan (1976), 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686.

[HN5]To demonstrate a reckless disregard for the truth the plaintiff must present clear and convincing evidence that the false statements were made as a result of the defendant's failure to act reasonably to discover the truth. [*9] See Lansdowne v. Beacon Journal Publishing Co. (1987), 32 Ohio St. 3d 176, 180, 512 N.E.2d 979. However, in order for the defendant to fail to act reasonably in such a situation, he or she must first possess some degree of subjective doubt concerning the statements. *Id.* A person speaking with moral certainty about a subject with which he or she has a qualified privilege, no matter how misguided, cannot be said to be acting with actual malice. *Id.* The Ohio Supreme Court has held that:

in order to establish "reckless disregard," the plaintiff must present sufficient evidence to permit a finding that the defendant had serious doubts as to the truth of his publication. Thus, the failure to investigate before publishing will not defeat a qualified privilege, unless the defendant entertained serious doubts as to the truth of his publication of the statements or the veracity or accuracy of his sources.

A & B-Abell v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council (1995), 73 Ohio St. 3d 1, 12-13, 651 N.E.2d 1283, [*10] citing St. Amant v. Thompson (1968), 390 U.S. 727, 88 S. Ct. 1323, 20 L. Ed. 2d 262, and Dale v. Ohio Civ. Serv. Emp. Assn. (1991), 57 Ohio St. 3d 112, 567 N.E.2d 253.

Examples of "reckless disregard" are situations in which the defendant fabricated the story, relies on his or her imagination, or based the statements on unverified, anonymous sources. See *id.* [HN6]Because mere negligence is not enough to establish actual malice, the test for determining whether the defendant entertained "serious doubt" is not an objective one-- *i.e.*, whether a reasonable person should have questioned the truth of his or her statements. Rather, the test is a subjective one, requiring the plaintiff to produce clear and convincing evidence that the defendant "in fact" entertained serious doubts about the truth of his statements or the sincerity or accuracy of his sources. See *id.*

Having reviewed the record, we hold that Doe failed to present any evidence that Lockard acted with malice in telling the police that Doe was the person pictured in the videotape. The record lacks any evidence that Lockard "in fact" entertained serious doubts as to whether Doe was [*11] the person pictured. Lockard testified in his deposition that he believed the man pictured was, or strongly resembled, Doe.

Likewise, we find that Doe failed to present evidence that Lockard acted with malice in showing Dr. Polsky the videotape. Lockard testified that he organized the meeting to view the videotape at the request of Lodi's Chief of Police. The Chief's deposition testimony corroborates this fact. This Court finds that Lockard's choice of selecting Dr. Polsky to view the videotape was reasonable; the evidence shows that Dr. Polsky hired Doe to work for SOE and that Dr. Polsky worked with Doe a couple of times each month.

Finally, Doe did not present any evidence that Lockard told Dr. Polsky that "Doe is a thief." Dr. Polsky's deposition testimony establishes that Lockard never said anything of that nature to him.

Construing the evidence most strongly in favor of Doe, we find that the record is devoid of any evidence by which reasonable minds could have concluded that Lockard defamed Doe. For this reason, we find there are no genuine issues of material fact and the lower court did not err in concluding that Lockard was entitled to judgment as a matter of [*12] law. Doe's second assignment of error is overruled.

**FIFTH ASSIGNMENT OF ERROR**

**SUMMARY JUDGMENT WAS ERRONEOUSLY GRANTED BECAUSE THE PLAINTIFF HAS PROVEN WRONGFUL DISCHARGE BY LODI AND LOCKARD.**

In his fifth assignment of error, Doe charges that because he proved that he had been wrongfully discharged the trial court erred in granting summary judgment in favor of LCH and Lockard. We find otherwise.

Doe asserts that, pursuant to his employment contract, he could only be discharged from his employment at LCH if his license was suspended or revoked, there was a disciplinary action taken against him, if he was convicted of a criminal act, or if he became totally disabled. Because none of these "causes" existed, Doe argues that his termination was wrongful.

Section 2 of the employment contract between LCH and Doe, entitled "TERMINATION OF AGREEMENT," provides:

This Agreement may be terminated by either party upon written notification personally served upon the

other party, or service by U.S. Certified mail, if said personal service cannot be made. Said termination shall be ninety (90) days after said service or at any time which may be agreeable to both **[*13]** parties. The employer shall have the right to terminate the Agreement for cause without notice. Cause includes, but is not limited to, such contingencies or the suspension or loss at any time by [Doe] of his license to practice medicine in the State of Ohio; disciplinary action by any medical authority or conviction of a criminal act or total disability or incapacity.

