2000 Ohio App. LEXIS 4143

INTERFERENCE BY APPELLEES SOLELY TO CONTENT OF APPELLEE MILLER'S STATEMENT TO THE DEFIANCE CLINIC AND THE CONTENT OF APPELLEES' LETTERS TO THE MEDICAL COLLEGE OF OHIO.

"III. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT EL-SHIEKH WHEN IT GRANTED APPELLEES' MOTIONS FOR SUMMARY JUDGMENT AS THE DEFAMATION DEFENSES OF TRUTH AND ABSOLUTE PRIVILEGE DO NOT APPLY TO OHIO TORTIOUS INTERFERENCE WITH CONTRACT CLAIMS.

"IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT EL-SHIEKH BECAUSE EVEN IF TRUTH IS A COMPLETE DEFENSE, THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER APPELLEE MILLER MADE A TRUE STATEMENT OF FACT.

"V. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT EL-SHIEKH BECAUSE EVEN IF ABSOLUTE PRIVILEGE IS A COMPLETE DEFENSE, THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER APPELLEES' INTERFERENCE CONSTITUTED FALSE STATEMENTS OF FACT AS OPPOSED TO CONSTITUTIONALLY [*8] PROTECTED OPINIONS."

Appellant's assignments of error essentially contest the validity of the trial court's grant of summary judgment. [HN1]The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court. Lorain Natl. Bank v. Saratoga Apts (1989), 61 Ohio App. 3d 127, 129, 572 N.E.2d 198.

[HN2]Summary judgment is controlled by Civ.R. 56(C), which states in pertinent part:

[HN3]"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, *** show that there is no genuine issue as to any material fact, and, construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

[HN4]
The moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial

burden, [*9] the motion for summary judgment must be denied. Dresher v. Burt (1996), 75 Ohio St. 3d 280, 294-295, 662 N.E.2d 264, citing to Celotex Corp. v. Catrett (1986), 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548.

However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. Dresher, supra; Mitseff v. Wheeler (1988), 38 Ohio St. 3d 112, 114-115, 526 N.E.2d 798.

I.

Appellant, in his first assignment of error, claims that the trial court failed to construe a key fact in favor of his tortious interference with a contract claim. Specifically, appellant maintains that the trial court was required to infer from the evidence presented that appellees wrote letters after Dr. Miller's comment to Chad Peter and that their motivation for such comment and letters was a desire to provide cardiology services to Defiance Clinic.

[HN5]A party opposing a motion for summary [*10] judgment is entitled to have all admissible evidence construed most favorably in his behalf. Williams v. First United Church of(1974), 37 Ohio St. 2d 150, 152, 309 N.E.2d 924. However, the nonmovant may not rely upon the mere allegations or denial in the pleadings, but must set forth specific facts showing there is a genuine issue for trial. Dresher, supra; Mitseff v. Wheeler (1988), 38 Ohio St. 3d 112, 114-115, 526 N.E.2d 798. Thus, if the party opposing a motion for summary judgment can show, through affidavits, depositions, or otherwise, being construed most strongly in his favor, that he has presented a genuine issue of a material fact about which reasonable minds could differ, that party is entitled to have the motion for summary judgment denied. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St. 2d 64, 66, 375 N.E.2d 46.

In this case, appellees submitted affidavits stating that, after the meeting of the NWOCC doctors, Dr. Miller commented to Chad Peter that appellant had received "some bad reviews." Dr. Miller gave no further details. Contrary to appellant's argument, Dr. Fraker could not remember whether [*11] he heard from Chad Peter or Dr. Bingle first. In response, appellant offers only his own speculation that Dr. Miller's motivation for making the comment was to get Defiance Clinic's cardiology business. However, we can find nothing in the record to support this "inference."

The record shows that the events involving the NWOCC doctors discussion of appellant at their meeting, the doctors' evaluation letters, Dr. Miller's presentation and comment at the clinic, the call to Dr. Fraker, and Dr. Fraker's letter to Defiance Clinic all occurred within a very short time frame. Even if we presume that Dr. Miller's comment was made prior to the sending of the doctors' letters, appellant has produced nothing to show that this comment was improperly motivated or not based upon verbal "bad reviews." In addition, Chad Peter testified in deposition that after Defiance contracted with MCO for a cardiologist, NWOCC made no further efforts to have the clinic utilize its services. In our view, any inferences must be based upon facts presented, not on mere speculation. Therefore, appellant failed to present some factual evidence to show appellees' improper motives or actions and the trial court properly [*12] construed the evidence presented.

Accordingly, appellant's first assignment of error is not well-taken.

II.

Appellant, in his second assignment of error, claims that the trial court erred in limiting the bases for his claim for tortious interference with a contract to certain actions, i.e., Dr. Miller's statement to the clinic and the NWOCC doctors' letters.

[HN6]A claim for tortious interference with contract is comprised of the following elements: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification and (5) resulting damages." Kenty v. Transamerica Premium Ins. Co. (1995), 72 Ohio St. 3d 415, 650 N.E.2d 863, paragraph two of the syllabus.

In this case, appellant contends that, in addition to the statements made by Dr. Miller and the NWOCC physicians, the "actions" of appellees should be considered as separate bases for tortious interference, i.e, Dr. Miller's contact with the Defiance Clinic "for illicit purposes and financial gain" and the NWOCC doctors' meeting at which it was agreed that letters would be written by the doctors [*13] who had experienced unsatisfactory performance by appellant.

We agree with the trial court that appellant's underlying claim for his tortious interference claim is that the NWOCC doctors and Dr. Miller, by their statements, caused Defiance Clinic to terminate appellant's contract. In our view, facts about the alleged contact and meeting were offered simply to establish the motive for the statements. Therefore, these "actions" are not separate causes of action, but

simply factual evidence to be considered in determining whether or not appellant has met his summary judgment burden.

Upon a complete reading of the record, nothing indicates that Dr. Miller's contact with the Defiance Clinic was for anything other than to present the health insurance proposal. Likewise, other than appellant's speculation or opinion, we can find no factual evidence to indicate the NWOCC physicians' meeting itself was anything but a routine activity. Appellant argues that, because the physicians did not use the regular evaluation forms to communicate their concerns, this demonstrates some improper motivation. However, nothing in the record establishes that MCO did not accept or that there was anything improper [*14] about the use of such letters in lieu of a formal evaluation procedure. Therefore, the trial court did not err in its determination that the only actions which actually support appellant's claim are Dr. Miller's statement to the clinic and the NWOCC physician letters.

Accordingly, appellant's second assignment of error is not well-taken.

III.

We will address appellant's third and fourth assignments of error together. Appellant, in his third assignment of error, argues that truth or privilege for opinions are not defenses to a claim of tortious interference. Appellant, in his fourth assignment of error, states that even if such defenses are permitted, there remain genuine issues of material fact as to whether appellees' statements were truthful or protected opinions.

In A & B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council (1995), 73 Ohio St. 3d 1, 15, 651 N.E.2d 1283, the Supreme Court of Ohio held that [HN7]"where claims such as tortious interference and disparagement are based on statements that are qualifiedly privileged under defamation law, the protection afforded those statements under Jacobs [v. Frank (1991), 60 Ohio St. 3d 111, 573 N.E.2d 609], [*15] at paragraph two of the syllabus, must also apply in the derivative claims." Privileged statements may be those which are made to protect some kind of public interest, such as ensuring the quality of health care administered to the general public. A & B-Abell, supra, at 9; Jacobs, supra, 60 Ohio St. 3d 111, 573 N.E.2d 609, at paragraph one of the syllabus. In order to succeed on a tortious interference claim, a plaintiff must demonstrate clear and convincing evidence that the privileged communication was made with actual malice, that is, with knowledge that the statements are

false or with reckless disregard as to their truth or falsity. A & B-Abell, supra, at 9.

[HN8]Applying the Jacobs rationale, truthful statements, where not confidential, would be a complete defense to tortious interference where the underlying claim is based upon allegations of defamatory statements. See id. Likewise, opinions, statements which can be proven neither true nor false, would also be a defense. See Vail v. The Plain Dealer Publishing Co. (1995), 72 Ohio St. 3d 279, 649 N.E.2d 182.

In this case, since Dr. Miller was a member of the group of doctors which was, in fact, supervising [*16] some of appellant's training, his interest in protecting public health was sufficient to warrant communication as to appellant's progress. Nothing in the record indicates that any of the information disseminated was confidential or that appellees breached any duty of confidentiality. Therefore, regardless of whether it referred to verbal or written evaluations, Dr. Miller's statement to Chad Peter that appellant had received "some bad reviews," was both privileged and true. Appellant has suggested, but offered no proof that Dr. Miller lied and then attempted a "cover up" by having the doctors write letters to substantiate his statement. Therefore, since appellant did not establish that Dr. Miller's statement was either false or made with actual malice, it fails to establish a claim for tortious interference.

For the same reasons, the NWOCC physicians who were in charge of appellant's training at Toledo Hospital were certainly entitled, in the interest of public health and safety, to express concerns or dissatisfaction with appellant's performance. While appellant may have disagreed with the observations made by the NWOCC physicians or the manner of their evaluation, no evidence was [*17] presented that these letters were based upon false allegations or made with actual malice. In fact, appellant acknowledged in deposition that the letters sent to Dr. Fraker and forwarded to the clinic included only subjective opinions regarding his performance.

In our view, the physician letters were opinion and were protected as privileged. Since appellant has not presented any evidence that the NWOCC physicians acted with actual malice, he cannot establish the elements required for a claim of tortious interference with a contract. Consequently, the trial court did not err in ruling that appellees' statements were an absolute defense to appellant's claim for tortious interference with a contractual relationship. Therefore, we conclude that, since no genuine issues of material fact exist and appellees are entitled to judgment as a matter of law, the trial court did not err in granting summary

judgment as to appellant's claim for tortious interference with a contractual relationship.

Accordingly, appellant's third and fourth assignments of error are not well-taken.

IV.

Appellant, in his fifth assignment of error, contends that the trial court erred in dismissing his civil conspiracy [*18] claim.

[HN9]A civil conspiracy claim cannot succeed without an underlying unlawful act. Williams v. Aetna Fin. Co. (1998), 83 Ohio St. 3d 464, 475, 700 N.E.2d 859. Where all the substantive causes of action on which a conspiracy claim is based are without merit, a conspiracy claim must also fail. See Minarik v. Nagy (1963), 8 Ohio App. 2d 194, 195, 193 N.E.2d 280.

In this case, since we have determined that the underlying substantive causes of action for tortious interference are without merit, appellant's civil conspiracy claim also fails.

Accordingly, appellant's fifth assignment of error is not well-taken.

The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.

JUDGMENT AFFIRMED.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.

Peter M. Handwork, J.

JUDGE

James R. Sherck, J.

George M. Glasser, J.

CONCUR.

Judge George M. Glasser, retired, sitting by assignment [*19] of the Chief Justice of the Supreme Court of Ohio.

