UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **AL BEAMER, et al.,** | : | **Civil Action No.: 1-02-013** |
| Plaintiffs, | : | **Judge Spiegel** |
| v. | : | |
| **NETCO, INC., et al.,** | : | |
| Defendants. | : | |

---

# DEFENDANTS' REPLY TO
# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

**Donald J. Mooney, Jr. (0014202)**
**Jacqueline Schuster Hobbs (0068236)**
**ULMER & BERNE LLP**
**600 Vine Street, Suite 2800**
**Cincinnati, Ohio  45202**
**(513) 762-6200**
**(513) 762-6245 (Fax)**
**dmooney@ulmer.com**
**jhobbs@ulmer.com**

**Attorneys for Defendants**

97204. 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| AL BEAMER, et al., | ) | Civil Action No. : C-1-02-013 |
| | ) | |
| Plaintiffs, | ) | Judge Spiegel |
| | ) | |
| v. | ) | **DEFENDANTS' REPLY TO PLAINTIFFS'** |
| | ) | **MEMORANDUM IN OPPOSITION TO** |
| NETCO, INC., et al., | ) | **DEFENDANTS' MOTION FOR** |
| | ) | **SUMMARY JUDGEMENT** |
| Defendants. | ) | |

Even taking Plaintiff's Memorandum in Opposition into account, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Defendants, NETCO, Inc. and John Baumgart, by and through their undersigned counsel, hereby state that summary judgment is appropriate in this matter and therefore move this Court for an Order granting their Motion for Summary Judgment on the claims asserted against them by Plaintiffs in this litigation. There are no genuine issues of material fact with respect to any of those claims, and based upon the uncontroverted facts of this case Defendants are entitled to judgment as a matter of law.

Respectfully submitted,

  /s/ Jacqueline Schuster Hobbs
Donald J. Mooney, Jr. (0014202)
Jacqueline Schuster Hobbs (0068236)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
(513) 762-6200
(513) 762-6245 (Fax)
dmooney@ulmer.com
jhobbs@ulmer.com

Attorneys for Defendants

95164.1

**MEMORANDUM**

I.  **PLAINTIFFS' STATEMENT OF FACTS/ARGUMENT CONCERNING DEFENDANTS' RECITATION OF FACT**

    A.  **Plaintiffs' Statement of Facts.**

Initially it must be noted that, although Plaintiffs provide their own version of the facts of this case in their Memorandum, they fail to specifically controvert the facts as set forth in Defendants' Statement of Uncontroverted Material Facts. Although Plaintiffs have provided various statements of alleged fact in this matter,[1] they do not identify which statements in Defendants' Statement of Uncontroverted Material Facts to which their statements of fact correspond. As that is the case, Plaintiffs have failed to indicate which of Defendants' Statements are in dispute and thus failed to show there is a genuine issue of material fact. Pursuant to Rule 56(e), after a Motion for Summary Judgment has been filed that is supported by evidence, such as deposition testimony, written discovery, etc. as provided in Federal Rule of Civil Procedure ("Rule") 56(c), the plaintiff "by affidavits or as otherwise provided in this rule, must <u>set forth specific facts showing that there is a genuine issue for trial</u>. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Plaintiff has submitted its own Statement of Uncontroverted Facts, however, has not identified which of Defendants' facts are placed in dispute by their stated facts. The Court is not obligated to sift through Plaintiffs' Statement of Facts to seek out genuine issues of material fact. Plaintiffs have offered the Court no other option, thereby compelling summary judgment in favor of Defendants.

---

[1] It should be noted that much of the material submitted in Plaintiff's Statement of Fact is repetitive of Defendants' Statement of Uncontroverted Material Facts and do not provide any statements of significantly new or different facts than those presented in Defendants' Statement. Accordingly, it is unnecessary to respond to same.

