UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


AL BEAMER, <u>et</u> <u>al</u>.,              :
                                             :   NO. 1:02-CV-013
          Plaintiffs,                        :
                                             :
                                             :   **OPINION AND ORDER**
   v.                                        :
                                             :
                                             :
NETCO INC., <u>et</u> <u>al</u>.,            :
                                             :
          Defendants.                        :


          This matter is before the Court on Defendants' Motion for
Summary Judgment (doc. 26), Plaintiffs' Response in Opposition to
Defendants' Motion for Summary Judgment (doc. 31), and Defendants'
Reply to Plaintiffs' Opposition Memorandum (doc. 38).

**FACTS AND PROCEDURAL HISTORY**

          On December 6, 2001, Plaintiffs Al Beamer (hereinafter,
"Beamer") and Title Marketing Co., Inc., filed this action in the
Hamilton County Court of Common Pleas (doc. 1).[1]  Defendants NETCO
Inc., (hereinafter, "NETCO"), John R. Baumgart, and William Andrews
removed the case to this Court (<u>Id</u>.).[2]  Plaintiffs' Complaint
initially contained three allegations (<u>Id</u>.).  First, Plaintiffs

---

          [1] Throughout this Order, unless otherwise indicated,
references to Mr. Beamer are meant to include both Mr. Beamer and
Title Marketing Company, Inc.

          [2]  Throughout this Order, unless otherwise indicated,
references to NETCO are meant to include both NETCO, Inc. and Mr.
John Baumgart.

allege that Defendants tortiously interfered with Plaintiffs' employment contract (<u>Id.</u>). Second, Plaintiffs allege that Defendants engaged in abuse of process (<u>Id.</u>). Finally, Plaintiffs alleged intentional infliction of emotional distress, but subsequently dismissed this claim, as well as Defendant William Andrews (docs. 23, 24).

The basic facts of this case, compiled through various motions, are as follows. Beamer owns and operates Title Marketing Company (hereinafter "TMC"), which sells software that title agents use to produce title insurance forms, title commitments, title policies, and to accept title orders (doc. 31). Defendant John Baumgart owns and operates NETCO, which specializes in the insurance refinancing market, dealing with lenders or entities that provide loan products to buyers who want residential mortgages (doc. 26). John Baumgart's brother Bill Baumgart owns and operates Transcontinental Title Company (hereinafter "Transcontinental") which focuses on the refinancing business (<u>Id.</u>).

Defendants and Plaintiffs entered into several employment contracts with the final contract being signed in 1999 (<u>Id.</u>). This contract stipulated that Plaintiffs would provide Defendants with use of TMC software (<u>Id.</u>). The contract also listed companies to which Beamer could sell his software, and a non-compete agreement, which Beamer signed (<u>Id.</u>). In April 1999, Beamer resigned from NETCO's employ (<u>Id.</u>).

2

While Beamer was employed by NETCO, he also entered into employment contracts with Transcontinental and Bill Baumgart (doc. 26). Beamer initially served as an employee of Transcontinental, but changed status to become an independent contractor in 1996 (doc. 31). In 1999, Beamer and Transcontinental executed two amendments to this employment contract which changed Beamer's status from an independent contractor back to an employee and altered Beamer's compensation (doc. 26).

In the summer of 1999, Antonio Rivera (hereinafter "Rivera"), a former NETCO manager, began exploring forming his own company (Id.). Rivera and Beamer engaged in informal discussions during the summer, and met again in October 1999 to discuss forming an Ohio company (doc. 31). In October 1999, Beamer informed Rivera that he would like to be a part of the new company (Id.). Rivera's new company was named National Real Estate Title Agency, Inc. (hereinafter "National") and Beamer contributed $20,000 and his software to the new company (doc. 26). Beamer, Rivera, and two others each possessed a 25% stake in National and each was to have the same voting authority (Id.). As of November 1, 1999 Beamer considered NETCO as a potential competitor of National (Id.). The formation of National by Rivera violated provisions of Rivera's NETCO employment agreement because National competed directly with NETCO for NETCO's customers (Id.). NETCO subsequently sued National and Rivera on November 9, 1999, in the Court of Common

Pleas, Hamilton County, Ohio (doc. 31).  Neither Beamer nor TMC were parties to this lawsuit (Id.).  The court issued a temporary restraining order on November 10, 1999, and on August 10, 2000, the Ohio court entered a permanent injunction against Rivera and National because Rivera violated the compensation provision of his employment agreement (doc. 26).  The order restrained National and Rivera from soliciting or selling to NETCO's customers or competing with NETCO for six months from the date of the judgment (Id.).  The order also restrained National from disclosing or misappropriating confidential information obtained from NETCO (Id.).  Beamer ended his relationship with National when National went out of business in late 2000 or early 2001 (Id.).