The trial court found that Doe was an at-will employee and that the employment contract provided that either party could terminate the agreement without cause, or for any reason, upon giving a ninety-day notice, and that LCH could terminate the agreement without prior notice for one of the listed causes. We agree.

Doe further contends that even if this Court determines that he was an at-will employee, his termination was wrongful and summary judgment was inappropriate. Specifically, Doe avers that he could not be discharged without cause because the facts and circumstances surrounding the employment agreement altered the terms of the contract such that he could only be terminated for one of the listed causes, and that promissory estoppel precluded his discharge.

[HN7]

Employment which is "at-will" is terminable **[*14]** at any time for any reason by either party. *Henkel v. Council Education Research* (1976), 45 Ohio St. 2d 249, 344 N.E.2d 118. However, under certain conditions, an employment-at-will relationship may be considered to be modified or altered such that the employer's right to peremptorily discharge an employee is limited. These limitations, that is exceptions to the employment-at-will doctrine, are enumerated in *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 483 N.E.2d 150. Under the first exception, employee handbooks, company policy, and oral representations may be sufficient to create implied or express contractual provisions that alter the terms for discharge. Under the second exception, an employer's right to discharge may be limited by representations or promises made to the employee, which fall within the doctrine of promissory estoppel. 19 Ohio St. 3d at 103-104. Doe advances arguments under both exceptions.

Doe argues that oral representations were made to him which sufficiently altered the terms for discharge such that LCH could only terminate his employment for one of the listed causes. In support, Doe refers to a conversation **[*15]** he had with Lockard prior to signing the employment agreement. Doe asserts that Lockard stated that Lockard and LCH were "looking for a long-term commitment from [Doe] for the community, for a family practice physician to come there and stay in the community." Doe further alleges that, during a dinner party, a number of hospital board members also told Doe that they were looking for Doe to make a long-term commitment to LCH.

The trial court found that these statements did not promise life-long job security and that the statements were "oral expressions of [ ] hope." The court further opined that these expressions were typical of statements made surrounding most employment relationships. We agree and find that the trial court correctly determined as a matter of law that the "oral representations" could not serve as the basis for finding that Doe's status as an employee-at-will had been altered.

Under the second *Mers* exception, an employer's right to discharge an employee may be limited by representations or promises made to the employee which give rise to the application of promissory estoppel. *Mers, supra,* at 104. In support of the promissory estoppel **[*16]** exception to at-will-employment contracts, Doe points to the same statements analyzed above. *Mers* explained the application of promissory estoppel in the context of employment-at-will situations as follows:

We therefore hold that where appropriate the doctrine of promissory estoppel is applicable and binding to *oral employment-at-will agreements* when a promise which the employer should reasonably expect to induce action or forbearance on the part of an employee does induce such action or forbearance, if injustice can be avoided only by the enforcement of the promise.

The tests in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and if so, whether the expected action or forbearance actually resulted and was detrimental to the employee. (Emphasis added.)

*Id.* We note that *Mers* pertains to oral agreements. We need not decide whether *Mers* is applicable to written employment-at-will agreements, however, because we find that the statements were vague references, and not of the specific type of oral representations *Mers* recognized as creating a situation of promissory estoppel.

In **[*17]** *Mers*, the employer made specific oral representations that Mers would be reinstated with back pay if the criminal charges against him were

resolved in his favor. Mers claimed that he relied on this specific promise to his detriment. Since the criminal charges were ultimately dismissed, a factual issue was raised as to whether a dismissal satisfied the employer's condition of a favorable resolution. Unlike *Mers*, wherein the oral promise made to the employee was very specific as to the condition of the employee's reinstatement, Doe has not identified a specific promise made to him which would indicate that Doe was hired, as he contends, for his life-time and that he could only be fired if one of the "cause" provisions came to fruition. See *Smith v. St. Elizabeth Medical Ctr.*, 1986 Ohio App. LEXIS 8746 (Oct. 14, 1986), Montgomery App. No. 9676, unreported (holding that "generous promises of promotion and benefits for continued service are not in themselves inconsistent with an employment-at-will agreement which may be terminated by either party at any time for any reason. While in effect both parties may rely upon such an agreement and enforce it but they have no right to rely upon its continuance. **[*18]** ")

Based on the foregoing, we find that the trial court did not err in granting summary judgment in favor of Lockard and LCH since it correctly determined, as a matter of law, that Doe's employment was terminable at will at all times by either party. Accordingly, Doe's fifth assignment of error is overruled.