2001 Ohio App. LEXIS 1902

DEBRA WOLFE AND NAMON JOHNSON, Plaintiffs-Appellants vs. DON A. LITTLE and KENT J. DEPOORTER, Defendants-Appellees

C.A. Case No. 18718

COURT OF APPEALS OF OHIO, SECOND APPELLATE DISTRICT, MONTGOMERY COUNTY

2001 Ohio App. LEXIS 1902

April 27, 2001, Rendered

**PRIOR HISTORY:** [*1] T.C. Case No. 99-CV-5554.

**DISPOSITION:** Judgment affirmed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Appellants, defendants in a previous action, sought review of a decision of the trial court (Ohio) in favor of appellees, attorneys, which granted their motion to dismiss a claim for abuse of process allegedly arising in the previous action.

**OVERVIEW:** Appellants received a subpoena duces tecum to attend depositions. Appellants claimed they did not attend the depositions on the instructions from their attorney. Appellees' client was granted a default judgment in the amount of $ 25,000. The trial court denied appellant's motion to set aside the judgment and appellants alleged ex parte communication by attorneys occurred that resulted in the judgment being raised to $ 300,000. Appellants filed an action in the trial court alleging abuse of process in the previous case, which the trial court dismissed for failure to state a claim upon which relief could be granted. The appellate court found that appellees committed improper acts in the judicial process in the previous action, but that such acts were committed solely for the benefit of their client. The appellate court ruled that appellants' claim fell short of alleging facts demonstrating that appellees acted maliciously and for an ulterior motive separate from their client's interests. Thus, the appellate court held that no claim for which relief could be granted had been pled and upheld the ruling of the trial court.

**OUTCOME:** The judgment of the trial court was affirmed.

**CORE TERMS:** abuse of process, ulterior purpose, motion to dismiss, maliciously, deposition, duty, ex parte communication, default judgment, ulterior motive, lawsuit, notice, demonstrating, perverted, learning, deprive, survive, abusing, privity, coerce, bare, assignment of error, false information, issue presented, depriving, subpoena, attend, legal proceeding, facts supporting, summary judgment, probable cause

**LexisNexis(TM) HEADNOTES - Core Concepts**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*

*Civil Procedure > Appeals > Standards of Review > De Novo Review*

[HN1]A trial court may only grant a motion to dismiss when, after examining the complaint, it appears beyond doubt that the non-moving party can prove no set of facts which would entitle him to the requested relief. In its examination of the complaint, the trial court must accept all factual allegations contained therein as true, as well as all reasonable inferences drawn therefrom. Although the factual allegations of the complaint are taken as true, unsupported conclusions of a complaint are not sufficient to withstand a motion to dismiss. Furthermore, when a motion to dismiss is granted by the trial court, an appellate court must review that decision de novo.

*Torts > Intentional Torts > Abuse of Process & Malicious Prosecution*

[HN2]The three elements of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. In addition, when an action for abuse of process is raised against an attorney, he may only be held liable if he acts maliciously and has an ulterior purpose which is completely separate from his client's interest. The tort of abuse of process is to provide a remedy in situations where an appropriate legal procedure has been properly initiated, and even has ultimate success, but has been corrupted in order to accomplish some ulterior motive for which a court proceeding was not intended. Abuse of process occurs where someone attempts to achieve, through use of the court, that which the court is itself powerless to order.

2001 Ohio App. LEXIS 1902

*Torts > Intentional Torts > Abuse of Process & Malicious Prosecution*

[HN3]The key consideration in an abuse of process action is whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action.

*Civil Procedure > Trials > Subpoenas*

[HN4]Pursuant to Ohio R. Civ. P. 45(A)(1)(c), a party's attendance at a deposition should be secured by notice, not subpoena.

*Torts > Intentional Torts > Abuse of Process & Malicious Prosecution*

[HN5]The ulterior purpose or motive in an abuse of process action is interpreted as an attempt to gain an advantage outside the proceeding, such as payment of money or surrender of a claim, using the process itself as the threat.

*Torts > Intentional Torts > Abuse of Process & Malicious Prosecution*

[HN6]In order to sustain an abuse of process claim against attorneys, appellants need to allege facts demonstrating attorneys acted maliciously and for an ulterior purpose completely separate from their client's interest.

*Torts > Intentional Torts > Abuse of Process & Malicious Prosecution*

[HN7]Attorneys only owe a duty to third persons arising from their performance as attorneys if the third person is in privity with the attorneys' client or if the attorneys act maliciously.

**COUNSEL:** MICHAEL C. ECKERT, Springboro, Ohio Attorney for Plaintiffs-Appellants.

TRACY A. CASSINELLI, Cincinnati, Ohio Attorney for Defendants-Appellees.

**JUDGES:** BROGAN, J. WOLFF, P. J., and YOUNG, J., concur.

**OPINIONBY:** BROGAN

**OPINION:** BROGAN, J.

Plaintiff-Appellants Debra Wolfe and Namon Johnson ("Appellants") brought the present action against attorneys Don A. Little and Kent J. Depoorter ("Appellees") for abuse of process and breach of duty, allegedly arising in a previous case. In the previous lawsuit ("Loyalty Transfer case"), Appellees represented Loyalty Transfer and Storage, Inc., who filed the action against Wolfe, Johnson, and 3-D Distributing Co., Inc. (collectively, "3-D Distributing

defendants"). Because the procedural history of the Loyalty Transfer case is important to the present case, we will review it briefly as established in Appellants' complaint.

Allegedly, the first contact received by Appellants regarding the Loyalty Transfer case was a subpoena *duces tecum* to attend depositions scheduled for March 19 and 20, 1998. Appellants claim they did not attend the depositions on the instruction of their attorney, H. Vincent [*2] Walsh. On March 20, 1998, Appellees filed a motion for discovery sanctions against the 3-D Distributing defendants, requesting sanctions in the form of default judgment. It was not until four days later, March 24, that Wolfe received service of process and the complaint. It is not clear from the record of this case when Johnson received service.

On March 27, 1998, default judgment was entered against the 3-D Distributing defendants. Thereafter, the 3-D Distributing defendants filed a motion to set aside default judgment, to which Appellees responded. Attached to the response was an affidavit from Little representing that Attorney Walsh had sent him a letter explaining that he had advised Appellants not to appear for their depositions. Attorney Walsh denies ever sending such a letter, and Appellees have never produced it.

The trial court overruled the motion to set aside the default judgment and a damages hearing was held, where the magistrate found the 3-D Distributing defendants liable to Loyalty Transfer for $ 25,000. The trial court filed an entry and judgment adopting this decision.

Approximately three weeks later, the magistrate filed an amended decision wherein she raised [*3] the judgment to $ 300,000. This also was adopted by the trial court in a final judgment entry. Appellants allege that at some point between the issuing of the original judgment entry and the amended magistrate decision, Appellees had an ex parte communication with the court, which resulted in the increased judgment amount.

On December 13, 1999, Appellants filed the present case against Appellees for breach of duty and abuse of process. Soon after filing their answer, Appellees filed a motion to dismiss for failure to state a claim upon which relief may be granted. Special Magistrate Bixler granted the motion to dismiss and Appellants appealed this decision. However, because Magistrate Bixler could not issue a final appealable order, we remanded. The trial court issued a final judgment entry adopting the magistrate's decision, which also was timely appealed. Appellants raised the following assignment of error in their brief:

The trial court erred in granting plaintiff's motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(B)(6).

[HN1]A trial court may only grant a motion to dismiss when, after examining the complaint, it appears beyond doubt [*4] that the non-moving party can prove no set of facts which would entitle him to the requested relief. *York v. Ohio State Hwy. Patrol (1991), 60 Ohio St. 3d 143, 144, 573 N.E.2d 1063.* In its examination of the complaint, the trial court must accept all factual allegations contained therein as true, as well as all reasonable inferences drawn therefrom. *Mitchell v. Lawson Milk Co. (1988), 40 Ohio St. 3d 190, 192, 532 N.E.2d 753.* "Although the factual allegations of the complaint are taken as true, 'unsupported conclusions of a complaint are * * * not sufficient to withstand a motion to dismiss.'" *Shell v. Crain's Run Water and Sewer Dist.,* 2000 Ohio App. LEXIS 125, *3 (Jan. 21, 2000), Montgomery App. No. 17961, unreported, citing *State ex rel. Hickman v. Capots (1989), 45 Ohio St. 3d 324, 324, 544 N.E.2d 639.* Furthermore, when a motion to dismiss is granted by the trial court, an appellate court must review that decision *de novo.* *Groves v. Dayton Pub. Schools (1999), 132 Ohio App. 3d 566, 567, 725 N.E.2d 734.*

Appellants listed three separate issues for review under their sole assignment of error.

First issue [*5] presented for review: Did Appellant's Complaint state a cause of action for abuse of process when it alleged that Appellees intentionally and maliciously committed acts in the furtherance of their improper, ulterior motive of depriving Appellants of their rights to due process, such acts including conducting an ex parte communication with the court which resulted in a 1200% increase of the judgment amount, from $ 25,000 to $ 300,000, lying to the court and filing false documents, and not disclosing important procedural issues?

Appellants allege that Appellees committed the tort of abuse of process during the Loyalty Transfer [HN2]case. The three elements of the tort are: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A. (1994), 68 Ohio St. 3d 294, 298, 626 N.E.2d 115.* In addition, when an action for abuse of process is raised against an attorney, he may only be held liable if he acts [*6] maliciously and has an ulterior purpose which is completely separate from his client's interest. *Thompson v. R & R Service Systems, Inc. v. Cook, 1997 Ohio App. LEXIS 2677,* *36 (June 19, 1997),

Franklin App. No. 96APE10-1277, 96APE10-1278, unreported, citing *Scholler v. Scholler (1984), 10 Ohio St. 3d 98, 462 N.E.2d 158,* paragraph one of syllabus (other citations omitted). The tort of abuse of process developed to provide a remedy in situations where an appropriate legal procedure has been properly initiated, and even has ultimate success, but has been corrupted in order to accomplish some ulterior motive for which a court proceeding was not intended. *Yaklevich,* 68 Ohio St. 3d at 297. Basically, "abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." *Robb v. Chagrin Lagoons Yacht Club, Inc. (1996), 75 Ohio St. 3d 264, 271, 662 N.E.2d 9.*

The parties do not dispute that the first element of this tort was met. The Loyalty Transfer case was a legal proceeding that was set in motion in proper form and with probable cause. Conversely, the second element is disputed [*7] by the parties. In order to show the process was perverted to accomplish an ulterior purpose, the Appellants must show both an act committed during the process that was not proper in the normal conduct of the proceeding and the Appellees' ulterior motive. *Pheils v. Garber-Lawrence Pub. Group, Inc., 1993 Ohio App. LEXIS 5914,* *38-39 (Dec. 10, 1993), Lucas App. No. L-92-418, unreported (citations omitted).