97204.1                                    2

**B.     Plaintiffs' Argument Concerning Defendants' Recitation Of Facts.**

Plaintiffs take issue with the fact that Defendants have set forth both Plaintiffs' version of events and the version of events as stated by John Baumgart and Defendants' witnesses. However, Defendants merely presented those facts which dispute Plaintiffs' <u>inadmissible hearsay</u> evidence and which provide context for the Court. Simply put, if Plaintiffs have failed to present any <u>admissible</u> evidence to dispute certain facts, those facts remain undisputed. *See* Rule 56(e), <u>Sperle v. Mich. Dep't of Corr.</u>, 297 F.3d 483, 495 (6th Cir. 2002).

Regardless, while Defendants articulated its own facts which contradict Plaintiffs' inadmissible hearsay, their <u>arguments</u> are limited to Plaintiffs' version of the facts, which is the appropriate analysis on summary judgment.

**II.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW WITH RESPECT TO PLAINTIFFS' CLAIM OF TORTIOUS INTERFERENCE WITH CONTRACT**

**A.     18 U.S.C. §1033 Voids The Contract Between Plaintiffs And Transcontinental.**

Plaintiffs' incredibly assert Plaintiffs and Transcontinental are not engaged in the business of insurance. Their position runs counter to the plain meaning of the statute, and thus their argument is not well taken. Pursuant to the statute, Plaintiffs do not need to be an "insurer" entity themselves; they only need to work for an insurer as an employee or agent or engage in the <u>business of insurance</u>. 18 U.S.C. §1033(f)(1). In addition, Transcontinental does constitute an "insurer" under the statute: pursuant to the definition of "insurer," an insurer is any entity whose business activity is, *inter alia*, the "writing of insurance," 18 U.S.C. §1033(f)(2), whereas the "writing of insurance" includes "all acts necessary or incidental to such writing or reinsuring."

18 U.S.C. §1033(f)(1).[2] Therefore, Plaintiffs' argument that the sole function of title insurance agencies such as Transcontinental is to market title insurance on behalf of underwriters, that function itself constitutes an act by an agent, which is "incidental" to the writing of insurance and thus falls under the plain meaning of the statute.

In addition, it is disingenuous for Plaintiffs to argue that the above is the sole function of title insurance agencies, as they obviously also write and/or issue insurance policies as they prepare the forms on which the policy is issued. Otherwise, Mr. Beamer and his computer form business Title Marketing Company would have worked directly for the underwriters and not for title agencies such as Transcontinental. Thus, as Mr. Beamer stated in his deposition, it is fair to say that underwriters are present in the insurance business because they provide the money from which claims made against a policy will be paid, (PD 30-31, 240), and thus it is the title insurance agencies that actually write/issue the insurance policies, which is an act clearly necessary to the "writing of insurance."

Moreover, it is Plaintiff who ignores the plain language of the statute defining both the "business of insurance" and "insurer." As stated above, the undisputed facts clearly show Plaintiffs and Transcontinental are each "insurers" and engaged in the "business of insurance" as defined by the Statute. Further, Plaintiffs and Transcontinental are acting as "agents" conducting activities incidental to the "business of insurance" as provided for in the Statute. Indeed, in the Articles of Incorporation filed by the Title Marketing Co., Inc. in the State of Missouri, Kathleen

---

[2] Therefore, contrary to Plaintiffs' argument, Defendants did not omit the allegedly "critical" definition of "insurer" from their Motion for Summary Judgment, as its arguments in the Motion for Summary Judgment addressed the same language that is included in that definition. In addition, the definition of "insurer" is circular when considered in context with the definition of 18 U.S.C. §1033(f)(1), and Defendants were merely trying to avoid confusion and focus upon the key elements of the statute necessary to prove its point regarding Mr. Beamer and his engagement in the business of insurance.

E. Beamer described, on behalf of Plaintiff Title Marketing Co., Inc., the purpose of the formation of the Corporation as follows:

> "… title insurance marketing, training, and support; and all other acts permitted general and business corporations."

(*See* Attachment 1).