On or about December 6, 1999, Beamer's employment with Transcontinental ended (doc. 26).  Beamer subsequently sued Transcontinental in Florida for breach of contract and that case settled in April 2001 (Id.).  The settlement agreement authorized Transcontinental to use TMC's software through August 31, 2001 and required Transcontinental to pay a licensing fee for use after that date (Id.).  Beamer filed suit against Transcontinental again in 2002 for violating the settlement agreement by failing to pay the licensing fee (Id.).  This second case settled in the spring of 2003 and the settlement allowed Transcontinental to use the software indefinitely (Id.).

Prior to the settlement offer in the National litigation

4

and after Transcontinental terminated Beamer, NETCO filed motions
to hold Beamer in civil and criminal contempt of court in the
National case (doc. 31). The court overruled these motions (Id.).

Of critical importance to this case are events that took
place long before the facts leading to the current dispute arose.
In 1985 Beamer entered a plea of guilty and was convicted of a
felony, interstate transportation of stolen checks (doc. 26).
Beamer served a sentence of approximately two years, including one
and a half years of incarceration and approximately six months at
a halfway house (Id.).

Beamer's complaint alleges that John Baumgart pressured
his brother Bill Baumgart to terminate Beamer's employment with
Transcontinental, thus tortiously interfering with their contract
(doc. 1). Beamer's complaint further alleges an abuse of process
in NETCO's filing of a civil and criminal contempt of court charge
against Beamer in the NETCO v. Rivera case. Beamer alleges NETCO
filed the charge in order to procure Beamer's termination from
Transcontinental and to obtain from Beamer a covenant not to sue
Transcontinental (doc. 1).

**APPLICABLE LEGAL STANDARD: MOTION FOR SUMMARY JUDGMENT**

Although a grant of summary judgment is not a substitute
for trial, it is appropriate "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to

5

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment. . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by

merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive

7

summary judgment and proceed to trial on the merits.  Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989)(internal quotation marks omitted).  In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment.  See McDonald v. Union Camp Corp., 898 F .2d 1155, 1162 (6th Cir.1990).  The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962).  Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion.  See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute.  See Matsushita, 475 U.S. at 587.  The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the

Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**ANALYSIS**

Defendants advance several arguments in their Motion for Summary Judgment for the proposition that Plaintiffs' claim for tortious interference with a contract must fail (doc. 26). First, Defendants argue no valid contract existed between Beamer and Transcontinental, so there is no contract with which they could have tortiously interfered (Id.). Defendants argue that Beamer's prior felony conviction renders his employment contract in the insurance industry void as against public policy (Id.). Second, Defendants argue that even if a valid employment contract existed, the contract was terminable at will and thus no breach of contract could have occurred (Id.). Third, Defendants claim that Plaintiffs' only evidence of tortious interference with the contract exists by speculation and hearsay, which is inadmissable (Id.). Fourth, Defendants argue that Plaintiffs' claim is based on defamatory statements and because these statements are true, the Court should deny Plaintiffs' claim (Id.). Finally, Defendants argue that John Baumgart's conduct was justified and thus, the tortious interference claim must be denied (Id.).

Addressing Plaintiffs' claim of abuse of process, Defendants argue that they merely used litigation strategies which

9

resulted in the termination of Mr. Beamer (<u>Id</u>.).  Defendants argue that their use of litigation strategies cannot be the basis for an abuse of process claim when the Plaintiffs base their claim on hearsay and conclusory statements (<u>Id</u>.).

In Plaintiffs' Response to Defendants' Motion for Summary Judgment, Plaintiffs argue the Court should not grant summary judgment (doc. 31).  Plaintiffs advance four arguments to support their request for denial of summary judgment of the tortious interference claim (<u>Id</u>.).  First, Plaintiffs argue Mr. Beamer's prior felony conviction does not void the employment contract between Beamer and Transcontinental because neither Beamer nor Transcontinental were involved in a "business of insurance" (<u>Id</u>.).  Rather, Plaintiffs argue, Beamer worked as a software developer, and so his employment contract was valid (<u>Id</u>.).  Second, Plaintiffs argue the at-will status of Mr. Beamer's contract is irrelevant to his tortious interference of a contract claim (<u>Id</u>.).  Third, Plaintiffs argue that Defendants were not privileged nor justified in terminating Mr. Beamer (<u>Id</u>.).  Finally, Plaintiffs argue that they do not rely on hearsay in support of their claim of tortious interference (<u>Id</u>.).  Plaintiffs support their claim of abuse of process by arguing that Mr. Beamer incurred significant expenses in defending the contempt proceedings filed by Defendants in the preceding litigation (<u>Id</u>.).