**THIRD ASSIGNMENT OF ERROR**

**THE PLAINTIFF HAS PROVEN HIS CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SO THAT SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED.**

In his third assignment of error, Doe argues that the trial court erred in granting Lockard and LCH's motion for summary judgment because there is a genuine issue with regard to whether Lockard's conduct constituted intentional infliction of emotional distress. This Court is of the opposite opinion.

In order to sustain an action for intentional infliction of emotional distress Doe must show there are genuine issues of material fact in the following elements: 1) that Lockard either intended to cause emotional distress or knew or should have known that his actions would result in serious emotional distress to Doe; 2) that Lockard's conduct was so extreme and outrageous as to go 'beyond all **[*19]** possible bounds of decency' and was such that it can be considered as utterly intolerable in a civilized community; 3) that Lockard's actions were the proximate cause of Doe's psychic injury; and 4) that the mental anguish Doe suffered is serious and of a nature that no reasonable man could be expected to endure. See Restatement of Torts 2d 77, Section 46, comment j; *Yeager v. Local Union 20* (1983), 6 Ohio St. 3d 369, 453 N.E.2d 666.

[HN8]

In employment-related situations, the establishment of infliction of emotional distress requires more than just verbal abuse. The evidence establishing infliction of emotional distress in an employment situation must follow the guidelines as enunciated by the Ohio Supreme Court:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, **[*20]** and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

*Yeager*, 6 Ohio St. 3d 369 at 374-375, 453 N.E.2d 666.

Doe insists that Lockard's handling of the videotape constituted extreme and outrageous behavior. He further asserts that "it is arguable that Lockard's wrongful discharge of [Doe] constituted extreme and outrageous **[*21]** conduct." Pursuant to our disposition of Doe's fifth assignment of error, we reject Doe's contention that Lockard and LCH intentionally caused him emotional distress in improperly terminating his employment. We further find that Doe failed to present evidence that Lockard's conduct concerning the videotape constituted evidence of outrageous conduct

worthy of causing a legal infliction of emotional distress. Furthermore, Doe failed to present evidence that he suffered serious emotional distress. In fact, Doe testified that neither he nor his wife, who also alleged injury, ever went to a doctor for their suffering. See *Sheets v. Rockwell Internatl. Corp.* (1990), 68 Ohio App. 3d 345, 588 N.E.2d 271.

Accordingly, we find the trial court properly granted summary judgment in favor of Lockard and LCH on Doe's claim of intentional infliction of emotional distress.

**FOURTH ASSIGNMENT OF ERROR**

**SUMMARY JUDGMENT WAS INCORRECTLY GRANTED BECAUSE THE PLAINTIFF HAS PROVEN A BREACH OF CONTRACT, SATISFYING HIS CLAIM FOR INTENTIONAL INTERFERENCE WITH A CONTRACT.**

Doe avers that the trial court erred in granting summary judgment in favor of LCH and Lockard on **[*22]** his claim for intentional interference with contract. This Court disagrees.

Doe's claim alleged that LCH and Lockard had intentionally interfered with Doe's contract with SOE. [HN9]In order to establish a claim for tortious interference with contract Doe must prove: (1) the existence of his contract with SOE, (2) Lockard's and LCH's knowledge of the contract, (3) Lockard's and LCH's intentional procurement of the contract's breach, (4) lack of justification for the intentional procurement of the breach, and (5) resulting damages. *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St. 3d 171, 707 N.E.2d 853, paragraph one of the syllabus, affirming and following *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St. 3d 415, 650 N.E.2d 863, paragraph two of the syllabus. Furthermore, a causal connection must be established between the breach of contract and the actions of the defendant. *Metro. Life Ins. Co. v. Triskett Illinois, Inc.* (1994), 97 Ohio App. 3d 228, 236, 646 N.E.2d 528, citing *Contadino v. Tilow* (1990), 68 Ohio App. 3d 463, 589 N.E.2d 48.