In their complaint, Appellants allege that Appellees (1) improperly subpoenaed them to a deposition contrary to the civil rules, (2) submitted a false affidavit with their response to Appellants' motion to set aside default judgment, and (3) initiated an ex parte communication with the trial court which resulted in a twelve hundred percent increase in the judgment. Taking these allegations as true, we believe Appellants have demonstrated that Appellees committed improper acts during the judicial [HN3]process. However, the "key consideration in an abuse of process action is whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action." *Yaklevich,* 68 Ohio St. 3d at 300. We find that Appellants did not properly allege an ulterior purpose in their complaint. [*8]

Appellants made a bare allegation that Appellees committed the above three acts with the ulterior purpose to deprive them of their right to due process. However, Appellants were required to allege facts demonstrating that these acts were committed for that ulterior purpose. *Nosker v. Greene County Regional Airport Authority,* 1997 Ohio App. LEXIS 2183, *7 (May 23, 1997), Greene App. No. 96 CA 101, unreported. When examining Appellants' complaint,

they did not allege facts supporting this or any other ulterior purpose.

First, Appellees sent a subpoena *duces tecum* to Appellants, as well as sending a notice pursuant to the rules, in order to secure their testimony in a deposition and compel them to bring necessary documents. Although this could have been a procedural mistake n1, there were no facts indicating how use of the subpoenas could have deprived Appellants of their due process rights, or that they were used for any other ulterior purpose.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 [HN4]Pursuant to Civ.R. 45(A)(1)(c), a party's attendance at a deposition should be secured by notice, not subpoena.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*9]

Appellants further alleged that Little filed an affidavit with the trial court containing false information. The only potential false information we can discern would be a statement that Appellants' attorney had sent a letter to Little explaining that he had advised Appellants not to attend their depositions. Again, clearly it is not appropriate to submit an affidavit containing false information. However, Appellants did not disclose facts in their complaint demonstrating that this allegedly false statement was made to deprive them of their due process rights.

Finally, Appellants claimed that Appellees had an ex parte communication with the trial court which resulted in the trial court filing an amended judgment entry increasing the judgment amount from $ 25,000 to $ 300,000. Taking the allegations in the complaint as true, an ex parte communication with the trial court is completely inappropriate and could possibly subject the attorney to disciplinary action, if proven. Nonetheless, even if this ex parte communication occurred, the complaint does not state facts supporting that it was conducted for any purpose other than furthering the interests of Appellees' client.

Assuming arguendo [*10] Appellants properly pled deprivation of due process as an ulterior purpose, their abuse of process claim still would not survive a motion to dismiss. [HN5]In reviewing several abuse of process cases, we found that the ulterior purpose or motive has been interpreted as an attempt to gain an advantage outside the proceeding, such as payment of money or surrender of a claim, using the process itself as the threat. *Robb,* 75 Ohio St. 3d at 271 (abusing process to

coerce members of a yachting club to vote in their favor). See, also, *Blank v. Secrux, Inc.* (1997), 123 Ohio App. 3d 248, 255, 704 N.E.2d 21 (abusing process to coerce payment of a settlement regardless of merit); *Thompson,* 1997 Ohio App. LEXIS 2677, *37 (abusing criminal process to coerce adjustment of private civil claims); *Chain v. Internatl City Bank and Trust Co.* (E.D. La.1971), 333 F. Supp. 463, 466 (listing typical ulterior purposes as extortion of money, prevention of a conveyance, compelling someone to give up possession of something of value, when these things were not the purpose of the suit).

In contrast, Appellants in the present case claim that Appellees [*11] perverted the process in order to deprive them of their due process rights. Appellants rely on *Pheils v. Garber-Lawrence Pub. Group, Inc.,* 1993 Ohio App. LEXIS 5914 (Dec. 10, 1993), Lucas App. No. L-92-418, unreported, to argue that deprivation of due process rights has been recognized as an ulterior purpose in an abuse of process claim. The case appealed in *Pheils* was the fifth in a line of lawsuits brought by David Pheils or someone in privity with him to enforce a settlement agreement against the Garbers. *Pheils,* 1993 Ohio App. LEXIS 5914, *9. In the latest case, service by publication was utilized because the Pheils claimed that they could not with due diligence locate a current address for the Garbers. When the Garbers did not file an answer, default judgment was entered against them. After learning of the default judgment, the Garbers successfully had it vacated, and filed an answer and several counterclaims, including a claim for abuse of process. *Id.* at pp. 6-7. Following motions for summary judgment from every party, the trial court granted all filed by the Pheils, particularly granting judgment in their favor on the abuse of process claim. *Id.* at p.7.

The court of appeals in *Pheils* [*12] reversed summary judgment on the abuse of process claim, finding there were genuine issues of material fact regarding the elements of the tort, including the ulterior purpose. *Id.* at p.14. More specifically, the court found the possible ulterior purposes for using service by publication on the basis of known inaccurate information were to prevent the Garbers from learning of and defending the case, or harassment. *Id.*

On the other hand, in *Grange Mut. Cas. Co. v. Klatt,* 1997 Ohio App. LEXIS 1125 (Mar. 18, 1997), Franklin App. No. 96APE07-888, unreported, the court found no abuse of process with similar facts. The plaintiffs in *Klatt* issued service through the Secretary of State with the alleged ulterior purpose of prohibiting appellees from learning of and defending the action. The *Klatt* court found this fell short of an abuse of

process claim because the service was not completed in an attempt to gain a collateral benefit outside of the process, but instead was an improper use of the rules to gain an objective contemplated by the process, i.e. succeeding in the lawsuit. *Klatt, 1997 Ohio App. LEXIS 1125, *13.*

We agree with this reasoning of the *Klatt* court. In the present case, Appellants [*13] claim that Appellees presumably issued a subpoena instead of notice to appear for a deposition, filed an allegedly false affidavit, and conducted an ex parte communication with the court, all with the ulterior purpose of depriving Appellants of their right to due process. Like the allegations in *Klatt*, we believe this falls short of the ulterior motive necessary for an abuse of process claim, because it was not an attempt to gain a collateral benefit outside of the process. Instead, Appellees were acting to advance the interests of their client and succeed in the lawsuit.

Because Appellees are attorneys, [HN6]in order to sustain an abuse of process claim against them, Appellants needed to allege facts demonstrating Appellees acted maliciously and for an ulterior purpose completely separate from their client's interest. *Thompson, 1997 Ohio App. LEXIS 2677, *29-30.* Instead, they only made bare allegations in their complaint that these acts were done with the ulterior purpose of depriving them of their due process rights. See, *Nosker, supra.* As we stated previously, bare, conclusory allegations are insufficient to survive a motion to dismiss. ***State ex rel. Fain v. Summit Cty. Adult Prob. Dept.* (1995), 71 Ohio St. 3d 658, 659, 646 N.E.2d 1113.** [*14] Further, all improper acts allegedly committed by Appellees would also logically advance the best interests of their client.

Based on the foregoing, we agree with the trial court that Appellants did not sufficiently plead an ulterior purpose to support their abuse of process claim. The first issue for review is therefore overruled.

Second issue presented for review: In Ohio, does an attorney owe a duty to an opposing party to refrain from maliciously initiating and participating in ex parte communications the direct result of which is the raising of a judgment by 1200% without notice and to refrain from engaging in other malicious conduct such as filing false documents and concealment of important procedural issues?

Appellants attempt to argue that "as attorneys licensed to practice in the State of Ohio," Appellees owed duties to Appellants not to commit the acts alleged in the first issue for review. We agree with the trial court there is no basis in law for these "duties." Instead, [HN7]attorneys only owe a duty to third persons

arising from their performance as attorneys if the third person is in privity with the attorneys' client or if the attorneys act maliciously. *Scholler, supra,* [*15] at paragraph one of syllabus. Appellants made no allegations in their complaint that they were in privity with Appellees' client, but instead alleged that Appellees "maliciously breached the aforementioned duties."

Even though Appellants used the word "maliciously" under this cause of action in the complaint, this is not sufficient in itself to withstand a motion to dismiss. Because Appellees do not have a duty to begin with, they cannot "maliciously breach" nonexistent duties. Furthermore, Appellants draw an unsupported conclusion that the attorneys acted "maliciously," which is also insufficient to survive a motion to dismiss. See ***Shell, supra.***

Because no duty existed for Appellees to have breached against Appellants, their second issue for review is overruled.

Third issue presented for review: Do the facts alleged in Plaintiff's complaint state any claim upon which relief may be granted or have Plaintiffs simply suffered a maliciously inflicted injury for which the Courts recognize no remedy?

Appellants do not present any new arguments in their third issue for review that were not already addressed in the prior two issues. However, in answer to the question posed by [*16] Appellants, their appropriate remedy would have been a timely appeal to the Loyalty Transfer case.

Based on the foregoing, we find the trial court did not err in granting Appellees' motion to dismiss. Accordingly, Appellants' sole assignment of error is overruled. Judgment affirmed.


WOLFF, P. J., and YOUNG, J., concur.

1999 Ohio App. LEXIS 1692; 15 BNA IER CAS 1340

PROFESSIONAL BALANCE COMPANY, Plaintiff-Appellant/Cross-Appellee, - vs - FULTON & ASSOCIATES BALANCE CO., et al., Defendants-Appellees/Cross-Appellants.

CASE NO. 97-L-238

COURT OF APPEALS OF OHIO, ELEVENTH APPELLATE DISTRICT, LAKE COUNTY

1999 Ohio App. LEXIS 1692; 15 BNA IER CAS 1340

April 16, 1999, Decided

**PRIOR HISTORY: [*1]**

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas. Case No. 96 CV 001243.

**DISPOSITION:** JUDGMENT: Affirmed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant company sought review of the judgment of the Lake County Court of Common Pleas (Ohio), which granted appellee former employees' motion for a directed verdict on all but one count of appellant's complaint and denied appellant's motion for a directed verdict after the jury found against appellant on its breach of fiduciary duty claim. Appellees filed a cross-appeal on counterclaims.

**OVERVIEW:** Appellant was an air balancing company. Appellee former employees had been vice-presidents of appellant. Appellees quit their jobs with appellant and started their own air balancing company. Some of appellees' coworkers also decided to work for appellees. Appellees' new business was awarded many contracts that one appellee had bid on during his employment with appellant. Appellant sued appellees for breach of fiduciary duty and related claims. Appellees filed a counterclaim. With respect to the appeal of the directed verdict granted to appellant on appellees' counterclaim, the court found that the evidence did now show anything beyond bad intent, which did not support an abuse of process claim. In appellant's challenge to the trial court's refusal to grant a directed verdict on appellant's breach of fiduciary duty claim, appellant argued that one appellee was a director. The court responded that even if he was a director, the jury could have still concluded that he breached no fiduciary duty. Finally, the court found that the trial court properly overruled appellant's motion for a new trial on its tortious interference claim because appellees were competitors.

**OUTCOME:** Judgment that granted appellee former employees' motion for a directed verdict on all but one count of appellant's complaint and denied appellant's motion for a directed verdict after jury found against appellant on its remaining claim was affirmed. Appellees' cross-appeal on their counterclaims was denied because the court found abuse of process required more evidence than a wish for revenge.

**CORE TERMS:** directed verdict, breach of fiduciary duty, tortious interference, bid, abuse of process, fiduciary duty, minute, competitor, elected, business relationship, counterclaim, shareholder, perverted, balancing, air, judgment notwithstanding, assignments of error, assignment of error, board of directors, own business, new trial, vice-president, contractor, interfered, starting, quit, accomplish, technician, recruited, discovery

**LexisNexis(TM) HEADNOTES - Core Concepts**

*Civil Procedure > Trials > Judgment as Matter of Law*

[HN1]In deciding whether to grant a motion for a directed verdict or a judgment notwithstanding the verdict, a trial court must construe all of the evidence most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support its side of the case, upon which reasonable minds may reach a different conclusion, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.