Further, as Defendants predicted, Plaintiffs attempt to argue that Mr. Beamer is nothing more than a computer person, providing his computerized forms to title insurance agencies, and had nothing to do with the insurance business. However, this argument is contradicted by Plaintiff's clear deposition testimony, that he initiated and maintained relationships with underwriters, he helped negotiate contracts with underwriters, he set up new relationships in new states when his employer expanded, and he determined what requirements needed to be fulfilled in order to do business in new states. In addition, Mr. Beamer was involved in high-level management meetings regarding expansions, the operational aspects of opening different offices, financial performance and means to improve profitability, and products and services. Therefore, contrary to his attempt to portray himself as an innocent bystander, Mr. Beamer was in fact heavily involved in the business of insurance. Furthermore, even if Mr. Beamer's role had been limited to providing computerized forms to title insurance agencies, which it clearly was not, the statute is broad enough to encompass that activity as being a part of the business of insurance as preparing title insurance forms, even if only standardized forms, is an act "necessary or incidental to" the writing of insurance. Insurance policies are written contracts, and thus provide the forms that constitute the baseline product of the insurance business such activity constitutes an act "necessary or incidental to" the writing of insurance, and Mr. Beamer's conduct was covered by the statute.

Therefore, Plaintiffs' arguments are not well taken and Defendants are entitled to summary judgment on this claim due to the operation of 18 U.S.C. §1033 as explained in the Motion for Summary Judgment: Mr. Beamer's violation of 18 U.S.C. §1033, by working in the insurance business despite his criminal past,[3] voids his contract with Transcontinental and without a valid legal contract, the claim of tortious interference with contract must fail.

### B. Plaintiffs' Contract Is At-Will And Thus No Breach Of Contract Occurred.

Plaintiffs claim that Defendants have inaccurately summarized Ohio law on the status of at-will contracts. However, upon a close reading of the cases cited in Defendants' Motion for Summary Judgment, Plaintiffs will find that Defendants have in fact accurately stated the law as presented in those cases. Thus, under Sammarco et. al. v. Anthem Insurance Companies, Inc. et. al., 131 Ohio App. 3d 544, 556-557, 723 N.E.2d 128, 136-137 (Ohio 1st App. 1998) and Doe v. Lodi Community Hospital, 2000 Ohio App. LEXIS 5802, *21-24 (Ohio 9th App. 2000), when a contract is at-will, there can be no breach of contract and thus no claim for tortious interference. Through the application of logic, this conclusion is correct: as a contract that is terminable at-will can be terminated at any time for any reason, a contract terminable at-will cannot be breached by its termination. Therefore, as breach of the contract is an essential element of the claim of tortious interference, Plaintiffs cannot make a submissible claim on this element. Therefore, the fact that the Ohio courts provide an additional exception to the claim of tortious interference should not circumscribe application of other, clearly applicable exceptions. Therefore, as explained in Defendants' Motion for Summary Judgment, there was no breach of Plaintiffs' at-

---

[3] With respect to Plaintiffs' comment that it is disingenuous for Defendants to make an argument pursuant to this statute when they were aware of Mr. Beamer's criminal past, this argument misses the mark. Defendants were aware of Mr. Beamer's criminal past; however, they were not aware that engaging Mr. Beamer for employment would have constituted a violation of this statute. Therefore, it is disingenuous for Plaintiffs to argue that Defendants' employment of Mr. Beamer was in any way known by Defendants to be a violation of the Statute.

97204.1    6

will contract, Plaintiffs cannot fulfill the third element of their tortious interference claim, and Defendants are entitled to summary judgment on Count I of Plaintiffs' Complaint.