Defendants reply by reiterating their arguments that

10

tortious interference with a contract and abuse of process did not exist under the facts of this case (doc. 38). Defendants argue in depth that Plaintiffs' evidence consists of inadmissible hearsay (Id.).

Tortious interference with a contract "generally occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." A&B-Abell Elevator Co. V. Columbus/Central Ohio Building and Construction Trades Council, 73 Ohio St. 3d 1, 14 (Ohio 1995). Plaintiff must plead and prove five elements to prove tortious interference with a contract: (1) the existence of a contract; (2) the tortfeasor's knowledge of the contract; (3) the tortfeasor's intentional procurement of the contract's breach; (4) lack of justification; and (5) damages. Siegel Co. v. Arter & Hadden et. al., 85 Ohio St. 3d 171, 176, 707 N.E.2d 853, 858(Ohio 1999); UZ Engineered Products Company v. Midwest Motor Supply Co., Inc., 147 Ohio 33 App. 3d 382, 400, 770 N.E.2d 1068, 1083 (Ohio 10th App. 2001).

Examining the first element, the Court finds that no legal contract existed between Beamer and Transcontinental. The parties created the contract in question in Florida (doc. 26). Ohio uses the conflict of law analysis of Restatement of Law 2d, Conflict of Laws (1971) to determine whether a contract created in

11

another state is valid. <u>Carrington Farms Development Co. V. Pulte Home Corp.</u>, 1998 Ohio App. LEXIS 2228, *6-8 (Ohio 6th App. 1998). Under the Restatement, the law that the parties choose in their contract to control their contractual rights governs disputes arising under the contract. Restatement of Law 2d, Conflict of Laws § 187 (1971). The contract in question, Beamer's employment contract with Transcontinental, stated that it would be construed and governed by Florida law (doc. 26). Thus, Florida law governs the interpretation of the contract and its validity.

Under Florida law, a contract is against public policy when it cannot be performed without violating a statutory or other legal provision and is void. <u>Local No. 234 v. Henley & Beckwith</u>, 66 So.2d 818, 821 (Fl. 1953). Under federal law,

> any individual who has been convicted of any criminal felony involving dishonesty or a breach of trust, or who has been convicted of an offense under this section, and who willfully engages in the business of insurance whose activities affect interstate commerce or participates in such business, shall be fined as provided in this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 1033(e)(1)(A). For purposes of this section, the "business of insurance" includes "the writing of insurance" or "the reinsuring of risks" which includes "all acts necessary or incidental to such writing or reinsuring and the activities of persons who act as, or are officers, directors, agents, or employees of insurers." 18 U.S.C. § 1033(f)(1). An "insurer" is "any entity the business activity of which is the writing of

insurance or the reinsuring of risks, and includes any person who acts as, or is, an officer, director, agent, or employee of that business." 18 U.S.C. § 1033(f)(2).

Beamer has a felony conviction for the interstate transportation of stolen checks (doc. 26). This conviction obviously involves a "criminal felony involving dishonesty or breach of trust." 18 U.S.C. § 1033(e)(1)(A). The "business of insurance" includes "all acts necessary or incidental to such writing or reissuing." 18 U.S.C. § 1033(f)(1). Under the broad language of the statute, the Court does not find well-taken Plaintiffs' argument that Beamer was not engaged in the business of insurance. The facts show Beamer engaged in the business of insurance by developing and creating a software program which produced insurance forms for insurance title agencies. Beamer initiated and maintained relationships with insurance underwriters, helped negotiate contracts with underwriters, set up new relationships when his employer expanded to other states, participated in management meetings regarding expansion of the business, and participated in the operational aspects of the business (doc. 26). Moreover, Beamer's software provided computerized forms and databases which agents used to produce insurance documents (Id.). Beamer cannot claim that he was merely a software salesperson when he designed these insurance forms and databases which an agent then used to create insurance forms.

13

Beamer, as the form creator, designed the boilerplate language of the forms, while the agent merely inserted the insured's name and company on the form to create a legal binding contract. Thus, Beamer was not merely a seller of software, instead he was involved in the business of insurance by creating legally binding contract language. For these reasons, 18 U.S.C. § 1033(f)(1) applies to Beamer, and his employment contract is void as a matter of applicable Florida law.