Although we disagree with the trial court's rationale, **[*23]** we find that summary judgment was appropriate. The trial court explained that Doe's contract with SOE contained a provision which permitted SOE to terminate DOE's employment if any facility at which Doe is scheduled requests Doe's removal from the schedule. The court then examined a letter, written by Lockard to SOE, in which Lockard requested that Doe be removed from LCH's emergency room schedule. The court concluded that Doe's termination was a result of Lockard's request, and therefore, Doe's termination "was not a breach of [Doe's] contract with [SOE] but simply the enforcement of an express contractual provision of said contract, which contract [Doe] agreed to by signing it."

This finding is not supported by the record. Although both the contract between SOE and Doe and the April 28, 1997 letter appear in the record, there is no evidence as to SOE's reason for terminating Doe's contract. The trial court expressly acknowledged this fact in examining Doe's claim against SOE for breach of contract, which is not at issue on appeal.

Doe's contract with SOE is an at-will contract, it permits either Doe or SOE to terminate the agreement "with or without cause, upon thirty **[*24]** (30) days written notice." Because SOE complied with the thirty day notice provision, regardless of its reason for doing so, Doe cannot prove that SOE breached the contract.

Accordingly, we find that summary judgment was proper on Doe's intentional interference of contract claim. The fourth assignment of error is overruled.

**SIXTH ASSIGNMENT OF ERROR**

**SINCE THE PLAINTIFF HAS PROVEN THAT PUNITIVE DAMAGES ARE WARRANTED, SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED.**

Based on our disposition of Doe's first, second, third, fourth, and fifth assignments of error, we overrule his sixth.

IV. Summary

The judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of

Appeals at [*25] which time the period for review shall begin to run. App.R. 22(E).

Costs taxed to both parties equally.

Exceptions.

DONNA J. CARR

FOR THE COURT

BATCHELDER, P. J.

SLABY, J.

CONCUR

Reda El-Shiekh, M.D., Appellant v. Northwest Ohio Cardiology Consultants, et al., Appellees

Court of Appeals No. L-99-1380

COURT OF APPEALS OF OHIO, SIXTH APPELLATE DISTRICT, LUCAS COUNTY

2000 Ohio App. LEXIS 4143

September 15, 2000, Decided

**PRIOR HISTORY:** [*1] Trial Court No. CI-97-4238.

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff doctor sought review of a decision of the Lucas County Court of Common Pleas (Ohio),,which granted summary judgment in favor of defendants, cardiology consultants, in an interference with contract cause of action brought against defendants by plaintiff.

**OVERVIEW:** After plaintiff doctor received poor evaluations from defendants, cardiology consultants, the plaintiff was released from his contract with a clinic. Plaintiff filed suit against defendants for tortious interference with a contract, civil conspiracy, and defamation. Defendants moved for summary judgment. The trial court granted defendants' motion for summary judgment. The court affirmed. Plaintiff failed to present some factual evidence that defendants' motives or actions were improper. Defendants' meetings and contacts with the clinic were not separate causes of actions apart from defendants' letters. Defendants' letters were opinion and were protected as privileged and were an absolute defense to plaintiff's claim of tortious interference. Plaintiff's underlying claim of tortious interference was without merit; therefore, his civil conspiracy claim also failed.

**OUTCOME:** Judgment affirmed. Plaintiff doctor failed to present some factual evidence that defendants, cardiology consultants', motives or actions were improper. Defendants' letters were privileged and were an absolute defense to plaintiff's claim of tortious interference with a contract.

**CORE TERMS:** tortious interference, doctor, summary judgment, clinic, assignment of error, fellowship, cardiology, cardiologist, rotation, civil conspiracy, deposition, actual malice, moving party, genuine issue, assignments of error, privileged, well-taken, training, nonmoving party, causes of action, underlying claim, speculation, defamation, motivation, enclosed, entitled to judgment, conspiracy claim, initial burden, party opposing, matter of law

**LexisNexis(TM) HEADNOTES - Core Concepts**

***Civil Procedure > Appeals > Standards of Review***

[HN1]The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court.

***Civil Procedure > Summary Judgment > Summary Judgment Standard***

[HN2]Summary judgment is controlled by Ohio R. Civ. P. 56(C).

***Civil Procedure > Summary Judgment > Summary Judgment Standard***

[HN3]See Ohio R. Civ. P. 56(C).