*Torts > Intentional Torts > Abuse of Process & Malicious Prosecution*

[HN2]The elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. A jury could find an appellant liable for abuse of process if it finds, by the greater weight of the evidence, that appellant makes an improper use of process for an ulterior motive and that it causes damage to appellees. When determining

1999 Ohio App. LEXIS 1692; 15 BNA IER CAS 1340

whether a proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, there is no liability for abuse of process where appellant does nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

***Business & Corporate Entities > Corporations > Directors & Officers***

[HN3]One cannot involuntarily become a director of a corporation.

***Torts > Business & Employment Torts > Interference With a Contract***

[HN4]The elements of the tort of tortious interference are: (1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional or improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of a privilege or justification; and, (5) resulting damages. Under Ohio law, not all interferences with a contract are actionable, only improper interferences. Ohio courts are guided by the following factors for determining whether interferences with contractual relations are tortious: the nature of the actor's conduct; the nature of the expectancy with which his conduct interferes; the relations between the parties; the interest sought to be advanced by the actor; and, the social interests in protecting the expectancy on one hand and the actor's freedom of action on the other hand. There is a specific exception or privilege to interfere with a business relationship for business competitors.

**COUNSEL:** ATTY. ROBERT J. VALERIAN, ATTY. CALEB J. McARTHUR, Cleveland, OH (For Plaintiff-Appellant/Cross-Appellee).

ATTY. E. MARIE WHEELER, Akron, OH (For Defendants-Appellees/Cross-Appellants).

**JUDGES:** HON. DONALD R. FORD, P.J., HON. JUDITH A. CHRISTLEY, J., HON. ROBERT A. NADER, J. FORD, P.J., CHRISTLEY, J., concur.

**OPINIONBY:** ROBERT A. NADER

**OPINION:** OPINION

NADER, J.

Appellant, Professional Balance Company ("PBC"), is appealing from a jury verdict and a directed verdict against it as a result of a lawsuit it filed against appellees, Fulton & Associates Balance Company ("FABC"), Don Fulton, and Dave Fulton. Appellees

are cross-appealing a directed verdict against their counterclaims.

PBC is an air balancing company. The main duty of an air balancing company is to adjust the heating and air conditioning systems in new or renovated buildings. Don Fulton, the son-in-law of Don Burke, PBC's president and owner, worked at PBC as a balance engineer. He also had a title of vice president of the company. The present dispute arose when Don Fulton quit PBC, on June 25, 1996, **[*2]** and started his own air balancing company, FABC, in competition with PBC. Don's brother, Dave Fulton, also quit PBC on that date to work for FABC. Five of PBC's other employees subsequently quit to work for FABC.

PBC sued appellees, claiming: misappropriation of trade secrets; breach of fiduciary duty; tortious interference with a business relationship; and, unfair competition. Appellees filed a counterclaim asserting: abuse of process; tortious interference with a business relationship; and, slander. The case proceeded to a jury trial, held on June 16 and 17, 1997. From our review of the trial transcript, we determine that the following events occurred:

Don Burke started PBC in 1972. In 1974, he hired Don Fulton as a technician. A few years later, he hired Dave Fulton as an estimator. Dave was responsible for contacting building contractors about available jobs and bidding on them. Many other members of the Burke family worked for PBC, at different times and in different capacities.

On June 4, 1990, the shareholders elected Don Fulton to be a director of the corporation. n1 On the same date, Don Fulton was also elected Vice-President (Production) and Dave Fulton was elected Vice-President **[*3]** (Sales). The only evidence presented that Don was a director were minute sheets from the shareholders' and Board of Directors' meetings. Nothing from the record indicates that Don accepted the position as director, participated in any meetings with the board of directors, or knew that he was elected to be a director of the corporation. Similarly, although they were referred to as vice-presidents, no evidence indicates that either Don or Dave knew that they had been elected as vice-presidents of the corporation. Neither Don nor Dave explicitly admitted or denied knowledge of their fiduciary positions with PBC.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Appellant at trial presented the minutes of the meetings of the Board of Directors and shareholders. The minutes showed that the only people present at the shareholders' meeting were Don Burke and his wife,

Sharon Burke, who was also the corporation's secretary. The minutes further showed that Don Burke was the sole shareholder of the corporation. The minutes for the Board of Directors meeting showed that Don Fulton was present. However, Don Fulton did not sign the minute sheet, though signed by Don and Sharon Burke. No other evidence on the record would indicate that any notice was given of the meeting. Both meetings were held on June 4, 1990, at 37903 Euclid Avenue, Willoughby, Ohio.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

[*4]

Over the years, Don Fulton and Don Burke had discussions regarding Don Burke eventually retiring and selling PBC to Don Fulton and some other employees. Many different sale proposals were discussed; none of which was satisfactory to the parties involved. At some point, Don Fulton began to believe that the sale would not work out to his satisfaction and looked into starting his own air balancing business.

The parties do not dispute that, in 1996, Don Fulton took the following actions in anticipation of possibly starting his own business: consulted an attorney in February; filed articles of incorporation in March; opened a corporate bank account in May; rented a small amount of office space for about $ 75 per month in April or May; purchased liability insurance; applied for and received certain loans; and, made other miscellaneous business expenditures.

Don Fulton claimed that most of these steps were taken as a preliminary matter, and that he did not make his final decision to leave PBC until June of 1996. He had never specifically told Don Burke that he was taking steps to start his own business until the day he quit PBC, without notice. Up to that point, he had, at most, told [*5] Don Burke that he would have to look out for his own interest if things did not work out for the sale of PBC.

The testimony indicates that, before he terminated his employment at PBC, Don Fulton had told some of his co-workers, including his brother Dave, that he was thinking about leaving and starting his own company and had inquired about whether they would be interested in leaving as well. Shortly after the Fultons left, three of PBC's technicians and two of its administrative staff joined FABC. One of the administrative staff members did some work in connection with starting the company, during her spare

time, while still employed by PBC. As a result of the loss of these employees, PBC was severely short-handed and suffered a loss in average monthly sales of over $ 50,000. Because air balancing technicians are highly specialized employees who require about five years of training, PBC had trouble filling the vacancies left by their former employees.

Dave Fulton was PBC's estimator. He had, essentially, the same position and duties, locating and bidding on jobs, in his new job at FABC. The bidding process involved locating jobs through contact with customers and contractors or [*6] through the Builder's Exchange. Often, PBC and FABC obtained contracts because of Dave Fulton's relationship with different contractors who would contact him. Bidding was not a set process and involved a certain amount of negotiation. Sometimes, a contractor would call PBC or FABC to tell them that a competitor had bid less for a job, and offered them the job if they would match the competitor's bid. The evidence shows that it was not a strictly confidential process.

Appellant established that on his last day at PBC, Dave Fulton bid $ 36,000 on a contract with the Benjamin Rose Institute for PBC, then later bid $ 29,000 for the same contract while employed at FABC. The job was awarded to FABC. Appellant also established that Dave Fulton bid on numerous contracts while employed at FABC that he had also bid on while employed at PBC. Don Burke and the Fultons testified that many of the bids submitted by FABC were lower than PBC's bids, and that FABC got a majority of those jobs. Don Burke further testified that because of FABC's lower bids, PBC lost $ 217,060 in sales.

Appellees moved for directed verdict at the end of appellant's case, which the trial court denied. At the end of [*7] the appellee's case, both appellant and appellees moved for directed verdicts on all counts. The trial court granted appellant's motion for a directed verdict on appellees' counterclaims and granted appellees' motion for a directed verdict on all counts of appellant's complaint, except for the breach of fiduciary duty claim against Don Fulton.

The issues before the jury with regard to the breach of fiduciary claim were: whether Don Fulton was a director of PBC; whether while he was a director, and still employed by PBC, he set up a business in direct competition with PBC; whether while he was a director, and still employed by PBC, he usurped corporate opportunities from PBC; and, whether while he was a director, and still employed by PBC, he recruited PBC employees for his own business. The jury returned a verdict, filed on June 19, 1997, in favor of appellee. On July 3, 1997, appellant filed a motion for judgment notwithstanding the verdict or, in the

1999 Ohio App. LEXIS 1692; 15 BNA IER CAS 1340

alternative, for a new trial on the breach of fiduciary duty claim, and for a new trial on the tortious interference claim. The trial court denied this motion.

Appellant raises the following assignments of error for our review: [*8]

"[1.] The trial court erred to the prejudice of the plaintiff when it denied plaintiffs motion for a judgment not withstanding the verdict on plaintiff's claim of a breach of fiduciary duty by defendant Donald Fulton.

"[2.] The court erred to the prejudice of the plaintiff when it granted defendant's motion for a directed verdict on plaintiff's claims for tortious interference with business relations.

"[3.] The trial court erred to the prejudice of the plaintiff when it denied plaintiff's motion for a judgment not withstanding the verdict on plaintiffs claim of tortious interference with business relationships by defendant Donald Fulton."

Appellees cross-appeal and raise the following assignment of error for our review:

"[1.] The trial court erroneously granted plaintiffs motion for a directed verdict on defendant's abuse of process counterclaim."

Appellees' assignment of error asserts that the trial court erred by granting a directed verdict on their abuse of process claim. Appellees claim that there is evidence upon which reasonable minds could conclude that the legal proceeding was perverted to accomplish something for which it was not designed; and, [*9] therefore, a directed verdict was not appropriate. Appellant counters that it did nothing more than carry out the lawsuit to its authorized conclusion, and therefore, is not liable.

[HN1]In deciding whether to grant a motion for a directed verdict or a judgment notwithstanding the verdict, a trial court must construe all of the evidence most strongly in favor of the party against whom the motion was made, and, where there is substantial evidence to support its side of the case, upon which reasonable minds may reach a different conclusion, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions. _Posin v. A.B.C. Motor Court Hotel, Inc._ _(1976), 45 Ohio St. 2d 271, 275; 344 N.E.2d 334._

[HN2]The elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not

designed; and (3) that direct damage has resulted from the wrongful use of process. _Yaklevich v. Kemp,_ _Schaeffer & Rowe Co., L.P.A. (1994), [*10] 68 Ohio_ _St. 3d 294, 298; 626 N.E.2d 115._ A jury could have found appellant liable for abuse of process if it found, by the greater weight of the evidence, that appellant made an improper use of process for an ulterior motive and that it caused damage to appellee. 2 Ohio Jury Instructions (1997) Section 200.03(4). When determining whether a proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, there is no liability for abuse of process where appellant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. _Yaklevich_ at fn. 2.

In its counterclaim, appellees claimed that appellant perverted the process by pursuing spurious claims of theft of confidential records and unfair competition without evidence, conducted abusive discovery, and used the litigation as a weapon for settling a family score. The only evidence introduced to support appellees' claim was the testimony of Don Burke's daughter-in-law, who was called by appellees and was still employed by appellant. She testified that Don Burke wanted to put appellees out of business for two years. As a result, appellees contended, [*11] their business operations were disrupted, causing financial loss.