    C.    **John Baumgart's Conduct Was Justified By Competition.**

In attempting to argue that John Baumgart's actions were not justified by the competition between himself and Plaintiffs, Plaintiffs make much of the alleged malice on the part of John Baumgart in allegedly encouraging his brother to terminate Mr. Beamer's employment. As evidence of this malice, he presents the same hearsay and speculation regarding statements allegedly made by non-parties to this lawsuit. However, Mr. Beamer has no evidence that John Baumgart's attempts to "get" Mr. Beamer, as noted in Plaintiffs' Memorandum in Opposition, were in fact performed out of malice rather than an intention to terminate Plaintiffs' competition with both of the Baumgarts. It is undisputed John Baumgart did not engage in any of the alleged tortious conduct until he learned that Mr. Beamer was involved in National and competing with both NETCO and Transcontinental.

Contrary to Plaintiffs' argument, Mr. Beamer's employment with Transcontinental did in fact play a part in the competition between John Baumgart and National. While continuing to work under the auspices of his contractual relationship with Transcontinental, Mr. Beamer began competing against both John Baumgart and Bill Baumgart. John and Bill Baumgart were both operating in Ohio at the time and therefore in competition with each other, and now they were in competition with Mr. Beamer as well. Permitting Mr. Beamer to continue to work for Transcontinental would only allow him to continue to receive a competitive edge in his competition with John Baumgart and Bill Baumgart, as he continued to gain knowledge and experience with Transcontinental that he could then use against them. Indeed, Mr. Beamer and/or National may have expanded their competition efforts outside of Ohio, in further violation

of Mr. Beamer's obligations. Even under Plaintiffs' version of events, the undisputed facts show Plaintiffs' contract with Transcontinental was terminated for justifiable reasons. Therefore, Defendants are entitled to utilize the justification of competition and, as further explained in Defendants' Motion for Summary Judgment, Plaintiffs cannot meet the elements of tortious interference and their claim must be denied.

      **D.    John Baumgart's Conduct Was Justified By The Truth Of His Alleged Statements.**

Contrary to Plaintiffs' arguments on this point, there are no genuine issues of material fact at issue with respect to the application of the defamation privilege of truth to Plaintiffs' tortious interference claim. Even taking Plaintiffs' account of events as true, the statements that Plaintiffs attribute to John Baumgart, even if in fact said, were <u>true</u> and thus this privilege applies. Mr. Beamer's entire tortious interference case is based upon such statements -- *i.e.* John Baumgart told Bill Baumgart to fire Mr. Beamer, had others tell Mr. Beamer that he was attempting to arrange a deal involving Mr. Beamer's termination, and made other comments and threats regarding Mr. Beamer's employment with Transcontinental. According to Mr. Beamer, however, John Baumgart's alleged motivation behind making these statements was that he believed Mr. Beamer was competing against both Baumgarts, as well as Bill Baumgart, and he wanted that competition ended. In this situation, John Baumgart's statements were true, in that Mr. Beamer was in fact competing against him as explained previously. Therefore, the privilege applies and Plaintiffs' claim for tortious interference must be denied.

      **E.    Plaintiffs' Evidence Constitutes Inadmissible Hearsay And Thus The Tortious Interference Claim Must Be Denied.**

Contrary to Plaintiffs' arguments, and as explained further herein, the statements upon which Plaintiffs attempt to rely do not fall under any of the exceptions to the hearsay rule and,

97204.1          8

thus, are inadmissible. Even at the Motion for Summary Judgment stage, Plaintiffs must submit <u>admissible</u> evidence to support their claims. Rule 56(e), Federal Rules of Civil Procedure; <u>Sperle v. Mich. Dep't of Corr.</u>, 297 F.3d 483, 495 (6th Cir. 2002).