Because the Court determines that no legal contract existed between Beamer and Transcontinental, no further analysis is required on the remaining elements of the tortious interference claim. Thus, Beamer failed to plead a <u>prima</u> <u>facie</u> case for tortious interference with a contract, and summary judgment in favor of Defendants is appropriate regarding this claim.

Addressing Plaintiffs' second complaint of abuse of process, this Court similarly finds Defendants are entitled to judgment as a matter of law. The elements of abuse of process are as follows: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." <u>Yaklevich v. Kemp, Schaeffer & Rowe</u>, 75 Ohio St. 3d 264, 270 (Ohio 1996). Abuse of process occurs "where someone attempts to achieve through use of the court that

14

which is itself powerless to order." Robb v. Chagrin Lagoons Yacht Club, Inc., 75 Ohio St. 3d 264, 271 (Ohio 1996). Further, there is "no liability for abuse of process where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Yaklevich, 68 Ohio St. 3d at 298 n.2.

The Court begins its analysis by focusing on the second element of an abuse of process claim: Plaintiffs must show the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed. Plaintiffs bear the burden of proof and "[i]n order to show the process was perverted to accomplish an ulterior purpose, [plaintiffs] must show both an act committed during the process that was not proper in the normal context of the proceeding and the [defendants'] ulterior motive." Wolfe v. Little, 2001 Ohio App. LEXIS 1902 *7 (Ohio 2nd App. 2001). Thus, Beamer must prove the act committed was not proper and show Defendants' ulterior motive.

The undisputed facts show when NETCO learned that National was competing directly against its interests in violation of an anti-compete clause in Rivera's employment contract, Defendants filed suit to stop this competition (doc. 26). The court found for NETCO (Id.). Despite Beamer's status as a co-owner of National, he was not a party to the litigation filed by Defendant against National (Id.). When former employees (Rivera

15

and Beamer) founded a company that directly competed with their former employer (NETCO) in violation of Rivera's employment agreement, it was only natural that NETCO would sue to enforce such agreement. This litigation by NETCO was proper, as it merely asserted its right to enforce the noncompetition clause.

The rationale behind the National litigation closely parallels the rationale of NETCO's subsequent filing of motions for contempt. Beamer's participation in National as a co-owner put him in an adversarial position to Defendants' interests. Following the National litigation, Defendants filed civil and criminal motions against Beamer for failure to follow the temporary restraining order and permanent injunction (doc. 26). This time, the Court of Common Pleas found for Beamer (Id.).

Assuming that Defendants acted spitefully in filing the contempt motions to "get him" [Beamer], an abuse of process claim still fails because "there is no liability for abuse of process where defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Yaklevick, 68 Ohio St. 3d at 298 n. 2. Regardless of any ill will, when the court granted a temporary and later permanent injunction enjoining direct competition, Defendants reasonably and properly expected National to abide by the court order. When National violated the order, litigation was bound to ensue again. By filing these motions of contempt, Defendants were merely trying

16

to stop National from engaging in competitive business that violated a court order. The Court cannot view this as an improper purpose.

The Court does not find that Beamer has proffered admissible evidence to prove either an improper act or an ulterior motive on the part of Defendants. The undisputed facts show Defendants acted properly in filing actions to protect its interests. Accordingly, the Court determines there is no genuine issue of material fact with regard to Plaintiffs' claim for abuse of process, and summary judgment for Defendants is appropriate on this claim.

**CONCLUSION**

Having reviewed this matter, the Court finds that Plaintiffs' claim for tortious interference with an employment contract does not withstand summary judgment. The facts show Beamer's activity under the contract amounted to working in the business of insurance, in contravention of federal law. 18 U.S.C. § 1033(e)(1)(A). As a matter of applicable Florida law, such contract was invalid due to Mr. Beamer's former felony conviction. One cannot tortiously interfere with an invalid contract.

The Court further finds Plaintiffs' claims for abuse of process to fail, because the evidence in the record does not indicate Defendants acted with an improper purpose in asserting their contract rights. Accordingly, the Court GRANTS Defendants'

17

Motion for Summary Judgment (doc. 26), and DISMISSES this matter from the Court's docket.

       SO ORDERED.

Dated: September 29, 2005    <u>s/S. Arthur Spiegel</u>
                                   S. Arthur Spiegel
                                   United States Senior District Judge