***Civil Procedure > Summary Judgment > Burdens of Production & Proof***

[HN4]The moving party must be able to specifically point to some evidence of the type listed in Ohio R. Civ. P. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Ohio R. Civ. P. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

***Civil Procedure > Summary Judgment > Burdens of Production & Proof***

[HN5]A party opposing a motion for summary judgment is entitled to have all admissible evidence construed most favorably in his behalf. However, the nonmovant may not rely upon the mere allegations or denial in the pleadings, but must set forth specific facts showing there is a genuine issue for trial. Thus, if the party opposing a motion for summary judgment can show, through affidavits, depositions, or otherwise, being construed most strongly in his favor, that he has

presented a genuine issue of a material fact about which reasonable minds could differ, that party is entitled to have the motion for summary judgment denied.

***Torts > Business & Employment Torts > Interference With a Contract***

[HN6]A claim for tortious interference with contract is comprised of the following elements: (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages.

***Torts > Business & Employment Torts > Interference With a Contract***

***Torts > Defamation & Invasion of Privacy > Statutory Privileges***

[HN7]Where claims such as tortious interference and disparagement are based on statements that are qualifiedly privileged under defamation law, the protection afforded those statements under the Jacobs standard must also apply in the derivative claims. Privileged statements may be those which are made to protect some kind of public interest, such as ensuring the quality of health care administered to the general public. In order to succeed on a tortious interference claim, a plaintiff must demonstrate clear and convincing evidence that the privileged communication was made with actual malice, that is, with knowledge that the statements are false or with reckless disregard as to their truth or falsity.

***Torts > Business & Employment Torts > Interference With a Contract***

[HN8]Under the Jacobs rationale, truthful statements, where not confidential, are a complete defense to tortious interference where the underlying claim is based upon allegations of defamatory statements. Likewise, opinions, statements which can be proven neither true nor false, are also a defense.

***Torts > Multiple Defendants > Conspiracy***

[HN9]A civil conspiracy claim cannot succeed without an underlying unlawful act. Where all the substantive causes of action on which a conspiracy claim is based are without merit, a conspiracy claim must also fail

**COUNSEL:** David Zoll and Michelle Kranz, for appellant.

William Connelly and Anthony Turley, for appellee Roger A. Miller, M.D.

Fritz Byers, for appellee Northwest Ohio Cardiology Consultants, Inc.

**JUDGES:** Peter M. Handwork, J., James R. Sherck, J., George M. Glasser, J. CONCUR. Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.

**OPINIONBY:** James R. Sherck

**OPINION:** DECISION AND JUDGMENT ENTRY

SHERCK, J. This appeal comes to us from a summary judgment issued by the Lucas County Court of Common Pleas in favor of the defendants in an interference with contract action. Because we conclude that the trial court properly granted summary judgment, we affirm.

In 1994, appellant, Dr. Reda El-Shiekh, began a cardiovascular fellowship with the Medical College of Ohio ("MCO"). This occurred because Defiance Clinic and MCO entered into an agreement whereby Defiance Clinic agreed to fund part of appellant's fellowship conditioned upon his agreeing to become the clinic's full-time cardiologist upon completion of his three-year training. Prior to the agreement between MCO and Defiance Clinic, Northwest Ohio **[*2]** Cardiology Consultants ("NWOCC") also sought to provide cardiac services to the clinic. However, according to the clinic's CEO, Chad Peter, once Defiance Clinic entered into the agreement for services and the fellowship program with MCO, NWOCC ceased its solicitation for cardiology services with the clinic. Roger A. Miller, then a physician with NWOCC, initially co-directed the fellowship program with Theodore Fraker, a doctor with MCO. Fellowship participants were scheduled to do cardiology training rotations at both MCO and Toledo Hospital.

Appellant completed his first rotation in the fall of 1994 working under the supervision of cardiologists at MCO. In January and February 1995, appellee completed a rotation at Toledo Hospital, under the supervision of NWOCC.

In late February or early March 1995, at a regularly scheduled NWOCC meeting, several doctors expressed serious concerns about appellant's performance during his rotation at Toledo Hospital. It was decided that these doctors were to submit letters on this matter to Dr. Fraker. By this time, Dr. James F. Bingle had taken the position of co-director of the joint fellowship program, as Dr. Miller was seeking retirement.

In **[*3]** a letter to Dr. Fraker dated March 13,1995, Dr. Bingle stated,

"As I had discussed with you by phone, a number of physicians in our group have expressed grave concerns about [appellant's] ability to function as a first year fellow in our cardiology program. A number of their concerns will be outlined in the letters enclosed.