While the discovery may have been burdensome and disruptive to the Fultons, no evidence shows that appellant engaged in abusive discovery practices. The evidence, at best, shows no more than a generalized bad intention and ill will on the part of Don Burke, who is not a party to this action. For parties to a dispute to end up in litigation, there is often bad intent, or a wish for revenge, on the part of one or both parties. To hold parties liable for abuse of process and allow trials for any such claim, with no other evidence than having a general "bad intent," would create major difficulties for our justice system. Beyond one unsupported, conclusory assertion, appellees failed to produce any evidence to demonstrate how the process was perverted beyond the normal prosecution of a lawsuit. Therefore, appellees' cross-assignment of error has no merit.

In appellant's first assignment of error, it argues that the trial court erred by not granting appellant's judgment notwithstanding the verdict on its breach of fiduciary duty complaint against Don Fulton. Though they may have had claims for breach of fiduciary duty against [*12] both Fultons for their acts as agents of the corporation, appellant's appeal addresses only Don Fulton's fiduciary duty in his role as a director. Appellant claims that Don Fulton was a director of

PBC and that as a director, and while still employed by PBC, he: set up a business in direct competition with PBC; usurped corporate opportunities from PBC; and, recruited PBC employees for his own business. Appellee argues that Don Fulton was not a director, and that, if he were, he did nothing to breach his fiduciary duty.

Although he never explicitly denied that he was a director, there is sufficient evidence by which a finder of fact could conclude that Don Fulton was not a director. The only evidence that Don Fulton was a director of PBC were the minutes of the shareholders' meeting where he was elected director. No evidence was presented that he accepted the position, that he ever participated in any directors' meetings, or that he performed any corporate functions as a director. [HN3]One cannot involuntarily become a director of a corporation. Under such a framework, a corporation could effectively eliminate its competition by electing any possible competitor to its board of directors, [*13] then bringing suit for breach of fiduciary duty for any who tried to compete with it.

Even had the jury concluded that Don Fulton was a director of PBC, there was ample evidence by which the jury could conclude that he breached no fiduciary duty. The jury could have found, based on Don Fulton's testimony, that his telling Don Burke that he would have to look out for his own interests, if the sale of PBC did not work out, was sufficient to satisfy his duty to fully disclose his competition with PBC. The jury was also presented with sufficient evidence to conclude that Don Fulton took only preparatory steps to start FABC while still employed by PBC and did not actually compete until after he left; so, he therefore did not usurp corporate opportunities from PBC while still a director. Further, the jury was presented with evidence sufficient to conclude that, the bidding process was informal; and, that although Don Fulton's knowledge of PBC's bids on certain projects may have given him some advantage, it was not the cause of PBC's loss of those contracts. In light of this evidence, the trial court's denial of appellant's judgment notwithstanding the verdict was proper, and appellant's [*14] first assignment of error is without merit.

We will address appellant's second and third assignments of error, both involving its claim for tortious interference, together. In its second assignment, appellant disputes the trial court's granting a directed verdict and, in its third assignment, appellant disputes the trial court's denial of its motion for a new trial. Appellant claims appellee, Don Fulton, tortiously interfered with its business relationships with its employees. Appellee claims that he did nothing improper because the employees decided to leave

under their own free will and he did nothing to coerce them to leave. These assignments of error do not address any possible claims of tortious interference for interfering with PBC's relationships with its potential customers.

Appellant's tortious interference claim addresses exactly the same facts that were presented to the jury in its breach of fiduciary duty claim. Appellant argued that appellee breached his fiduciary duty by recruiting PBC's employees while a director of the corporation. Due to the directed verdict, the question of whether he also tortiously interfered with PBC's employees by breaching his fiduciary duty [*15] was not submitted to the jury for a decision. In overruling appellant's motion for a new trial, the trial court found that appellant failed to present any evidence of illegal or independently actionable conduct by Don Fulton, or of any damages that proximately resulted from the loss of the employees. It further found that Don Fulton's actions were justified acts of competition. Appellant argues that Don Fulton was a director of the corporation at the time he interfered with appellant's employees, and was, therefore, not a competitor.

[HN4]The elements of the tort of tortious interference are: (1) a business relationship or contract; (2) the wrongdoers knowledge of the relationship or contract; (3) the wrongdoers intentional or improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of a privilege or justification; and, (5) resulting damages. *A & B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Construction Trades Council* (1995), 73 Ohio St. 3d 1, 14; 651 N.E.2d 1283; *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St. 3d 415, 419; 650 N.E.2d 863; *Doyle v. Fairfield Machine Co., Inc.* [*16] (1997), 120 Ohio App. 3d 192, 216; 697 N.E.2d 667, 683.

Under Ohio law, not all interferences with a contract are actionable, only improper interferences. Ohio courts are guided by the Restatement of Torts, which sets forth the following factors for determining whether interferences with contractual relations are tortious: the nature of the actor's conduct; the nature of the expectancy with which his conduct interferes; the relations between the parties; the interest sought to be advanced by the actor; and, the social interests in protecting the expectancy on one hand and the actor's freedom of action on the other hand. *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App. 2d 51; 379 N.E.2d 235, 238, quoting 4 Restatement of the Law 2d, Torts (1979) Section 767.

As appellant concedes, Section 768 of the Restatement contains a specific exception or privilege to interfere with a business relationship for business competitors.

1999 Ohio App. LEXIS 1692; 15 BNA IER CAS 1340

After appellee started FABC, he became a competitor of PBC, and was justified in recruiting his former co-workers. Had the jury found that appellee recruited PBC's employees in breach of his fiduciary duty to PBC, then he improperly abused his position of trust, [*17] constituting interference sufficient to provide the basis for tortious liability. *Contract Crush and Screen Co. v. Jack F. Neff Sand & Gravel Inc.*, 1997 Ohio App. LEXIS 832 (Mar. 7, 1997), Lake App. No. 96-L-043, unreported.

On this issue, we agree with appellant that he produced evidence sufficient to overcome appellees' motion for a directed verdict; however, error by the trial court in granting appellees' motion was harmless. The jury considered the same facts on the breach of fiduciary duty claim that were presented for the tortious interference claim. By finding that appellee did not breach its fiduciary duty, the jury found that appellee had not acted improperly. No other facts were alleged or presented by appellant. Thus, the jury could not have found that Don Fulton improperly interfered with PBC's business relationships, once it determined there had been no breach of fiduciary duty.

Therefore, appellant's second and third assignments of error are without merit. We affirm.

JUDGE ROBERT A. NADER

FORD, P.J.,

CHRISTLEY, J.,

concur.

1998 Ohio App. LEXIS 5035

AMERICAN PROCESS DESIGN, INC., Plaintiff-Appellee, v. WILLIAM DEBOER, Defendant-Appellant.

APPEAL No. C-971045

COURT OF APPEALS OF OHIO, FIRST APPELLATE DISTRICT, HAMILTON COUNTY

1998 Ohio App. LEXIS 5035

October 30, 1998, Date of Judgment Entry on Appeal

**NOTICE:**
**PUB-STATUS: [*1]** THESE ARE NOT OFFICIAL HEADNOTES OR SYLLABI AND ARE NEITHER APPROVED IN ADVANCE NOR ENDORSED BY THE COURT. PLEASE REVIEW THE CASE IN FULL.

**PRIOR HISTORY:** Civil Appeal From: Hamilton County Court of Common Pleas. TRIAL NO. A-9600528.

**DISPOSITION:** Judgment Appealed From Is: Affirmed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant employee appealed the decision of the Hamilton County Court of Common Pleas (Ohio), granting summary judgment in favor of plaintiff former employer, on the employee's counterclaim for abuse of process.

**OVERVIEW:** The former employer alleged that the employee breached a clause in his employment contract prohibiting him from working for a competitor within 90 days of leaving the company. The former employer also brought an action against the new employer of employee, for tortiously interfering with the contractual relationship between it and the employee. The employee argued the former employer's refusal to discuss settlement prior to his dismissal from the new employer, as evidence that the suit against the new employer was filed for the improper purpose of securing the dismissal. The employe also cited various discovery disputes that occurred during the pendency of the claims for the proposition that the former employer attempted to accomplish the ulterior motive of effectuating his termination. The court ruled that the employee failed to show that the proceeding had been perverted in an attempt to accomplish an ulterior motive, as the former employer's conduct was readily attributable to proper litigation strategy and could have been made in conjunction with nearly any lawsuit.

**OUTCOME:** The judgment was affirmed.

**CORE TERMS:** counterclaim, summary judgment, immediate appeal, assignment of error, abuse of process, piecemeal, factual determination, multiple-claim, single-party, effective, genuine issue of material fact, appealable order, certification, evidentiary, termination, judicial economy, order appealed, subject-matter, adjudicates, assignments of error, abuse of discretion, improper purpose, nonmoving party, ulterior motive, leave to file, tortious-interference, breach-of-contract, instituted, accomplish, appealable

### LexisNexis(TM) HEADNOTES - Core Concepts

*Civil Procedure > Entry of Judgments > Multiple Claims & Parties*

[HN1]Ohio R. Civ. P. 54(B) does provide for appeal when fewer than all claims are disposed of.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*

[HN2]A motion for summary judgment is to be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and, with the evidence viewed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*

[HN3]A properly supported motion for summary judgment forces the nonmoving party to produce evidence on the issues for which it would bear the burden of production at trial. When a party supports its motion for summary judgment by evidentiary material as set forth in Ohio R. Civ. P. 56(E), the opposing party has a duty to submit affidavits or other competent evidentiary material to demonstrate that there is a genuine issue for trial.

*Torts > Intentional Torts > Abuse of Process & Malicious Prosecution*

[HN4]To prevail on a claim of abuse of process, the following elements must be established: (1) that a legal proceeding has been instituted in proper form and with probable cause; (2) that the proceeding has been

perverted in an attempt to accomplish an ulterior motive or purpose for which it was not designed; and (3) that damage has resulted from the wrongful use of process.

*Civil Procedure > Summary Judgment*

*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*

[HN5]The decision of a trial court to grant leave for the filing of a summary judgment motion will not be reversed absent an abuse of discretion.

*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*

[HN6]An abuse of discretion means more than a mere error of law or judgment; it implies that the trial court's decision is unreasonable, arbitrary, or unconscionable.

**HEADNOTES:** TORT MISCELLANEOUS - APPELLATE REVIEW/CIVIL

**SYLLABUS:**

The trial court did not err in granting summary judgment on the defendant's counterclaim for abuse of process in conjunction with his former employer's suits for breach of contract and tortious interference, where the defendant failed to adduce evidence that the employer's suits were instituted to accomplish an ulterior motive for which the proceedings were not designed.

[But, see, DISSENT: The granting of summary judgment on the defendant's counterclaim did not constitute a final appealable order despite the trial court's use of Civ.R. 54(B)language, and the appeal should accordingly be dismissed.]

**COUNSEL:** Robert A. Burke, for Plaintiff-Appellee.

Michael A. Roberts, for Defendant-Appellant.