> 1. **The Party-Opponent Exception To The Hearsay Rule Does Not Make Admissible The Double Hearsay Statements Plaintiff Attributes To John Baumgart.**

In their Memorandum in Opposition to Defendant's Motion for Summary Judgment, Plaintiffs attempt to rely on the party-opponent admission exception to the hearsay rule set forth in Federal Rule of Evidence 801(d)(2). Contrary to Plaintiffs' assertion, however, the statements upon which Plaintiffs rely in support of their case are not statements John Baumgart made directly to Plaintiff. Rather, each of the statements of John Baumgart upon which Plaintiffs rely are statements which were made to Plaintiff through an intermediary, such as Bill Baumgart or William Andrews. Stated differently, the statements Plaintiffs attempt to attribute to John Baumgart constitute double hearsay. Thus, in order for such statements to be admissible evidence, Plaintiffs must demonstrate an applicable exception to <u>both</u> portions of the hearsay comment -- both the statement by John Baumgart to the intermediary and the alleged repetition of the statement by the intermediary to Plaintiff. <u>See</u> Federal Rule of Evidence 805, which provides: "hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Thus, even if John Baumgart's statements to an intermediary may otherwise qualify as an admission of a party-opponent under Federal Rule of Evidence 801(d)(2), the repetition of the statement attributable to the various intermediaries does not fall within any of the exceptions to the hearsay rule and, thus, such comments are inadmissible.

To the extent Plaintiffs attempt to rely upon the "statement of an agent or servant" aspect of the party-opponent exception to the hearsay rule in an effort to establish the admissibility of Bill Baumgart's alleged statements, such an attempt is sorely misguided. Although Bill and John Baumgart are brothers, they are owners of separate businesses. Bill Baumgart is not employed, in any aspect, by NETCO, Inc., is not a party Defendant in this action and, thus, the party-opponent exception clearly does not apply to statements made by him. Accordingly, the statements Plaintiff contends were made by John Baumgart to Bill Baumgart, which Plaintiff alleges were subsequently conveyed to Plaintiff by Bill Baumgart, are inadmissible and must be disregarded.

### 2. The State Of Mind Exception To The Hearsay Rule Does Not Apply.

Plaintiffs further argue that the "state of mind" exception to the hearsay rule applies to alleged statements made by Bill Baumgart in communicating alleged statements of John Baumgart to Mr. Beamer. Although Plaintiffs do not cite the Court to a specific rule of evidence, it is apparent Plaintiffs are relying on Federal Rule of Evidence 803(3), which reads in pertinent part: "the following are not excluded by the hearsay rule…a statement of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health)…" The alleged statements of Bill Baumgart, wherein he allegedly communicates to Mr. Beamer statements of John Baumgart, however, do not fall within this exception and, thus, are inadmissible.

More specifically, with respect to statements of intent or motive, the above cited exception to the hearsay rule applies to statements that indicate actions the declarant intends to undertake or the motives of the declarant in taking action, not statements such as those allegedly made by Bill Baumgart. In other words, contrary to Plaintiffs' argument, Bill Baumgart's

statements do not indicate Bill Baumgart's alleged intent or motive to terminate Mr. Beamer (i.e. Plaintiffs do not allege Bill Baumgart said something to the effect "I will terminate Mr. Beamer due to John Baumgart's request that I do so."). Rather, the alleged statement at issue is a comment by Bill Baumgart to Mr. Beamer, wherein Bill Baumgart allegedly states that John Baumgart wants him (Bill Baumgart) to terminate Mr. Beamer's employment. Contrary to Plaintiffs' argument, this alleged statement does not reflect Bill Baumgart's then existing mental, emotional or physical condition, motive or intent and, thus, does not fall within the Federal Rule of Evidence 803(3) exception to the hearsay rule. Simply stated, the alleged statements of Bill Baumgart do not reflect the declarant, Bill Baumgart's then existing mental state or current belief and, thus, are not admissible under Federal Rule of Evidence 803(3). See <u>Handbook of Federal Evidence</u>, Michael H. Graham 5th Edition 2001, Volume 3 pages 277 through 296. In light of the foregoing, and given the fact Plaintiffs are attempting to use Bill Baumgart's alleged statement to Plaintiff to prove the truth of the matter asserted--that John Baumgart wanted Bill Baumgart to terminate Mr. Beamer, and because Bill Baumgart is not a party Defendant, such statements amount to double hearsay and, clearly are inadmissible. Accordingly, Plaintiffs can put forward no admissible evidence in support of the tortious interference claim and Defendants are entitled to judgment as a matter of law.