"It is my feeling that we should get together to assess his overall status in the program, particularly as the first year nears a close, addressing the question as to whether he is qualified or not to continue."

Three letters from Dr. John L. Schwartz, Dr. Todd L.

Monroe, and Dr. John R. Letcher were enclosed with Bingle's letter.

Also in late February or early March, Dr. Miller went to Defiance Clinic on behalf of Toledo Area Health Partners Ltd. ("TAHP"), a group of physicians attempting to establish a new health insurance program. In the course of his conversations at the clinic, Dr. Miller spoke with Chad Peter about appellant. Dr. Miller stated that appellant had received "some bad reviews" from some of the NWOCC doctors. Nothing more specific was said.

In a letter dated April 4, 1995 to Dr. Allen Gaspar at the Defiance Clinic, Dr. Fraker acknowledged [*4] the receipt of the NWOCC letters on March 23, 1995 and enclosed copies of them. In that letter, Dr. Fraker suggested that while appellant demonstrated some difficulties, he was showing steady improvement, but his clinical abilities were not inadequate. Nevertheless, Dr. Fraker then went on to state that, while MCO still hoped to find a cardiologist for the clinic as part of the mutually beneficial arrangement, he was leaving it to Defiance Clinic to decide for itself whether, based upon the NWOCC concerns, appellant would be the right person for the position.

Apparently (as it is unclear from the record), just prior to sending his letter to Defiance Clinic, Dr. Fraker and appellant met to discuss the letters and allow appellant to respond. In a letter to Dr. Fraker dated April 7, 1995, appellant referenced the previous meeting and expressed his surprise at the opinions of the NWOCC doctors, noting that evaluations from MCO faculty had been very good. Appellant denied that he had ever exhibited incompetence and gave possible alternative explanations for the negative comments which, in his opinion, were inconsistent with the positive feedback he had received during the Toledo Hospital [*5] rotation. Appellant suggested that the NWOCC doctors' letters were financially motivated due to their rejected offer to provide a cardiologist to Defiance Clinic. Appellant then stated that he preferred not to do future rotations at Toledo Hospital, "where evaluations may be motivated by some biased physicians who will incur financial losses when I finish my cardiology fellowship and join the Defiance Clinic."

On June 28, 1995, Dr. Gaspar, by letter, informed appellant that Defiance Clinic was releasing appellant from his contract. Dr. Gaspar stated that "it has been our policy in recruiting physicians that any feeling of discomfort is sufficient reason to continue to looking [sic] at other options. We hope you can realize that this is not in any way a personal value judgment."

Despite the termination of his Defiance Clinic contract, appellant was permitted to finish his three-year fellowship. He received several employment offers, and in January 1998, accepted a position as a cardiologist at the Green River Heart Institute in Owensboro, Kentucky.

In August 1997, appellant filed suit against NWOCC, with Dr. Miller as its statutory agent, Dr. Bingle, Dr. Monroe, Dr. Schwartz, [*6] and Dr. Letcher. Appellant alleged claims of tortious interference with a contract, civil conspiracy, and defamation.

Appellee Dr. Miller moved to dismiss the suit based upon a one year statute of limitations for defamation. The court denied the motion, noting that the underlying claim, tortious interference with a contract, has a four-year limitations period.

Appellees Dr. Miller and NWOCC then moved for summary judgment. After considering the depositions of Chad Peter, Dr. Fraker, Dr. Miller, and appellant, as well as additional affidavits from the NWOCC doctors, the trial court concluded that Dr. Miller's statements to Chad Peter were true, constituting a complete defense to the defamation action upon which the tortious interference with a contract claim was based. The court also determined that the letters submitted by the NWOCC physicians were opinions and were, thus, constitutionally protected as being absolutely privileged communications. The trial court then granted summary judgment in favor of appellees as to all of appellant's claims, including civil conspiracy since it, too, was based upon interference with a contract.

Appellant now appeals that judgment, setting forth [*7] the following five assignments of error:

"I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT EL-SHIEKH BY FAILING TO CONSTRUE A KEY FACT/INTERFERENCE IN FAVOR OF APPELLANT EL-SHIEKH.

"II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT EL-SHIEKH WHEN IT IMPROPERLY LIMITED ALL ACTS OF