**JUDGES:** HILDEBRANDT, Judge. SUNDERMANN, P.J., concurs. GORMAN, J., dissents.

**OPINIONBY:** HILDEBRANDT

**OPINION:** DECISION.

HILDEBRANDT, Judge.

Defendant-appellant, William DeBoer, appeals the decision of the Hamilton County Court of [*2] Common Pleas granting summary judgment in favor of plaintiff-appellee, American Process Design, Inc. ("APD"), on DeBoer's counterclaim for abuse of process. For the following reasons, we affirm the trial court's decision.

The record indicates that DeBoer was employed by APD as an engineer from May 1995 until December 1995. On January 2, 1996, Deboer began working in the same capacity for MTD & Associates, Inc. (MTD).

On January 29, 1996, APD filed a complaint in which it alleged that DeBoer had breached the clause in his employment contract prohibiting him from working for a competitor of APD within 90 days of leaving the company. It also brought an action against MTD, claiming that it had tortiously interfered with the contractual relationship between APD and DeBoer.

After discovery had begun in APD's actions against DeBoer and MTD, MTD terminated DeBoer. Then, on September 25, 1996, DeBoer filed a counterclaim against APD alleging abuse of process. Specifically, he alleged that APD had instituted the breach-of-contract and tortious-interference actions as an improper means to cause DeBoer's termination by MTD.

On July 3, 1997, the trial court granted APD leave to file a motion [*3] for summary judgment as to Deboer's counterclaim, and on July 17, 1997, APD filed its motion, with a supporting affidavit. The trial court granted APD's motion for summary judgment in an entry dated October 30, 1997. The trial court certified that there was no just reason for delaying an appeal pursuant to Civ. R. 54(B), and this timely appeal followed.

Before we address the assignments of error, we must first determine if the trial court's grant of summary judgment as to DeBoer's counterclaim constituted a final appealable order. The trial court's determination that there was no just reason for delay has not been challenged on appeal, but the issue was discussed at oral argument. Having reviewed the matter, we conclude that the trial court did not abuse its discretion in its determination. While the dissent relies heavily on *Noble v. Colwell* n1 for the proposition that the instant appeal should be dismissed, the *Noble* court in fact cited the precise procedural posture of the case at bar as an example of when an appeal may be taken prior to the adjudication of all claims. n2 The *Noble* court stated as follows:

*** An order fully disposing of a counterclaim and entered pursuant to a determination and direction under Rule 54(b) is appealable as a final decision, though the plaintiff's claim, or another counterclaim, remains to be litigated. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 *Noble v. Colwell (1989), 44 Ohio St. 3d 92, 540 N.E.2d 1381.*

1998 Ohio App. LEXIS 5035

[*4]

n2 *Noble v. Colwell*, supra, at 95, 540 N.E.2d at, 1384.

n3 *Id.,* quoting 6 Moore, Federal Practice (2 Ed.1986), 54-226 to 54-229.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

For a general discussion of the reasons that the issues raised in an abuse-of-process claim are not inextricably linked to the underlying claims so as to prevent a Civ.R. 54(B) certification, see *Huntington Natl. Bank v. Summers.* n4 While we are mindful of the dissent's concern over piecemeal litigation, [HN1]Civ.R. 54(B) does provide for appeal when fewer than all claims are disposed of, and we hold that such procedural mechanism was properly used in the instant case. We therefore address the assignments of error on their merits.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 1985 Ohio App. LEXIS 8739 (Sept. 12, 1995), Franklin App. No. 85 AP-204, unreported.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*5]

In his first assignment of error, DeBoer claims that the trial court erred in granting APD's motion for summary judgment on his counterclaim for abuse of process. We are not persuaded.

Pursuant to Civ.R. 56(C), [HN2]a motion for summary judgment is to be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and, with the evidence viewed most strongly in favor of the nonmoving party, that conclusion is adverse to that party. n5 [HN3]A properly supported motion for summary judgment forces the nonmoving party to produce evidence on the issues for which it would bear the burden of production at trial. n6 When a party supports its motion for summary judgment by evidentiary material as set forth in Civ.R. 56(E), the opposing party has a duty to submit affidavits or other competent evidentiary material to demonstrate that there is a genuine issue for trial. n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St. 3d 587, 589, 639 N.E.2d 1189, 1192.

[*6]

n6 *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St. 3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

n7 *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 65-66, 375 N.E.2d 46, 47.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[HN4]To prevail on a claim of abuse of process, the plaintiff must establish the following elements: (1) that a legal proceeding has been instituted in proper form and with probable cause, (2) that the proceeding has been perverted in an attempt to accomplish an ulterior motive or purpose for which it was not designed, and (3) that damage has resulted from the wrongful use of process. n8 In the case at bar, APD concedes for purposes of argument that the first and third elements have been met, but contends that DeBoer has failed to establish a genuine issue of material fact as to the second element. We agree.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n8 *Robb v. Chagrin Lagoons Yacht Club* (1996), 75 Ohio St. 3d 264, 270, 662 N.E.2d 9, 14, reconsideration denied (1996), 75 Ohio St. 3d 1452, 663 N.E.2d 333.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*7]

In contending that sufficient evidence was submitted to the trial court to overcome summary judgment, DeBoer points to several circumstances. n9 DeBoer first notes that APD decided to file a $ 100,000 suit against MTD, while the damages sought in the suit against DeBoer himself were only $ 4,000, and contends that the disproportionate damage claim against MTD was a means to coerce his termination. DeBoer also cites APD's refusal to discuss settlement prior to his dismissal from MTD as evidence that the suit against MTD was filed for the improper purpose of securing the dismissal. He further notes that, following his dismissal from MTD, APD ceased to aggressively pursue the claim against MTD and in fact offered to dismiss the claims against DeBoer and MTD in

exchange for DeBoer's general release of all claims against APD. Finally, DeBoer cites various discovery disputes that occurred during the pendency of the claims for the proposition that APD attempted to accomplish the ulterior motive of effectuating his termination.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n9 APD contends that the circumstances cited by DeBoer were not properly before the trial court pursuant to Civ.R. 56(E). We will assume, without deciding, that the facts asserted by DeBoer were in proper evidentiary form.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*8]

We agree with the trial court that the circumstances cited by DeBoer fail to raise a genuine issue of material fact as to the second element set forth in *Robb*. The allegations made by DeBoer as to APD's conduct are readily attributable to proper litigation strategy and are such as could be made in conjunction with nearly any lawsuit. The evidence propounded by DeBoer is thus very different in nature from the evidence found sufficient by the Supreme Court of Ohio in *Robb*. In *Robb*, the plaintiffs introduced a letter as well as deposition testimony in which the defendants themselves alluded to an improper purpose for the litigation. n10 While we need not reach the question of whether a plaintiff must in each instance uncover such a "smoking gun" to overcome a motion for summary judgment, we do hold that the evidence offered by DeBoer was insufficient to avoid summary judgment in the case at bar. Accordingly, the first assignment of error is overruled.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n10 *Id.* at 271, 662 N.E.2d at 14-15.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In his [*9] second and final assignment of error, DeBoer argues that the trial court erred in granting leave to APD to file its motion for summary judgment on the counterclaim. This argument is without merit.

We first note that [HN5]the decision of a trial court to grant leave for the filing of a summary-judgment motion will not be reversed absent an abuse of discretion. n11 [HN6]An abuse of discretion means

more than a mere error of law or judgment; it implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n11 *Smith v. Cincinnati Gas & Elec. Co.* (1991), 75 Ohio App. 3d 567, 572, 600 N.E.2d 325, 329, jurisdictional motion overruled (1992), 62 Ohio St. 3d 1496, 583 N.E.2d 968.

n12 *Blakemore v. Blakemore* (1983), 5 Ohio St. 3d 217, 219, 450 N.E.2d 1140, 1142.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Here, we find no impropriety in the trial court's decision. The sole basis for DeBoer's argument that the trial court erred is his assertion that the court granted leave based upon the mistaken belief that summary judgment had been [*10] granted as to the breach-of-contract and tortious-interference claims. The trial court's entry does not reflect any reliance on that belief, and, in fact, the record indicates that the trial court had been disabused of any such misconception at the time it granted APD leave to file for summary judgment on the counterclaim. Therefore, DeBoer's second assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

SUNDERMANN, P.J., concurs.

GORMAN, J., dissents.

**DISSENTBY:** GORMAN

**DISSENT:** GORMAN, J., dissenting.

The trial court attempted to use Civ.R. 54(B) to transform its summary judgment on DeBoer's counterclaim into a final appealable order. However, the language of Civ.R. 54(B) has no talismanic quality and cannot make final and appealable an order that does not meet the requirements of R.C. 2505.02. Because these requirements are not met here, this court lacks subject-matter jurisdiction over the instant appeal. Even if it is assumed that the requirements were met, resolution of this appeal does not, in my view, serve the interests of judicial economy and invites piecemeal litigation. Accordingly, I dissent.

1998 Ohio App. LEXIS 5035

The test for determining [*11] whether an order that adjudicates fewer than all claims or rights and liabilities is subject to an immediate appeal under Civ.R. 54(B) involves a two-step inquiry. The trial court must first determine whether the order appealed is final as defined in R.C. 2505.02. If it does, the trial court must then make a factual determination as to whether an immediate appeal is consistent with interests of sound judicial administration. *Wisintainer v. Elcen Power Strut Co. (1993), 67 Ohio St. 3d 352, 354-355, 617 N.E.2d 1136, 1138.*

The trial court's order disposing of DeBoer's counterclaim satisfies neither part of the *Wisintainer* inquiry. Although it affects a substantial right, the order does not determine the action or prevent a judgment as required under amended R.C. 2505.02, effective April 22, 1998. The order is not made in a special proceeding under R.C. 2505.02(A)(2), and it does not vacate or set aside a judgment or grant a new trial pursuant to R.C. 2505.02(B)(3). Neither does the need for immediate appeal of the summary judgment as to the counterclaim satisfy the requirements of a "provisional remedy" under R.C. 2505.02(B)(4). DeBoer would equally be "afforded a meaningful [*12] or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action."

In *Noble v. Colwell (1989), 44 Ohio St. 3d 92, 540 N.E.2d 1381,* the trial court omitted Civ.R. 54(B) language in the judgment entry, and a counterclaim still remained pending. The Ohio Supreme Court held that "where the issue of liability has been determined, but a factual adjudication of relief is unresolved, the finding of liability is not a final appealable order" and therefore not subject to an immediate appeal under Civ.R. 54(B), even on the assumption that the language "no just reason for delay" is present. The requirement that all claims or causes of action must be adjudicated as a predicate to an immediate appeal in single-party/multiple-claim cases derives from the holding of *Chef Italiano Corp. v. Kent State Univ. (1989), 44 Ohio St. 3d 86, 541 N.E.2d 64.* There, the court retained common-law principles by adopting a test in single-party/multiple-claim cases that essentially treats nothing less than the whole case as a judicial unit for purposes of immediate appeal. See, also, *Sears Roebuck & Co. v. Mackey (1956), 351 U.S. 427, 431-432, [*13] 76 S. Ct. 895, 897-898, 100 L. Ed. 1297.* The court employed this same test in its analysis of Civ.R. 54(B) in *Wisintainer. Wisintainer, 67 Ohio St. 3d at 355, 617 N.E.2d at 1139.*

In concluding that there is finality here, the majority relies for its authority on isolated language in *Colwell.*

The quotation is not taken not from the syllabus, the holding, or even the court's own words. Rather, the language quoted is found in the court's lead opinion and is part of a lengthy quotation from 6 Moore Federal Practice (2 Ed.1986) discussing the scope of Fed.R.Civ.P. 54(B), upon which the Ohio rule is admittedly based. As is made clear by the separate concurring opinions in *Noble,* however, effective application of *Ohio's* Civ.R. 54(B) certification is limited to those cases where the order appealed from adjudicates all claims and counterclaims arising from the same set of circumstances. *Noble* is, in this regard, perfectly consistent with the court's adoption in *Chef Italiano* of the judicial-unit concept of finality in single-party/multiple-claim cases.