        **3.    The Alleged Statements Of William Andrews Are Inadmissible Hearsay And Do Not Fall Within Any Of The Exceptions To The Hearsay Rule.**

With respect to comments allegedly made by William Andrews, it must be noted that Mr. Andrews is no longer a party to this lawsuit as Plaintiffs have dismissed their claims against Mr. Andrews. Accordingly, the party-opponent exception to the hearsay rule does not apply to alleged statements of Mr. Andrews.

Apparently as a fall back position, and in an effort to establish the admissibility of Mr. Andrews' alleged statements, Plaintiffs contend that Mr. Andrews' status as John Baumgart's attorney brings Mr. Andrews' statements within the party-opponent exception to the hearsay rule. Contrary to Plaintiffs' assertion, statements of attorneys do not necessarily constitute admissions of a party the attorney represents. Rather, whether the statement of an attorney constitutes an admission of a party the attorney represents "depends on the scope of [the attorney's] authority at the time [it was] made." United States v. Dolleris, 408 F.2d 918, 921 (6th Cir. 1969). As the Dolleris Court noted, "an attorney, merely because of his employment in connection with litigation, does not have authority to make out-of-court admissions for his client, except those which are directly related to the management of **that** litigation." Id. (Emphasis added). By way of example, the statement of an attorney was found to have been authorized by his client when, during a pretrial deposition, the attorney stated that he had advised his client of the punishment for not testifying, the client refused to testify, and the client did not disavow the attorney's statements. United States v. Johnson, 752 F.2d 206, 208, 210-211 (6th Cir. 1985). Contrary to the foregoing, in the instant case, the alleged statement of John Baumgart,[4] which allegedly was conveyed to Plaintiff through Mr. Andrews is inadmissible insofar as there is no evidence Mr. Andrews had the authority to make the alleged comments to Mr. Beamer on behalf of John Baumgart and/or NETCO.[5]

---

[4] The alleged statement by Mr. Andrews that John Baumgart worked out a deal with Bill Baumgart wherein John Baumgart would reimburse Bill Baumgart for any costs associated with terminating his relationship with Mr. Beamer.

[5] Notably, the statement Plaintiffs attribute to Mr. Andrews, that John Baumgart would do anything to "get" him, is not a direct statement from John Baumgart, but, at most, assuming the statement was made, is Mr. Andrews' interpretation of John Baumgart's general attitude towards Plaintiff. Thus, it is clear this statement constitutes plain hearsay and that neither the party-opponent admission exception, nor any other exception, to the hearsay rule applies to the alleged statement.

Moreover, this alleged statement by Mr. Andrews had absolutely no connection to the management of the litigation at issue (the litigation between NETCO and National). In other words, the alleged statement by Mr. Andrews, that there was a deal between Bill and John Baumgart with respect to the termination of Plaintiff's employment with TTC, was separate and apart from the NETCO versus National litigation in which NETCO was attempting to enjoin National from unlawfully competing with NETCO. Thus, the statements upon which Plaintiffs attempt to rely--the alleged statements of John Baumgart, which were allegedly communicated to Plaintiff by Mr. Andrews--constitute nothing more than inadmissible hearsay and must be disregarded by the Court in considering Defendant's Motion for Summary Judgment.

### III. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW WITH RESPECT TO PLAINTIFFS' CLAIM OF ABUSE OF PROCESS CLAIM

In opposition to Defendants' Motion for Summary Judgment with respect to the abuse of process claim, Plaintiffs argue, in a conclusory fashion, that the contempt charges against Mr. Beamer were baseless merely because of the fact the contempt motions were eventually denied by the Court. The mere fact the Court did not hold Mr. Beamer in contempt, however, does not automatically lead to the conclusion that the contempt motions against Mr. Beamer were baseless and/or amount to an abuse of process. To reach such a conclusion, as asserted by Plaintiffs, would be tantamount to concluding that any time a Court rules against a Plaintiff in a lawsuit, the Plaintiff's claims were necessarily frivolous and that the filing of such claims was an unlawful abuse of process. Clearly, and as set forth in the Memorandum in Support of Defendant's Motion for Summary Judgment, this is not the state of the law.