I cannot account, further, for the majority's citation to *Huntington Natl. Bank v. Summers, 1985 Ohio App. LEXIS 8739* (Sept. 12, 1985), Franklin [*14] App. No. 85AP-204, unreported, a case that predates both *Noble* and *Chef Italiano. Huntington* lends no discussion to the issues here since the court accepted *without analysis* the trial court's Civ.R. 54(B) certification for the purpose of determining the only issue raised in the appeal, which was whether the trial court properly dismissed the appellant's counterclaim under Civ.R. 12(B)(6).

In the second step of the *Wisintainer* test, the primary issue is one of judicial economy and the avoidance of piecemeal appeals. Concededly, an appellate court must be deferential to the trial court's factual determination since the trial court is in the better position to determine how the court's and the parties' resources may be most effectively utilized. As the court observed in *Wisintainer,* "in making its factual determination that the interest of sound judicial administration is best served by allowing an immediate appeal, the trial court is entitled to the same presumption of correctness that it is accorded regarding other factual findings." *Id.* at 354, 617 N.E.2d 1138. However, the trial court's determination is more than a mere "mystical incantation" and is, [*15] presumptively, not absolutely correct. Because DeBoer's counterclaim arises out of the same occurrence as the complaint, an immediate appeal presents a classic example of potential piecemeal appeals with attendant delay in the final determination of the case. Conservation of judicial resources, as well as those of the parties, is best served in this case by one trial and one, not two, appeals.

Being convinced that an immediate appeal of the summary judgment as to DeBoer's counterclaim is improper under Civ.R. 54(B), I would *sua sponte*

1998 Ohio App. LEXIS 5035

dismiss DeBoer's appeal on the basis of a lack of
subject-matter jurisdiction.

2000 Ohio App. LEXIS 2538

MOLTEN METAL EQUIPMENT, PLAINTIFF-APPELLANT v. METAULLICS SYSTEMS, CO. L.P., ET AL., DEFENDANTS-APPELLEES

NO. 76407

COURT OF APPEALS OF OHIO, EIGHTH APPELLATE DISTRICT, CUYAHOGA COUNTY

2000 Ohio App. LEXIS 2538

June 8, 2000, Date of Announcement of Decision

**PRIOR HISTORY: [*1]**

CHARACTER OF PROCEEDING: Civil appeal from Common Pleas Court, No. CV-336002.

**DISPOSITION:** AFFIRMED.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff challenged entry of judgment in favor of defendants upon claims alleging abuse of process and unfair competition asserted against them in the Cuyahoga County Common Pleas Court (Ohio).

**OVERVIEW:** The parties were business competitors in the molten metal pump market. Over the years they litigated in state and federal courts, for patent infringement, misappropriation of trade secrets, and breach of contract. Plaintiff asserted claims alleging defendants engaged in abuse of process and unfair competition. Defendants moved for summary judgment, which was granted. Plaintiff appealed, contending the trial court erred, because the evidence submitted demonstrated genuine issues of material fact existed regarding each element of their claims. The court affirmed, finding plaintiff failed to present admissible evidence raising a question of fact whether the underlying proceeding had been perverted to attempt to accomplish an ulterior purpose for which it was not designed, and it was apparent no genuine issue existed as to whether defendants engaged in unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements designed to harm plaintiff's business.

**OUTCOME:** Judgment was affirmed, as plaintiff failed to present admissible evidence on whether underlying proceeding had been perverted to accomplish ulterior purpose for which it was not designed and no genuine issue of material fact was presented as to whether defendants engaged in unfair commercial practices against plaintiff.

**CORE TERMS:** abuse of process, summary judgment, unfair competition, trade secrets, ulterior purpose, matter of law, lawsuit, accomplish, genuine issue of material fact, perverted, entitled to judgment, assignment of error, genuine issue, malicious, unfair, rumors, malicious prosecution, patent infringement, counterclaims, announcement, properly entitled, improper purpose, question of fact, ulterior motive, evidentiary, unsupported, circulation, conclusory, withstand, favorable

**LexisNexis(TM) HEADNOTES - Core Concepts**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*

[HN1]A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.

*Civil Procedure > Appeals > Standards of Review > De Novo Review*

[HN2]An appellate court's review of summary judgments is de novo.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*

[HN3]Pursuant to Ohio R. Civ. P. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

*Torts > Intentional Torts > Abuse of Process & Malicious Prosecution*

[HN4]The three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2)

2000 Ohio App. LEXIS 2538

that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.

### Torts > Intentional Torts > Abuse of Process & Malicious Prosecution

[HN5]To make a case of abuse of process a claimant must show that one used process with an ulterior motive, as the gist of the offense is found in the manner in which the process is used. The tortious character of the defendant's conduct consists of his attempts to employ a legitimate process for a legitimate purpose in an improper manner, and this point must be clearly shown by the plaintiff to entitle him to maintain his action.

### Torts > Intentional Torts > Abuse of Process & Malicious Prosecution

[HN6]The key consideration in an abuse of process action is whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action.

### Torts > Intentional Torts > Abuse of Process & Malicious Prosecution

[HN7]In an abuse of process case, the improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.

### Torts > Intentional Torts > Abuse of Process & Malicious Prosecution

[HN8]There is no liability for abuse of process where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

### Civil Procedure > Summary Judgment > Summary Judgment Standard

[HN9]In order to defeat appellees' motion for summary judgment, appellant is required to put forth evidence demonstrating triable issues on each essential matter for which it bore the initial burden of proof.

### Civil Procedure > Summary Judgment > Supporting Papers & Affidavits

[HN10]Ohio R. Civ. P. 56(E) provides that supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers

or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

### Civil Procedure > Summary Judgment > Supporting Papers & Affidavits

[HN11]The proper procedure for introducing evidentiary material not specifically authorized by the rule is to incorporate such material by reference in a properly framed affidavit.

### Civil Procedure > Summary Judgment > Supporting Papers & Affidavits

[HN12]Documents submitted in opposition to a motion for summary judgment which are neither sworn, certified, nor authenticated by affidavit have no evidentiary value.

### Antitrust & Trade Law > Trade Practices & Unfair Competition

[HN13]Unfair competition ordinarily consists of representations by one person, for the purpose of deceiving the public, that his goods are those of another.

### Antitrust & Trade Law > Trade Practices & Unfair Competition

[HN14]The concept of unfair competition may also extend to unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another.

**COUNSEL:** For Plaintiff-Appellant: James DeRoche, Esq., Solon, OH.

For Defendants-Appellees: Harry D. Cornett, Jr., Esq., Robert J. Hanna, Esq., Frank R. Osborne, Esq., Arter & Hadden. L.L.P., Cleveland, OH, Jay R. Campbell, Esq., Gordon D. Kinder, Esq., Renner, Otto, Boisselle & Sklar, P.L.L., Cleveland, OH.

**JUDGES:** TIMOTHY E. McMONAGLE, JUDGE. KARPINSKI, P.J. and PATTON, J., CONCUR.

**OPINIONBY:** TIMOTHY E. McMONAGLE

**OPINION:** JOURNAL ENTRY AND OPINION

TIMOTHY E. McMONAGLE, J.:

Plaintiff-appellant Molten Metal Equipment Innovations Inc. ("MMEI") challenges entry of judgment in favor of defendants-appellees Metaullics System Co. L.P. and its general partner Metaullics System Co. ("Metaullics") upon claims alleging abuse of process and unfair competition which MMEI asserted against them in the Cuyahoga County

2000 Ohio App. LEXIS 2538

Common Pleas Court. For the reasons stated below, we affirm.

The record demonstrates that the parties were business competitors in the molten metal pump market. It is undisputed by the parties that Metaullics had historically been the market leader in sales, research and development of molten metal [*2] pumps. Paul V. Cooper had been employed by Metaullics but resigned in June 1990 and became the president and co-owner of MMEI.

Several lawsuits between the entities have been litigated in both state and federal courts. In 1992, Metaullics commenced a patent infringement action against MMEI and Paul Cooper in federal court. In the patent infringement case, MMEI advanced counterclaims for abuse of process and unfair competition which were dismissed by the court. In April 1994, the jury rendered a verdict which was affirmed in the U.S. Court of Appeals on December 21, 1995 against MMEI and Cooper in favor of Metaullics on its patent infringement claims. While the federal patent litigation was pending, on June 1, 1993, Metaullics commenced a "misappropriation of trade secrets" and breach of contract action against MMEI and its president Paul V. Cooper in Cuyahoga County Common Pleas Court. In that case, Metaullics requested injunctive relief "sufficient to redress for the misappropriation of the trade secrets." However, the request for injunction was denied by the court, the matter went to trial and, in March 1995, the jury returned a verdict in favor of MMEI and Cooper on Metaullics' [*3] claims against them. In that case, then, MMEI moved for sanctions against Metaullics claiming the matter had been maliciously filed, but the motion for sanctions was denied by the court.

The action which gives rise to the within appeal was commenced by MMEI on June 13, 1997. In this case, MMEI asserted claims against Metaullics alleging in its amended complaint filed July 3, 1997, that Metaullics engaged in: 1) malicious prosecution; 2) abuse of process; and 3) unfair competition. On August 4, Metaullics filed its answer to the amended complaint in which it generally denied the allegations, asserted counterclaims alleging statutory violations of both the Ohio Deceptive Trade Practices Act and Section 43(a) of the Lanham Act, and asserted a common law claim for unfair competition. Further, in its answer, Metaullics pled the affirmative defenses of *res judicata,* collateral estoppel and statute of limitations among others. On November 3, 1997, Metaullics voluntarily dismissed its counterclaims without prejudice. On February 3, 1998, Metaullics moved for summary judgment on each of the three claims as asserted by MMEI. The trial court granted MMEI

additional time to conduct discovery [*4] pursuant to Civ.R. 56(F) and, on September 14, 1998, MMEI responded to Metaullics' motion. In its response, MMEI elected to abandon its claim of malicious prosecution and opposed the alternative claim of abuse of process and the claim of unfair competition. Briefing of the motion was completed on October 19, 1998, after the filing of Metaullics' reply, MMEI'S surreply and Metaullics' response to MMEI's sur-reply brief. On April 13, 1999, the trial court granted Metaullics' motion for summary judgment as to all claims asserted against it. MMEI filed notice of appeal of the judgment on May 6, 1999. On May 10, the trial court issued a written opinion, *nunc pro tunc,* April 13, 1999. The within appeal follows by which MMEI advances two assignments of error for our review.I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS-APPELLEES AND AGAINST PLAINTIFF-APPELLANT ON PLAINTIFF-APPELLANT'S ABUSE OF PROCESS CLAIM.