Moreover, and contrary to Plaintiffs' conclusory assertion, it is clear that John Baumgart and NETCO were justified in pursuing a claim against National, and derivatively against Mr. Beamer, since Mr. Beamer was an owner of National. The contempt motions were filed because

it appeared that, despite a successful Court ruling in the underlying lawsuit, National, including its owners, was not complying with the Court's order. Simply put, contrary to Plaintiffs' argument, it is clear John Baumgart and NETCO had a permissible purpose in filing the contempt motions against Mr. Beamer, even given the technical fact Mr. Beamer was not personally a party to the underlying lawsuit.[6] In pursuing the contempt motions against Mr. Beamer, John Baumgart was only seeking, in good faith, the injunctive relief to which he was entitled--the cessation of unlawful competition with his Company. In light of these undisputed facts, it is clear the lawful conduct of John Baumgart cannot form the basis of an abuse of process claim. Tilberry v. McIntyre, 135 Ohio App. 3d 229, 241, 733 N.E. 2d 636, 644 (Ohio 8th App. Dist. 1999).

In opposition to Defendants' Motion for Summary Judgment, Plaintiffs cite the Court to the case of Hildreth Manufacturing v. Semco, Inc., 151 Ohio App. 3d 693, 716-718, 785 N.E. 2d 774, 792-794 (Ohio 3rd Dist. 2003). Plaintiffs' reliance on Hildreth, however, is misplaced. Contrary to Plaintiffs' claim, Hildreth does not hold that attempting to gain a competitive advantage in any given factual situation, free from the circumstances and context that define that competitive advantage, constitutes a viable cause of action for abuse of process. Rather, the allegations in Hildreth involve an attempt to put a **lawfully** competing company out of business, threatening to sue vendors and customers of the lawfully competing business and contacting law enforcement with **false** information. Contrary to the facts in Hildreth, it was proven in the National/NETCO lawsuit that National was unlawfully competing with NETCO. In fact, it was National's violation of the Court Order, enjoining National from unlawfully competing against

---

[6] Stated somewhat differently, Mr. Beamer was a party to the underlying lawsuit through his association with National, being a shareholder of the Company, and was lawfully added as a party to the contempt motions as there was a good faith belief that due to the closely held nature of National, the corporate officers, including Mr. Beamer, could be held liable for failure to comply with the Court order against National.

NETCO, which brought about the need for the contempt motions. Thus, given the factual differences between Hildreth and the instant case, it is clear Plaintiffs' reliance on Hildreth is misplaced and that Defendants are entitled to judgment as a matter of law with respect to Plaintiffs' abuse of process claim.[7] Contrary to Hildreth, Plaintiffs in the instant case can no longer rest on their allegations but must provide admissible evidence to show that a genuine issue of material fact suitable for jury consideration exists. As has been discussed throughout this Memorandum and the Memorandum in Support of Defendants' Motion for Summary Judgment, such evidence simply does not exist.

In their opposition to the Motion for Summary Judgment, Plaintiffs claim that Defendants' arguments do not address Plaintiffs' allegations regarding the contempt motion. At the time the Motion for Summary Judgment was written, it was unclear precisely what factual allegations Plaintiffs would rely upon to support their claim of abuse of process. Thus, in its Motion for Summary Judgment Defendants addressed each of Plaintiffs' various factual contentions -- the alleged deal to terminate Mr. Beamer, the alleged deal to reimburse for costs, etc., in addition to the contempt motion -- given the likelihood Plaintiff would contend that the underlying National lawsuit had been perverted to accomplish a purpose, either Mr. Beamer's termination or the speculated purposes behind the contempt motion, for which it was not designed. Therefore, the other cases that Defendants cite and discuss are addressed to those issues and not the issue of the contempt motion. As Plaintiffs make no argument regarding these other factual allegations as supporting their abuse of process claim in their Memorandum in Opposition, they must now be deemed to have abandoned this course of action. Therefore,

---

[7] It should be noted that the procedural footing of the Hildreth case was review of a Motion to Dismiss, which has significantly different standards then the procedural setting of this case.