II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS-APPELLEES AND AGAINST PLAINTIFF-APPELLANT ON PLAINTIFF-APPELLANT'S CLAIMS FOR UNFAIR COMPETITION.

In each assigned error, appellant contends that the trial [*5] court erred in granting summary judgment in favor of appellees and asserts that the evidence submitted demonstrates that genuine issues of material fact exist with respect to each element of their claims challenged by appellees in their summary judgment motion. n1

- - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n1 Although not at issue in this appeal, we find that summary judgment was appropriately granted on appellant's claim for malicious prosecution which was withdrawn by appellant and not opposed in its briefs.

- - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

[HN1]

Civ.R. 56(C) provides in relevant part:Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the case show that there is genuine issue

as to any material fact and, that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it [*6] appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.

[HN2]An appellate court's review of summary judgments is *de novo.* See *Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St. 3d 35, 506 N.E.2d 212.* In *Zivich v. Mentor Soccer Club (1998), 82 Ohio St. 3d 367, 369-370, 696 N.E.2d 201,* the Ohio Supreme Court restated the appropriate test for summary judgment as follows:[HN3]

Pursuant to Civ.R. 56 summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp. (1995), 73 Ohio St. 3d 679, 653 N.E.2d 1196,* paragraph three of the syllabus. The party moving for summary judgment [*7] bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt (1996), 75 Ohio St. 3d 280, 292-293, 662 N.E.2d 264, 273-274.*

In its first assignment of error, MMEI ("appellant") challenges the trial court's grant of summary judgment in favor of Metaullics ("appellees") on its abuse of process claim.

[HN4]"The three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A. (1994), 68 Ohio St. 3d 294, 626 N.E.2d 115,* paragraph one of the syllabus.

[HN5]"To make a case of abuse of process a claimant must show that one used process with an 'ulterior motive,' as the gist of the offense is found in the manner in which the process is used. *** The tortious character of the defendant's conduct consists of his attempts to employ a legitimate process for a legitimate [*8] purpose in an improper manner, and this point must be clearly shown by the plaintiff to

entitle him [to] maintain his action." *Levine v. Complete Office Supply, Inc., 1996 Ohio App. LEXIS 3859* (Sept. 5, 1996), Cuyahoga App. No. 70006, unreported, citing *Clermont Environmental Reclamation Co. v. Hancock (1984), 16 Ohio App. 3d 9, 11, 474 N.E.2d 357.* [HN6]Thus, "the key consideration in an abuse of process action is whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action." *Yaklevich, supra,* at 300.

[HN7]"In an abuse of process case, 'the improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.' Prosser & Keeton on Torts (5 Ed.1984) 898, Section 121. Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." *Robb v. Chagrin Lagoons Yacht Club, Inc. (1996), 75 Ohio St. 3d 264, 271, 662 N.E.2d 9.* "Therefore, [HN8]'there is no liability [for abuse of process] where [*9] the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.' Prosser & Keeton, *supra,* at 898." *Yaklevich, 68 Ohio St. 3d at 298 at fn. 2.*

Applying the elements of the tort of abuse of process to the present facts, it is apparent that appellant has failed to establish that the underlying trade secrets/breach of contract proceeding was "perverted in an attempt to accomplish an ulterior purpose for which it was not designed." See *Yaklevich, supra.*

The record demonstrates that in its claim asserting abuse of process, appellant alleged that appellees "set in motion legal process and proceeded to prosecute and maintain such proceedings for the ulterior purpose of damaging [appellant's] reputation and viability in the marketplace. [Appellees] engaged in further acts in the use of process not proper in ordinary and regular conduct of the proceeding." Moreover, appellant claimed that as a result of this alleged abuse of process it has suffered damage. Thus, in its amended complaint, appellant has not asserted facts to demonstrate an alleged "ulterior motive."

In their motion for summary judgment on the abuse [*10] of process claim, appellees, in reliance on the pleadings, asserted that they were entitled to judgment as a matter of law because no genuine issue of fact is in dispute; the proceeding was properly brought; no ulterior purpose can be shown by appellant; and no damages were suffered due to the alleged abuse of process. In other words, appellees, in reliance on the pleadings, asserted that appellant is unable to present

2000 Ohio App. LEXIS 2538

evidence to show that the underlying proceeding was "perverted to attempt to accomplish an ulterior purpose for which it was not designed." *Id.*

[HN9]In order to defeat appellees' motion for summary judgment, appellant was required to put forth evidence demonstrating triable issues on each essential matter for which it bore the initial burden of proof. See *Cejer v. Ashmus,* 1994 Ohio App. LEXIS 2167 (May 19, 1994), Cuyahoga App. No. 65538, unreported. In response, appellant submitted the affidavit of Paul Cooper in support of its allegations that the trade secrets litigation was used as a "club" to accomplish the total cessation of appellant's business. This affidavit states in pertinent part:***

3. In February, 1993 I had a private meeting with Richard Chandler, the president [*11] and part owner of *** Metaullics. *** During our meeting *** Chandler indicated that Metaullics intended to file another lawsuit against me and MMEI, this time for theft of trade secrets. *** Chandler did say that the lawsuit would be used to ruin the reputation of MMEI in the industry.

4. In March, 1993 Chandler again threatened to drive MMEI out of business through the trade secrets lawsuit. *** Chandler demanded MMEI go out of business completely. ***

5. *** The legal fees and expenses incurred in the suit, especially in connection with the flurry of activity caused by the injunction proceedings, crippled MMEI's ability to effectively conduct business.

***

7. *** MMEI did in fact suffer a slow down in its business due to the trade secrets lawsuit.[HN10]Civ.R. 56(E) provides:"supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

The Cooper [*12] affidavit constitutes, at best, both hearsay comments, not admissible as evidence, and mere conclusory statements, unsupported by proper evidence, insufficient to withstand defendants-appellees' motion for summary judgment. *Brannon v. Rinzler* (1991), 77 Ohio App. 3d 749, 756, 603 N.E.2d 1049; *Johnson v. Morris* (1995), 108 Ohio App. 3d 343, 348, 670 N.E.2d 1023; *Chagrin Valley Realty Co.*

*v. Motorcars P-A, Inc.,* 1994 Ohio App. LEXIS 801 (Mar. 3, 1994), Cuyahoga App. No. 65707, unreported.

Appellant further claimed that the documents produced in discovery by appellees and attached to its brief in opposition create a genuine issue of fact as to whether appellees used the trade-secret lawsuit as a "marketing tool" and, thus, abused the process.

Civ.R. 56(C) allows a trial court to consider only "pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact," in deciding a summary judgment motion. [HN11]The proper procedure for introducing evidentiary material not specifically authorized by the rule is to incorporate such material by reference in a properly framed affidavit. *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App. 3d 220, 515 N.E.2d 632; [*13] *State, ex rel. Freeman v. Morris* (1991), 62 Ohio St. 3d 107, 579 N.E.2d 702. [HN12]Documents submitted in opposition to a motion for summary judgment which are neither sworn, certified, nor authenticated by affidavit have no evidentiary value. *Green v. B.F. Goodrich Co.* (1993), 85 Ohio App. 3d 223, 619 N.E.2d 497. Nonetheless, we note that discussion with customers of the on-going trade secrets litigation between the parties would not be restricted speech. When one is named as a party in a civil action, such information is readily ascertainable through public records and is a matter of legitimate public interest. See *Grange Mutual Cas. Co. v. Klatt,* 1997 Ohio App. LEXIS 1125 (March 18, 1997), Franklin Cty. App. No. 96APE07-888, unreported.

Finally, appellant attempted to show that appellee submitted a false affidavit constituting abuse of process by noting discrepancies between affidavit testimony and deposition testimony of some witnesses. However, these arguable inconsistencies fail to establish a factual basis for appellant's assertion that appellees submitted "false evidence" and, thereby, abused the process.

Accordingly, even when we view the evidence before the court in [*14] a light most favorable to appellant, we find that appellant has failed to present admissible evidence which raises any question of fact as to whether the underlying proceeding had been perverted to attempt to accomplish an ulterior purpose for which it was not designed. See *Tilberry v. McIntyre,* 135 Ohio App. 3d 229, 733 N.E.2d 636, 1999 Ohio App. LEXIS 4683 (1999). Appellant's affidavit constitutes mere conclusory statements unsupported by evidence and insufficient to withstand summary judgment. See *Levine v. Complete Office Supply, supra.* Thus, appellant failed to satisfy the second element of the tort of abuse of process. Appellees are properly entitled to

judgment as a matter of law on appellant's claim for abuse of process. *Cejer v. Ashmus, supra.* Appellant's first assignment of error is without merit.

In its second assignment of error, appellant challenges the trial court's grant of judgment in favor of appellees on its common law claim of unfair competition.

[HN13]Unfair competition ordinarily consists of representations by one person, for the purpose of deceiving the public, that his goods are those of another. *Drake Medicine Co. v. Glessner* (1903), 68 Ohio St. 337, 67 N.E. 722; [*15] *Henry Gehring Co. v. McCue* (1926), 23 Ohio App. 281, 154 N.E. 171. [HN14]The concept of unfair competition may also extend to unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another. See *Gehring, supra.*

Appellant's complaint states in pertinent part:Metaullics has engaged in a pattern of unfair commercial practices amounting to unfair competition and designed to unfairly harm the business of MMEI. As a result of this unfair competition, MMEI has been damaged.

In this case, appellees, in their motion for summary judgment, assert that judgment must be entered in their favor because appellant's complaint alleges no facts which constitute malicious litigation and alleges no other acts which constitute unfair competition. In response, appellant claims that the affidavit of Paul Cooper raises a genuine issue of material fact as to whether appellees engaged in malicious litigation and whether that litigation had a chilling effect on appellant's business.

As stated above, the evidence set forth in the Cooper affidavit is insufficient to create [*16] a genuine issue of fact as to whether the litigation was improperly pursued. See *Brannon, supra.* Further, no competent evidence has been presented which creates a question of fact as to whether appellees circulated false rumors, or published statements designed to harm appellant's business. See Civ.R. 56(C). Accordingly, when we view the evidence before the court in a light most favorable to appellant, it is apparent that no genuine issue of material fact exists as to whether appellees engaged in unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements designed to harm appellant's business. Under these circumstances, reasonable minds could only come to one conclusion and that conclusion is adverse to appellant. Appellees are properly entitled to judgment on appellant's claim of unfair competition against them as a matter of law. Appellant's second assignment of error is without merit.

Judgment affirmed.

It is ordered that appellees recover of appellant their costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing [*17] the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

TIMOTHY E. McMONAGLE

JUDGE

KARPINSKI, P.J. and

PATTON, J., CONCUR.

N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S. Ct. Prac.R. II, Section 2(A) (1).