Defendants are entitled to summary judgment with respect to Plaintiffs' claim of abuse of process, regardless of the factual grounds upon which it stands.

Finally, it should be noted that Plaintiffs have not explained for what ulterior purpose the contempt motions were allegedly "perverted" to accomplish. <u>Robb v. Chagrin Lagoons Yacht Club, Inc.</u>, 75 Ohio St. 3d 264, 270, 662 N.E.2d 9, 14 (Ohio 1996); <u>Yaklevich v. Kemp, Schaeffer & Rowe</u>, 68 Ohio St. 3d 294, 298, 626 N.E.2d 115, 118 (Ohio 1994) (elements of the cause of action for abuse of process). Apart from the claim of attempting to gain a competitive advantage as discussed above, Plaintiffs' only claim in this regard is that the contempt motions were "levied for an impermissible motive (i.e., spite and revenge)." Plaintiffs' Memorandum in Opposition, p. 20. However, as noted in Defendants' Motion for Summary Judgment, "[T]here is no liability for abuse of process where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." <u>Yaklevich</u>, 68 Ohio St. 3d at 298 n. 2, 626 N.E.2d at 118 n.2; <u>Professional Balance Co. v. Fulton & Associates Balance Co.</u>, 1999 Ohio App. LEXIS 1692 *10 (Ohio 10th App. 1999).

It should hardly be surprising that there is acrimony and ill will in a lawsuit. Defendants received no collateral advantage, such as the payment of money, in their lawsuit by merely engaging in the motion process with the ill will that Plaintiffs allege. <u>Robb v. Chagrin Lagoons Yacht Club, Inc.</u>, 75 Ohio St. 3d at 271, 662 N.E.2d 9, 14 (Ohio 1996). Therefore, the instant case is exactly on point with <u>Tilberry v. McIntyre</u>, 135 Ohio App. 3d 229, 241, 733 N.E.2d 636, 644 (Ohio 8th App. Dist. 1999), because in that case the party alleged that the mere filing of a motion constituted an abuse of process. Moreover, in that case there was in fact a collateral advantage being sought, an alleged "extortion" of a settlement, which is an aspect of an abuse of process claim that is missing in this case. <u>Tilberry</u>, 135 Ohio App. 3d at 241, 733 N.E.2d at 644.

Therefore, the mere assertion of an motive of ill will is not sufficient to fulfill the elements of the abuse of process cause of action, and Plaintiffs' claim must be denied.

## IV.    CONCLUSION

Wherefore, for the foregoing reasons, as well as those expressed in Defendants' Motion for Summary Judgment, this Court should grant Defendants' Motion for Summary Judgment and enter an Order dismissing Plaintiffs' Complaint.

Respectfully submitted,

   /s/ Jacqueline Schuster Hobbs
Donald J. Mooney, Jr. (0014202)
Jacqueline Schuster Hobbs (0068236)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio  45202
(513) 762-6200
(513) 762-6245 (Fax)
dmooney@ulmer.com
jhobbs@ulmer.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was filed electronically with the Court and served electronically upon Richard C. Haber, Esq., and Vince P. Antaki, Esq., REMINGER & REMINGER, Attorneys for Plaintiffs, 1400 Midland Building, 101 Prospect Avenue West, Cleveland, Ohio 44115-1093, this 6th day of February, 2004.

   /s/ Jacqueline Schuster Hobbs